**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
Metropolitan Municipality of Lima,                )
                                                          )
                                                          )          Case No. 20-CV-02155 (KBJ)
            *Petitioner and Cross-Respondent*,    )
                                                          )
                        v.                                )
                                                          )
Rutas de Lima S.A.C.,                                )
                                                          )
            *Respondent and Cross-Movant*.        )
_____)


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**RUTAS DE LIMA S.A.C.'S CROSS-MOTION TO**
**CONFIRM THE ARBITRAL AWARD**


**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

1221 Avenue of the Americas
New York, NY 10020

December 23, 2020                    *Counsel for Rutas de Lima S.A.C.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................3

      A.   Background: The Parties and the Dispute ...............................................................3

      B.   The Arbitration ......................................................................................................6

      C.   The Award ..............................................................................................................8

      D.   The U.S. Proceedings ...........................................................................................9

ARGUMENT ..................................................................................................................9

I.    The Court Has Jurisdiction to Confirm the Award ...............................................9

II.   Confirmation of Arbitral Awards Is Mandatory Where the Requirements of the FAA
      Are Satisfied ........................................................................................................11

III.  The Requirements for Confirmation Under the Panama and New York Conventions
      Have Been Satisfied ...........................................................................................13

IV.  No Grounds to Deny Recognition or Enforcement of the Award Apply Here ...............14

    CONCLUSION .................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### CASES

*Africard Co. v. Republic of Niger*,
  210 F. Supp. 3d 119 (D.D.C. 2016) ......................................................................13

*Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH*,
  495 F. App'x 149 (2d Cir. 2012) ...........................................................................16

\* *ARMA, S.R.O. v. BAE Sys. Overseas*,
  961 F. Supp. 2d 245 (D.D.C. 2013) .......................................................................13

*Balkan Energy Ltd. v. Republic of Ghana*,
  302 F. Supp. 3d 144 (D.D.C. 2018) .......................................................................16

\* *BCB Holdings Ltd. v. Gov't of Belize*,
  110 F. Supp. 3d 233 (D.D.C. 2015) ............................................................11, 15, 16

\* *Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  5 F. Supp. 3d 25 (D.D.C. 2013) .......................................................................11, 16

 *Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  668 F.3d 724 (D.C. Cir. 2012) ..............................................................................12

\* *Chevron Corp. v. Republic of Ecuador*,
  949 F. Supp. 2d 57 (D.D.C. 2013) ....................................................................15, 16

*Chromalloy Aeroservices v. Arab Republic*,
  939 F. Supp. 907 (D.D.C. 1996) ...........................................................................13

*Creighton Ltd. v. Gov't of the State of Qatar*,
  181 F.3d 118 (D.C. Cir. 1999) ..............................................................................11

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003) .................................................................................12

*Folkways Music Publishers, Inc. v. Weiss*,
  989 F.2d 108 (2d Cir. 1993) .................................................................................12

*Gold Res., Inc. v. Bolivarian Republic of Venez.*,
  146 F. Supp. 3d 112 (D.D.C. 2015) .......................................................................12

*Hall Street Assocs., LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008)................................................................................................11

*Int'l Trading & Indus. Inv. Co. v. DynCorp Aero. Tech.*,
    763 F. Supp. 2d 12 (D.D.C. 2011) .......................................................................14

*Litvak Packing Co. v. United Food & Commercial Workers*,
    886 F.2d 275 (10th Cir. 1989) .............................................................................12

*Mediso Med. Equip. Dev. Servs. v. Bioscan, Inc.*,
    75 F. Supp. 3d 359 (D.D.C. 2014) .......................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..............................................................................................12

*Newco Ltd. v. Gov't of Belize*,
    650 F. App'x 14 (D.C. Cir. 2016) .........................................................................15

*Nuyen v. Hong Thai Ly*,
    74 F. Supp. 3d 474 (D.D.C. 2014) .......................................................................13

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013).......................................................................................11, 12

*Pao Tatneft v. Ukraine*,
    2020 U.S. Dist. LEXIS 152856 (D.D.C. Aug. 24, 2020) ......................................17

*Parsons & Whittemore Overseas Co. v. Societe Generale de*
    *L'Industrie du Papier (RAKTA)*,
    508 F.2d 969 (2d Cir. 1974)..................................................................................15

*Republic of Arg. v. AWG Grp. Ltd.*,
    211 F. Supp. 3d 335 (D.D.C. 2016) ...............................................................12, 13

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974)..............................................................................................11

*Sequip Participações S.A. v. Marinho*,
    2018 U.S. Dist. LEXIS 235778 (S.D. Fla. Nov. 19, 2018)....................................14

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
    487 F.3d 928 (D.C. Cir. 2007) ..................................................................10, 14, 15

*U.S. Energy Corp. v. Nukem, Inc.*,
   400 F.3d 822 (10th Cir. 2005) ........................................................................12

*United Paperworkers Int'l Union v. Misco, Inc.*,
   484 U.S. 29 (1987)...............................................................................17, 18

*Yukos Capital S.A.R.L. v. Samaraneftegaz*,
   592 F. App'x 8 (2d Cir. 2014) ........................................................................17

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997)............................................................................14

## STATUTES AND RULES

9 U.S.C. § 201.....................................................................................2, 9

9 U.S.C. § 202.......................................................................................10

9 U.S.C. § 203........................................................................................9

9 U.S.C. § 204.......................................................................................11

9 U.S.C. § 207.............................................................................1, 12, 13

9 U.S.C. § 301.....................................................................................2, 9

9 U.S.C. § 302...........................................................................9, 10, 11, 13

9 U.S.C. § 305(1)....................................................................................10

28 U.S.C. § 1330(a)..................................................................................10

28 U.S.C. § 1391(f)(4)...............................................................................11

28 U.S.C. § 1603(a)..................................................................................10

28 U.S.C. § 1607.....................................................................................11

28 U.S.C. § 1961.....................................................................................18

## MISCELLANEOUS

Convention on the Recognition and Enforcement of Foreign Arbitral Awards
   ("New York Convention"), June 10, 1958, 21 U.S.T. 2517 ...............................2, 14

   New York Convention, Article IV(1)(a)................................................................14

   New York Convention, Article IV(1)(b) ...............................................................14

New York Convention, Article IV(2) ...........................................................................14

New York Convention, Article V .........................................................................14, 15, 18

New York Convention, Article V(2)(b)..............................................................15, 16, 17, 18

Inter-American Convention on International Commercial Litigation ("Panama
Convention"), Jan. 30, 1975, O.A.S.T.S No. 42 .................................................................15

\* authorities on which counsel chiefly relies are marked by an asterisk

Rutas de Lima S.A.C. ("Rutas" or "RDL") respectfully submits this Memorandum in support of its Cross-Motion to confirm an international arbitral award rendered in favor of Rutas and against the Metropolitan Municipality of Lima ("MML" or "the Municipality") on May 11, 2020 (the "Award").

## PRELIMINARY STATEMENT

The Federal Arbitration Act ("FAA") embodies a strong U.S. policy in favor of the confirmation and enforcement of final arbitral awards. 9 U.S.C. § 207. Here, Rutas holds a valid and binding final arbitral award issued in its favor on May 11, 2020. The Award was issued after a lengthy arbitration proceeding, chaired by the President of the International Chamber of Commerce ("ICC") International Court of Arbitration, that included substantial briefing, discovery, an evidentiary hearing, and post-hearing briefing. This Court should confirm the Award.

Rutas' claims in the arbitration were straightforward. Rutas and MML entered into the Concession Contract of the Vías Nuevas de Lima Project (the "Contract"), pursuant to which RDL was to build, repair, operate, and maintain certain highways in and around Lima, Peru. Rutas' sole compensation for its work was the right to receive toll revenues paid by users of the highways. The Contract expressly provided that if social protests prevented tolls from being paid, MML was required to pay RDL for the lost toll revenues. It is undisputed that as a result of massive social protests, MML directed that one of the tolls on the project be shut down. Notwithstanding that MML had a clear obligation to compensate RDL for the lost toll revenues, MML refused to do so.

In accordance with the Contract, Rutas commenced arbitration proceedings in which both Rutas and MML were given a full and fair opportunity to present their claims and defenses. The case included a week-long evidentiary hearing held in Washington, D.C., the seat of the arbitration.

Ultimately, the Tribunal issued the Award holding that the Municipality had breached its contractual obligation to compensate Rutas for lost toll revenues, and awarded Rutas over US$ 66 million, plus over US$23 million for future lost revenues.  That is the Award that RDL asks the Court to confirm here.

In a transparent effort to pre-empt confirmation, MML filed a petition before this Court seeking to vacate the award under the FAA, § 10(a).  As Rutas demonstrated in its Opposition to MML's Petition (*see* ECF No. 9), MML's application fails to clear the extremely high burden to justify vacatur of the Award.

To the contrary, U.S. public policy counsels strongly in favor of recognition and enforcement of the Award under both the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, and the Inter-American Convention on International Commercial Litigation (the "Panama Convention"), Jan. 30, 1975, O.A.S.T.S. No. 42, which are implemented under U.S. law in Chapters 2 and 3 of the FAA.  *See* 9 U.S.C. §§ 201, 301.  Arbitration awards are subject to very limited review to avoid undermining the goals of arbitration: i.e., settling disputes efficiently and avoiding long and expensive litigation.  Courts are *required* to confirm arbitral awards that satisfy the requirements of the FAA and the Conventions.  Rutas has met those requirements.

A court may deny confirmation only in several narrow circumstances, which are explicitly set forth in Article V of the New York Convention (and Article 5 of the Panama Convention). There are, however, no grounds to justify a departure from the FAA's strict enforcement requirements in this case.  Though Article V grants courts discretion to refuse to enforce an award that is contrary to an explicit and well-defined U.S. public policy, *see* N.Y. Convention, art. V(2)(b), any such argument would fail here for the same reasons MML's arguments for vacatur

on common-law public policy grounds fail.  *See* Opp'n to Pet. to Vacate (ECF No. 9), § III.  There is no well-defined U.S. public policy against foreign corruption in this context, and even if there were, there is no basis to conclude that the Award violates a policy against corruption.  Indeed, the Tribunal considered this issue at length and determined that the corruption MML alleges had no impact on the underlying Contract—even if the Municipality's version of events were accepted. Because a confirmation proceeding is not an opportunity to revisit the fact-finding that produced an arbitral award, the Tribunal's determination on this issue is entitled to significant deference.

There is no basis, therefore, to deviate from the Tribunal's well-reasoned decision, and as discussed further below, Rutas is entitled to confirmation and recognition of the Award.

## STATEMENT OF FACTS

### A.    Background: The Parties and the Dispute

In April 2010, a consortium of companies submitted to the Municipality a proposal for the design, construction, operation, and maintenance of new urban roads, as well as the improvement, operation, and maintenance of existing urban roads, within the Municipality (the "Vías Nuevas de Lima Project").  Award ¶¶ 92, 98.

Over the course of more than two years, MML evaluated multiple versions of the consortium's proposal with the assistance of independent, outside consultants.  Award ¶¶ 418, 425-26, 551.  During this evaluation, the consortium presented five separate versions of its proposal for comment from the Municipality.  Award ¶ 418.  On May 3, 2012, MML formally expressed its interest in the consortium's proposal and, in accordance with applicable law, opened a bidding process that was open to any third party interested in submitting a bid for the project, for a period of 90 days from the date MML announced the process in the Peruvian official gazette "Diario El Peruano."  Award ¶ 93.

No other bids were submitted for the project, and MML awarded the project to the consortium on September 18, 2012.  Award ¶ 418.  The consortium formed the company Vías Nuevas de Lima S.A.C. (which later became Rutas) to perform the project, and on January 9, 2013, Rutas and MML signed the Concession Contract of the Vías Nuevas de Lima Project (the "Contract," attached as Exhibit 1 to Declaration of Nicolle Kownacki ("Kownacki Decl.")). Award ¶ 96-97.

Under the Contract, Rutas was required to use its own resources and financing to complete certain construction, improvement, and maintenance works for sections of highways known as Panamericana Norte, Panamericana Sur, and Ramiro Priale.  Award ¶ 98(iv); Contract ¶¶ 2.2, 7.1. In return for its investment and operation costs, Rutas would be entitled to recover transit tolls collected for each highway section.  Award ¶ 98(vi)-(vii); Contract ¶ 11.1.  Rutas received no compensation under the Contract other than the transit tolls.  The duration of the Contract is 30 years, counted from the subscription date provided in the Contract.  Award ¶ 98(iii); Contract ¶ 4.1.

The parties also expressly agreed, in Clause 10.4 of the Contract, that in the event that Rutas was unable to operate any existing, new, or additional toll units due to acts of social protest in the country, MML would be required to adopt measures to restore order so that normal operation of the toll units could resume.  Award ¶ 98(xiv).  Further, if MML were unable to restore normal operation of the tolls, the Contract required MML to reimburse Rutas for all toll amounts lost. Award ¶¶ 98(xiv), 547-548; Contract ¶ 10.4.  Specifically, the Contract provided:

> In the event that [Rutas] should be prevented from operating any of the Existing Toll Units and/or New Toll Units and/or additional Toll Units due to social protests … [MML] shall take such measures … for the purposes of restoring order … to resume the normal Operation of the Concession and normal collection of the Rates.
>
> In the event that [MML] should not be able to restore… the conditions that would allow [Rutas] to carry on the Operation of the Concession in accordance with this Contract, in an appropriate, peaceful, safe, and regular manner … [MML] hereby

guarantees to [Rutas] that … [MML] shall recognize [Rutas] an amount equal to such Rate revenue from the Existing Toll Units and/or the New Toll Unit at Chillón, as the case may be, as [Rutas] is unable to collect due to such acts, taking consideration of actual traffic demand and the rates which should have applied in that period, plus [Rutas'] financial expenses directly related to its inability to collect the Rates due to the above-specified reasons. The amount of the non-financial contractual indemnification granted by [MML] as stated above shall accrue as [from] the date on which the inability of [Rutas] to operate the relevant Toll Unit(s) is verified, until such time as [MML] is able to effectively resume the appropriate, peaceful, safe, and regular operation of the aforementioned Toll Unit(s).

Contract ¶ 10.4.

On December 29, 2016, after Rutas had undertaken substantial construction pursuant to the contract, and in accordance with the applicable contractual provisions, Rutas established a new toll in the Panamericana Norte section, known as the New Chillón Toll Unit, and Rutas began to collect the tolls.  Award ¶ 118.   Within days, however, massive social protests and riots erupted in response to the tolls.  Award ¶ 119.  Specifically, on January 5, and January 12, 2017, groups of protestors demonstrated against the new tolls, causing significant and material damage to Rutas' assets, including the toll units.  Award ¶ 119.

On January 10, 2017, pursuant to Clause 10.4 of the Contract, Rutas requested assistance from the Municipality, working jointly with the police, to safeguard the integrity of Rutas' assets. Award ¶ 120.  On January 12, 2017, in response to Rutas' request for MML's assistance under the Contract, MML asked Rutas to suspend collection of tolls at the New Chillón Toll Unit for a period of 30 days, during which the parties would evaluate an alternative solution under the law and the Contract.  Award ¶ 122.  Six days later, the Mayor of Lima, Mr. Luis Castañeda Lossio, unilaterally and permanently closed the New Chillón Toll Unit.  Award ¶ 125.

As required under Clause 10.4 of the Contract, extended negotiations followed regarding how to compensate Rutas for its work on the highways.  Award ¶¶ 122-152.  The parties could not

reach agreement, and on May 3, 2018, Rutas initiated arbitration proceedings against MML to recover damages.

### B.   The Arbitration

Clause 19.12 of the Contract contains the arbitration clause and provides in relevant part as follows:

> <u>Arbitration According to Law</u>. Non-Technical Disputes shall be settled by way of an *ad hoc* arbitration according to law, where the arbitrators shall reach their decision in accordance with the Applicable Laws and Regulations and the terms of this Contract.

Contract ¶ 19.12, subpara. (b).

The arbitration was conducted before a three-member arbitral tribunal, chaired by Dr. Alexis Mourre of France, president of the ICC International Court of Arbitration, and also including Dr. Antonio Hierro Hernández-Mora of Spain and Dr. Elvira Martínez Coco of Peru. Award ¶ 9.   The Parties agreed to the Tribunal's jurisdiction and that the proceeding would be governed by the UNCITRAL Rules, as stated in the Contract.   Award ¶ 7; Contract ¶ 19.12, subpara. (b)(i).   Over a period of two years, pursuant to the agreed-upon procedural calendar, the parties made detailed written submissions and participated in an evidentiary hearing on the merits from November 4-8, 2019, at the World Bank in Washington, D.C.   Award ¶ 83.   The parties submitted nearly 300 evidentiary exhibits and presented testimony of eight fact and expert witnesses.   Award ¶¶ 73, 78, 83.   After the hearing, the parties presented an additional round of post-hearing briefs.   Award ¶¶ 87-88.   On May 3, 2020, the Tribunal declared the proceedings closed.   Award ¶ 90.

In the arbitration, Rutas claimed approximately 140 million Peruvian soles in damages due to its inability to operate the New Chillón Toll Station and the existing Chillón Toll Station as a result of the social protests and MML's failure to compensate Rutas for such losses.   Award ¶¶ 174,

380-81, 165.  Due to the passage of time, Rutas subsequently modified its claimed damages resulting from its inability to operate the New Chillón Toll Station to approximately 233 million Peruvian soles.  Award ¶ 168.

In its initial briefing, MML presented counterclaims arguing that the Contract and certain of its amendments were null and void as a matter of Peruvian contract and administrative law. Award ¶¶ 266-92.  In a second round of briefing, MML alleged for the first time that the Contract had been obtained through corrupt means.  Award ¶ 388.  Specifically, MML argued that the Contract had been awarded as a result of contributions by Odebrecht, the former majority owner of Rutas, to the recall referendum campaign of the former Mayor of Lima, Susana Maria del Carmen Villarán de la Puente, in the period between the end of 2012 and early 2013.  Award ¶ 420. MML further alleged that a subsequent modification to the Contract, the "Bankability Addendum," also had been secured without the required approval from the Ministry of Economy, due to payments of US$ 420,168 and US$ 291,700 by Odebrecht to José Miguel Castro Gutiérrez, the former municipal manager for Lima, on February 26, 2014.  Award ¶¶ 440, 446.  To attempt to support these allegations, MML submitted as evidence a witness statement by Ad-Hoc State Attorney Jorge Miguel Ramírez, who presented a description of the findings of the ongoing criminal investigations against Mayor Villarán and other former public officers, along with a number of investigative and press reports.  Award ¶ 389.

Rutas did not submit additional evidence or testimony regarding the corruption allegation, but maintained its position that MML had not satisfied its burden to prove that the Contract or Bankability Addendum were obtained through corruption.   Specifically, among other arguments, Rutas emphasized that the Contract—which had been evaluated by MML for more than two years

and executed in compliance with Peruvian law—contained terms that had been agreed to well before any corrupt payments allegedly were made.  Award ¶¶ 319-22.

### C.     The Award

Based on the extensive evidence presented, the Tribunal agreed with Rutas' claim that MML had breached the Contract and rejected MML's defenses.  A portion of the Award was rendered in U.S. Dollars, in the amount of $2,023,070.20, for costs related to the arbitration. Award ¶ 758, subpara. 6.  The majority of the Award was rendered in Peruvian Soles.  The Tribunal awarded a fixed amount of S/222,065,716 for damages and interest accrued through October 31, 2019 (US$ $66,339,761.01), calculated as of that date at the exchange rate published by the Central Reserve Bank of Peru).  *See* Award ¶ 758, subparas. 1(a), 1(b), and 2(a) (awarding S/946,403, S/215,879,313, and S/5,250,000, respectively).  The Tribunal also established a formula for computing damages and interest for the period starting November 1, 2019, that would correspond to the amount of tolls that Rutas would have collected from the New Chillón Toll Unit, based upon real-time data that Rutas continues to collect based on its operations of the tolls.  *See* Award ¶ 758, subpara. 1(c).  That formula would apply until such time as the parties agreed to a "complementary" method of compensation, which has not occurred.  *See* Award ¶ 758, subpara. 1(c). On July 6, 2020, the Tribunal issued a Rectification and Interpretation Decision that made a small correction to the formula.  *See* Kownacki Decl., Ex. 4.  Applying that formula, Rutas is owed an additional $23,584,421.39, as of November 30, 2020, the last date for which there is available monthly data to perform the calculation.  *See* Declaration of Miguel Oyarzo Vidal (explaining the formula and U.S. dollar conversions and setting forth the applicable monthly totals based on that formula).  That amount owed pursuant to the formula will continue to accrue, as the parties have not agreed to a complementary method of compensation.

In a partially dissenting opinion, Arbitrator Elvira Martinez Coco deviated from the majority with respect to one of MML's contractual counterclaims and regarding the scope of contract liability and damages. Notably, the Tribunal ruled unanimously on MML's corruption defense, finding that "there are insufficient indications to conclude the existence of these corrupt payments and their link with the Contract," and therefore "insufficient elements to declare the total or partial nullity of the Contract." Award ¶ 500.

**D.     The U.S. Proceedings**

Following issuance of the Award, MML commenced this proceeding in this Court by filing a Petition to revive its corruption allegations as a basis for vacatur of the Award under 9 U.S.C. § 10(a)(1) and D.C. common law. *See* ECF No. 1. Rutas has opposed the Petition. By this Cross-Motion, Rutas seeks separately to confirm the Award pursuant to the New York and Panama Conventions. Rutas has not yet commenced recognition or enforcement proceedings in any other jurisdiction.

## ARGUMENT

**I.     The Court Has Jurisdiction to Confirm the Award**

Peru and the United States are contracting parties to both the New York Convention and the Panama Convention, which are implemented at Chapters 2 and 3 of the FAA, respectively. *See* 9 U.S.C. §§ 201, 301; List of Contracting States to New York Convention, http://www.newyorkconvention.org/list+of+contracting+states (last visited Dec. 15, 2020); List of Signatory Countries to Panama Convention, http://www.oas.org/juridico/english/sigs/b-35.html (last visited Dec. 15, 2020).

Under 9 U.S.C. §§ 202 and 302, the Court has subject-matter jurisdiction to recognize and enforce awards governed by the Conventions. If, as here, the majority of the parties to the arbitration are nationals from a Panama Convention country, the Panama Convention applies. *See*

9 U.S.C. § 305(1). The Panama Convention, however, incorporates by reference the relevant provisions of the New York Convention. *Id.* at § 302. Because "the relevant provisions of the Panama Convention and the New York Convention are substantively identical," courts in the D.C. Circuit have confirmed arbitral awards under the New York Convention, and rely on precedents applying the New York Convention, even if the Panama Convention may apply. *E.g.*, *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) (referencing and using the language of the New York Convention). Generally, the Conventions apply where an award arises "out of a legal relationship, whether contractual or not, which is considered as commercial" if either party to the arbitration was a non-U.S. citizen or the legal relationship "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202; *see also id.* at § 302.

Here, the Award is governed by the Conventions, and the Court accordingly has subject-matter jurisdiction, because this proceeding arises out of a commercial legal relationship between two non-U.S. entities, and further concerns a contract, the performance of which takes place outside the United States. Specifically, as the Municipality described (Pet. 1, ECF No. 1), MML is the "administrative authority of the capital of the Republic of Peru," and Rutas is a company incorporated under the laws of the Republic of Peru. As noted above, the arbitration concerned the performance of a contract in Peru for the construction and operation of highway portions.

To the extent that MML is a foreign state or a political subdivision of a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a), this Court also has subject-matter jurisdiction under the FSIA. *See* 28 U.S.C. § 1330(a). For the avoidance of doubt, MML is not immune from this confirmation proceeding because this proceeding arises out of the same "transaction or occurrence that is the subject matter of the claim of" MML's

Petition to vacate the Award.  28 U.S.C. § 1607.  In addition, "it is well settled that an action to confirm an arbitration award under the New York Convention falls squarely within the ambit of the § 1605(a)(6)(B) immunity exception."  *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 33 (D.D.C. 2013) (citing *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 123-24 (D.C. Cir. 1999)).

Venue is proper in this District pursuant to 9 U.S.C. §§ 204 and 302 and 28 U.S.C. § 1391(f)(4).

## II.    Confirmation of Arbitral Awards Is Mandatory Where the Requirements of the FAA Are Satisfied

The United States has a strong federal policy in favor of enforcing arbitral awards.  *See Belize Soc. Dev. Ltd.*, 5 F. Supp. 3d at 43 (confirming arbitral award and noting that the policy favoring arbitration "applies with special force in the field of international commerce") (internal quotations and citation omitted); *BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 240 (D.D.C. 2015) (confirming arbitral award and noting that "United States federal courts have a robust history of enforcing arbitral awards").   The purpose underlying the United States' implementation of the New York Convention (and the Panama Convention) in the FAA, is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  Consequently, where parties submit a dispute for arbitration, courts will recognize, not disrupt, the outcome because "[i]f parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'"  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013) (affirming denial of vacatur) (quoting *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)).

"Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' . . . the district court has little discretion in refusing or deferring enforcement of foreign arbitral awards." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 631 (1985)).   At the confirmation and enforcement stage, courts do not engage in *de novo* review and "must grant an arbitration panel's decision great deference."   *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (affirming district court's recognition of arbitral award); *see U.S. Energy Corp. v. Nukem, Inc.,* 400 F.3d 822, 830 (10th Cir. 2005) ("[G]reat deference is owed to the arbitrator's decision.  Indeed, the standard of review of arbitral awards 'is among the narrowest known to the law.'") (quoting *Litvak Packing Co. v. United Food & Commercial Workers*, 886 F.2d 275, 276 (10th Cir. 1989)); *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) (upholding confirmation of arbitral award and holding that "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation"); *Republic of Arg. v. AWG Grp. Ltd.*, 211 F. Supp. 3d 335, 344 (D.D.C. 2016) (confirming award and noting that the Supreme Court enforces a "high level of deference" to arbitration awards) (citing *Oxford Health Plans*, 569 U.S. at 568); *Gold Res., Inc. v. Bolivarian Republic of Venez.*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015) (confirming award and noting that "courts that are asked to confirm international arbitral decisions do so recognizing the substantial deference they owe to arbitral tribunals under the FAA") (citing *Belize Soc. Dev.*, 668 F.3d at 727).

Indeed, courts are *required* to confirm arbitral awards that satisfy the requirements of the FAA and the New York Convention.  9 U.S.C. § 207 (The Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award

specified in the [New York] Convention."); *id.* § 302 (extending § 207 confirmation requirement to Panama Convention cases); *see also Africard Co. v. Republic of Niger*, 210 F. Supp. 3d 119, 127 (D.D.C. 2016) (confirming arbitral award and recognizing that courts must confirm awards where the requirements under the FAA and New York Convention are satisfied); *Mediso Med. Equip. Dev. Servs. v. Bioscan, Inc.*, 75 F. Supp. 3d 359, 363-64 (D.D.C. 2014) (confirming award and finding no grounds "to justify a departure from the FAA's strict enforcement requirements" and that "a federal district court 'shall confirm' an arbitral award that falls under the New York Convention") (quoting 9 U.S.C. § 207).   Accordingly, this Court routinely confirms awards that are subject to parties' respective cross-motions to confirm and vacate the award.  *See, e.g. Republic of Arg.*, 211 F. Supp. 3d at 363 (denying vacatur and granting cross-motion to recognize arbitral award under the New York Convention); *Nuyen v. Hong Thai Ly*, 74 F. Supp. 3d 474, 484 (D.D.C. 2014) (same); *ARMA, S.R.O. v. BAE Sys. Overseas*, 961 F. Supp. 2d 245, 271 (D.D.C. 2013) (same).

As discussed below, each of the requirements of the New York Convention—and by extension the Panama Convention—is satisfied here, and thus the Award must be confirmed.

## III.    The Requirements for Confirmation Under the Panama and New York Conventions Have Been Satisfied

Under the FAA, "[a] party seeking enforcement of a foreign arbitral award must apply for an order confirming the award within three years after the award is made." *Chromalloy Aeroservices v. Arab Republic*, 939 F. Supp. 907, 909 (D.D.C. 1996) (citing 9 U.S.C. § 207).  The present confirmation motion is timely under 9 U.S.C. §§ 207 and 302 because the Award was issued in Rutas' favor on May 11, 2020.

To obtain recognition and enforcement under the New York Convention, a party must supply (i) a duly certified copy of the award; (ii) a certified translation of the award into English;

and (iii) a certified copy of the parties' written agreement to arbitrate.  *See* New York Convention, Art. IV.  In satisfaction of these conditions, Rutas hereby submits a certified copy of the Award, *see* Kownacki Decl., Ex. 2, and incorporates by reference a certified translation thereof, attached to MML's Petition that commenced these U.S. proceedings.  *See* ECF No. 1-3.  Rutas also submits a certified copy and translation thereof of the Tribunal's Rectification and Interpretation Decision dated July 6, 2020.  *See* Kownacki Decl., Ex. 4.  A certified copy and translation of the parties' written agreement to arbitrate, contained within the Contract, is attached hereto.  *See* Kownacki Decl., Ex. 1.

Accordingly, having satisfied the threshold requirements for recognition and enforcement of awards under the New York and Panama Conventions,[1] and there being jurisdiction in this case, Rutas is entitled to confirmation of the Award.

## IV.  No Grounds to Deny Recognition or Enforcement of the Award Apply Here

Under the New York Convention, a court "'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'"  *TermoRio S.A. E.S.P.*, 487 F.3d at 935 (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)). "Given that the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aero. Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (confirming arbitral award).  The Panama Convention contains the same grounds for denying recognition and enforcement.  *Compare* New York Convention, Art. V *with* Panama

---

[1] To the extent that these conditions from Article IV of the New York Convention also apply in recognition proceedings under the Panama Convention by virtue of 9 U.S.C. § 302 and 9 U.S.C. § 207, the conditions have been satisfied here for purposes of the Panama Convention as well.  *See Sequip Participações S.A. v. Marinho*, No. 15-23737, 2018 U.S. Dist. LEXIS 235778, at *5 (S.D. Fla. Nov. 19, 2018) (holding that in a Panama Convention confirmation proceeding, the requirements of New York Convention, Art. IV must also be satisfied pursuant to 9 U.S.C. §§ 207, 302).

Convention, Art. 5; *see also TermoRio S.A. E.S.P.*, 487 F.3d at 935 (discussing Article V of the New York Convention and noting that Article 5 of the Panama Convention is substantively identical); John Bowman, *The Panama Convention and its Implementation Under the Federal Arbitration Act*, 11 Am. Rev. Int'l Arb. 1, 59 (2000) ("The drafters of Article 5 of the Panama Convention incorporated Article V of the New York Convention almost verbatim.").

None of the grounds enumerated under Article V (or Article 5) precludes recognition of the Award here.  There is no suggestion that any of the grounds in Article V(1), with respect to which MML bears the burden, are applicable here and none is.  Though the Court has discretion under Article V(2)(b) to refuse to enforce an award if it "would be contrary to the public policy" of the United States, the stated policy "must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."  *BCB Holdings*, 110 F. Supp. 3d at 250 (granting recognition of arbitral award over public policy defense under Article V) (quotations and citation omitted).  The public policy exception "is construed extremely narrowly and applied 'only where enforcement would violate the forum state's most basic notions of morality and justice.'" *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 69 (D.D.C. 2013) (confirming arbitral award) (quoting *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 974 (2d Cir. 1974)).

The D.C. Circuit further has cautioned that "courts should rely on the public policy exception only 'in clear-cut cases'" where an arbitration award undermines the public interest. *Newco Ltd. v. Gov't of Belize*, 650 F. App'x 14, 16 (D.C. Cir. 2016) (quoting *Termorio S.A. E.S.P.*, 487 F.3d at 938) (affirming district court's enforcement of arbitral award).  Accordingly, this defense "is frequently invoked but rarely successful, particularly in view of the strong United

States policy favoring arbitration." *Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH*, 495 F. App'x 149, 151 (2d Cir. 2012) (affirming enforcement of arbitral award) (citation omitted); *see Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 158-59 (D.D.C. 2018) (holding the same and confirming the arbitral award).

Here, there is no U.S. policy or "basic notion of morality and justice" that would be offended by the enforcement of the Award.  The underlying arbitration stems from a contractual dispute over whether Rutas was entitled to compensation for lost toll revenues related to work performed by Rutas in a road construction and maintenance project for MML.  The 135-page Award was issued in Rutas' favor by a Tribunal chaired by the President of the ICC International Court of Arbitration and two other reputable arbitrators after a lengthy arbitration proceeding that included briefing, discovery, a five-day evidentiary hearing, and post-hearing briefing.

In its request for vacatur, MML argues that the Award violates the U.S. policy against "contracts tainted by corruption."  Pet. Mem. 31, ECF No. 1-1.  As Rutas demonstrated (*see* Opp'n to Pet. to Vacate, ECF No. 9), this argument provides no basis to vacate the Award and it fairs no better as a basis for non-recognition under Article V(2)(b).  Courts consistently hold that the U.S. policy against corruption "does not reach the threshold required to outweigh the policy in favor of enforcement." *BCB Holdings Ltd.*, 110 F. Supp. 3d at 250 (confirming arbitral award and holding that U.S. policy against corruption abroad is neither "explicit" nor "well-defined")*; see also Belize Soc. Dev.*, 5 F. Supp. 3d at 43 (enforcing award and finding claims of corruption under Article V(2)(b) insufficient to outweigh U.S. policy favoring recognition of arbitral awards).  Because Article V(2)(b) "was not meant to enshrine the vagaries of international politics under the rubric of public policy," *Chevron Corp.*, 949 F. Supp. 2d at 69 (internal citation and quotations omitted),

MML's purported policy basis for vacatur similarly fails to provide a cognizable basis for denying recognition of the Award under the New York Convention.

Even if the District of Columbia had a policy against recognition of "contracts tainted by corruption" that could outweigh the strong countervailing interest in confirming arbitral awards (which it does not), there is still no basis—let alone a "clear cut" basis—to conclude that the Award violates this policy.  During the arbitration, MML argued that the Contract was obtained through payments made by Odebrecht, the former majority owner of Rutas, to the recall referendum campaign of the former Mayor of Lima.  Award ¶ 420.  In support of its position, MML submitted Congressional Reports, witness statements, audit reports, and press reports.  Award ¶¶ 389, 420, 440, 446.  The Tribunal thoroughly evaluated this issue and determined that there was insufficient evidence of fraud or corruption related to the Contract.  Further, the Tribunal concluded that even if the purported payments were made, the payments had no impact on the Contract because the Contract was awarded to Rutas 18 months *before* any of the alleged corrupt acts occurred.  Award ¶¶ 442-45.  The Tribunal also concluded that a modification to the Contract (the "Bankability Addendum") was not indicative of corruption as it did not provide Rutas any terms more favorable than those in the original agreement.  Award ¶ 457.  The Tribunal's findings of fact and decision on these issues are entitled to substantial deference.  *See Pao Tatneft v. Ukraine*, Civil Action No. 17-582 (CKK), 2020 U.S. Dist. LEXIS 152856, at *32 (D.D.C. Aug. 24, 2020) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 44 (1987)) (confirming arbitral award over public policy argument and noting that the Supreme Court accords significant weight to the arbitrator's findings of fact).

Nor should the Court second guess the Tribunal simply because a party advances a public policy argument.  *See Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8, 11 (2d Cir. 2014)

(affirming award and holding that Article V(2)(b) does not entitle a court to "revisit or question the fact-finding or the reasoning which produced the award") (internal quotations and citation omitted); *United Paperworkers*, 484 U.S. at 45 ("The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them who had more opportunity to observe [witnesses] and be familiar with [the facts]. Nor does the fact that is it inquiring into a possible violation of public policy excuse a court for doing the arbitrator's task.").  There is no basis, therefore, to deviate from the Tribunal's well-reasoned decision and deny confirmation of the Award under Article V(2)(b).

Accordingly, because there are no grounds to refuse recognition under Article V of either the Panama or New York Convention, Rutas is entitled to confirmation and enforcement of the Award.

## **CONCLUSION**

For the foregoing reasons, Cross-Movant Rutas respectfully requests that, pursuant to 9 U.S.C. §§ 207, 302, and 304, an order be made:

(a)   confirming and recognizing the Award;

(b)   directing entry of judgment in accordance therewith for

(i)   US\$ 2,023,070.20 in arbitration costs, and post-judgment interest on that amount at the statutory rate under 28 U.S.C. § 1961 until the judgment is paid in full;

(ii)   US\$ 66,339,761.01 in damages and interest through October 31, 2019; and

(iii)   the amount awarded by the formula specified in the Award ¶ 758, subpara. 1(c), as modified by the subsequent Rectification and Interpretation Decision ¶¶ 57 and 59, and currently totaling \$23,584,421.39 as of November

30, 2020, to accrue pursuant to the formula until the parties agree to a complementary method of compensation; and

(c)   granting any other and further relief as the Court deems just and proper.

Dated:   December 23, 2020

Respectfully submitted,

/s/  Nicolle Kownacki
Nicolle Kownacki (D.C. Bar No. 1005627)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:     + 1 202 626 3600
Facsimile:     + 1 202 639 9355
nkownacki@whitecase.com

David G. Hille (*D.D.C. admission pending*)
**WHITE & CASE**
1221 Avenue of the Americas
New York, New York 10020
Telephone:     + 1 212 819 8200
Facsimile:     + 1 212 354 8113
dhille@whitecase.com

*Counsel for Rutas de Lima S.A.C.*