**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Metropolitan Municipality of Lima,<br><br>  Petitioner,<br><br>  v.<br><br>Rutas de Lima S.A.C.,<br><br>  Respondent. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:20-cv-02155-FYP<br>)<br>)<br>)<br>) |

**THE METROPOLITAN MUNICIPALITY OF LIMA'S
<u>MEMORANDUM IN SUPPORT OF MOTION FOR DISCOVERY</u>**

**TABLE OF CONTENTS**

I.  INTRODUCION ............................................................................................................1

II. BACKGROUND ...........................................................................................................3

    A.    The Concession Contract .................................................................................3

    B.    The Municipality's Evidence in the Arbitration of Rutas' Corruption ....................3

    C.    Rutas' Misrepresentations in the Arbitration .............................................................5

    D.    The Tribunal's Reliance on Rutas' Denials of Corruption .......................................5

    E.    Evidence Obtained by the Municipality After the Arbitration Establishes that Rutas Made False Representations in the Arbitration..............................................6

    F.    The Discovery the Municipality Seeks Concerning Rutas' False Statements.........8

III. ARGUMENT..................................................................................................................8

    A.    Legal Standard .........................................................................................................8

    B.    The Discovery the Municipality Seeks Is Relevant to Establishing that Rutas Committed Fraud on the Tribunal..............................................................10

    C.    The Discovery the Municipality Seeks Is Necessary to the Court's Determination of Whether Rutas Committed Fraud on the Tribunal ....................11

    D.    Evidence Regarding Rutas' Knowledge and Intent Was Not Discoverable During the Arbitration.............................................................................................13

IV. CONCLUSION............................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andros Compania Maritima, S.A. v. Marc Rich & Co.*,
 579 F.2d 691 (2d Cir. 1978) ...................................................................................................... 8

*ARMA, S.R.O. v. BAE Sys. Overseas*,
 961 F. Supp. 2d 245 (D.D.C. 2013) .................................................................................. *passim*

*Batesville Casket Co. v. USW*,
 No. 4:07-cv-12, 2007 U.S. Dist. LEXIS 89606 (E.D. Tenn. Dec. 4, 2007) ............................. 11

*Bennett v. Kiggins*,
 377 A.2d 57 (D.C. 1977) .......................................................................................................... 10

*Blake Constr. Co. v. C.J. Coakley Co.*,
 431 A.2d 569 (D.C. 1981) .................................................................................................... 2, 10

*Champ v. Siegel Trading Co.*,
 55 F.3d 269 (7th Cir. 1995) ....................................................................................................... 9

*Deiulemar Compagnia di Navigazione S.P.A. v. M/V Allegra*,
 198 F.3d 473 (4th Cir. 1999) ..................................................................................................... 8

*Frere v. Orthofix, Inc.*,
 No. 99-cv-4049, 2000 U.S. Dist. LEXIS 17467 (S.D.N.Y. Dec. 6, 2000) ........................... 9, 12

*Lyeth v. Chrysler Corp.*,
 929 F.2d 891 (2d Cir. 1991) ....................................................................................................... 9

*Nat'l Hockey League Players' Ass'n v. Bettman*,
 No. 93-cv-5769 (KMW), 1994 U.S. Dist. LEXIS 1160 (S.D.N.Y. Feb. 4,
 1994) ................................................................................................................................... 11, 12

*Thomas Kinkade Co. v. Hazelwood*,
 No. C 06 7034 MHP, 2007 U.S. Dist. LEXIS 9136 (N.D. Cal. Jan. 25, 2007) ....... 9, 12, 13, 14

*Watermill Ventures, Ltd. v. Cappello Capital Corp.*,
 No. 2:14-cv-8182-CAS(PLAx), 2015 U.S. Dist. LEXIS 9185 (C.D. Cal. Jan.
 5, 2015) ...................................................................................................................................... 9

*Wichard v. Suggs*,
 95 F. Supp. 3d 935 (E.D. Va. 2015) .......................................................................................... 9

**Federal Statutes**

9 U.S.C. § 10(a)(1) ................................................................................................................1, 8, 10

**Rules**

Federal Rule of Civil Procedure 81 ..........................................................................................1, 8

I.         INTRODUCION

Pursuant to the Court's November 16, 2021 order requesting briefing on whether the Metropolitan Municipality of Lima (the "Municipality") is entitled to discovery in support of its Petition to Vacate Arbitral Award (the "Petition"), the Municipality moves the Court to allow it to take discovery from Rutas de Lima S.A.C. ("Rutas"). Specifically, the Municipality requests permission to take discovery limited to Rutas' knowledge and intent with respect to the misrepresentations Rutas made to the arbitral tribunal (the "Tribunal") when it falsely denied that it engaged in corrupt acts in securing the underlying contract (the "Concession Contract") and the Contract's modifications.

Allowing such discovery is squarely within the Court's authority. Federal Rule of Civil Procedure 81 provides that the Federal Rules of Civil Procedure, including the rules governing discovery, apply in proceedings to vacate arbitral awards. *See* Fed. R. Civ. P. 81(a)(6)(B). Accordingly, courts grant discovery in post-arbitration actions where the discovery "is relevant and necessary to the determination of an issue raised by such an application." *ARMA, S.R.O. v. BAE Sys. Overseas*, 961 F. Supp. 2d 245, 261 (D.D.C. 2013) (internal quotation marks omitted). When a party seeks discovery "relate[d] to allegations of fraud," courts also consider whether "the alleged fraud was not discoverable during the arbitration itself." *Id.* Each of these considerations favors granting discovery here.

First, the request for discovery is *relevant* because Rutas' knowledge and intent are elements of fraud that the Municipality must prove to succeed on its Petition. The Municipality has moved to vacate the arbitral award pursuant to 9 U.S.C. § 10(a)(1), which requires the Municipality to establish by "clear and convincing evidence that [Rutas] . . . engaged in fraudulent conduct or used undue means during the course of the arbitration." *ARMA*, 961 F. Supp. 2d at 254.

1

In this case, Rutas' fraudulent conduct was falsely denying to the Tribunal that it secured the Concession Contract and its modifications by corrupt payments to municipal officials. This, in turn, requires the Municipality to show, among other things, that Rutas knowingly made these false representations with the intent to deceive to the Tribunal. *Blake Constr. Co. v. C.J. Coakley Co.*, 431 A.2d 569, 577 (D.C. 1981). The discovery that the Municipality seeks therefore bears directly on the central issues raised in the Petition.

Discovery is likewise *necessary* because Rutas exclusively possesses evidence related to its knowledge and intent. Since the conclusion of the arbitration, the Municipality has obtained new, previously unavailable evidence establishing that Rutas made false statements to the Tribunal when it misrepresented that the Concession Contract and its modifications had not been procured through corruption. The Municipality, however, does not have direct, contemporaneous evidence regarding (1) what Rutas knew about the underlying corruption when it falsely denied to the Tribunal that such corrupt acts had occurred or (2) what Rutas' intent was in making such misrepresentations. This evidence is unavailable without discovery from Rutas.

The Municipality's request likewise satisfies the third condition for discovery: the Municipality *could not have discovered Rutas' fraud during the arbitration*. The evidence establishing that Rutas committed fraud on the Tribunal was either not available until after the arbitration—when testimony from direct participants in the corrupt scheme became available—or did not exist at the time of the arbitration.

As further explained below, the Municipality's motion to take limited discovery should therefore be granted.

## II.  BACKGROUND

The Municipality recounts here only the facts relevant to the resolution of the instant motion; a complete recitation of the facts is set out in the Municipality's Petition, Dkt. # 1-1.

### A.  The Concession Contract

In January 2013, the Municipality and Rutas entered into the Concession Contract, pursuant to which Rutas agreed to construct, improve, and maintain three sections of a highway in the city of Lima.  Dkt. # 1-3, ¶¶ 97–98.  On February 13, 2014, the parties modified the Concession Contract by signing Bankability Addendum No. 1 (the "Bankability Addendum"), which granted Rutas additional work and additional compensation.  *See* Dkt. # 1-1, at 8.  Although Peruvian law, which governed the Concession Contract, required that the Peruvian Ministry of Economy and Finance (the "Ministry") review and approve the Concession Contract and any of its modifications prior to execution, neither the Concession Contract nor the Bankability Addendum were submitted to the Ministry for approval.  *See id.* at 7–8.

### B.  The Municipality's Evidence in the Arbitration of Rutas' Corruption

A dispute arose between the Municipality and Rutas in regard to the Concession Contract and its modifications, and the parties proceeded to arbitration under the contract's dispute resolution clause.  As relevant for the purposes of this motion, the Municipality argued that the Concession Contract was void and unenforceable because Rutas had obtained the Concession Contract and the Bankability Addendum through corrupt payments to municipal officials.  *Id.* at 10.

To show that Rutas acted corruptly, the Municipality relied on publicly available evidence that had emerged from ongoing corruption investigations into the Municipality's former mayor, Susana Villarán ("Villarán"), and former municipal manager, José Miguel Castro Gutiérrez

3

("Castro Gutiérrez"), who were accused of obtaining contributions from Rutas' parent company, Odebrecht S.A., to fund Villarán's election campaign.[1]  *Id.* at 10-12.  This included evidence showing that Odebrecht's campaign contributions were made close in time to the execution of the Concession Contract.  *Id.* at 12.  The evidence the Municipality presented also included an Odebrecht ledger that contained a February 26, 2014 entry marked "Concessao Rutas de Lima" (*i.e.*, "Rutas de Lima Concession") next to the recording of payments of "US $420,168" and "US $291,700."  *Id.* at 11.

The Municipality's evidentiary showing at the arbitration, however, was limited to publicly available evidence of Rutas' corruption.  *See* Dkt. # 1-15, ¶¶ 3–4 (noting evidence from the criminal investigation was under seal and outside the Municipality's jurisdiction).  Although the Municipality requested the internal investigative files of the relevant authorities, the request was denied.  *Id.* ¶ 5.  Accordingly, while an attorney involved in the investigations agreed to testify about the ongoing investigation at the arbitration hearing, his testimony was limited to "provid[ing] a written statement describing the public information he was authorized to disclose."  *Id*.  The Municipality therefore lacked access to the evidence that had been compiled about Rutas.  As the Municipality learned after the arbitration, this evidence included testimony from direct participants in the scheme who admitted that Rutas procured the Concession Contract and Bankability Addendum through corruption.

---

[1] Odebrecht admitted in a 2016 plea agreement with the U.S. Department of Justice that it paid approximately $788 million in bribes on more than 100 government projects in numerous countries, including Peru. Dkt. # 1-1, at 1–2, 4.  Odebrecht earned about $3.336 billion in profits from the government contracts that it obtained through these bribes.  *Id.* at 4.

### C. Rutas' Misrepresentations in the Arbitration

In the arbitration, Rutas categorically denied that it had engaged in any corrupt acts. These denials did not merely characterize the Municipality's evidentiary showing or constitute legal argument, as Rutas now contends. *See* Dkt. # 9, at 16–17. Instead, Rutas repeatedly and affirmatively represented to the Tribunal that it did not engage in corruption as a matter of fact.

For example, in its written submissions to the Tribunal, Rutas represented "that no irregular act was committed in connection with the Concession Contract." Dkt. # 1-4, ¶ 96. Indeed, Rutas "strongly reject[ed] any act of corruption" and represented to the Tribunal that contributions to Municipality officials' campaigns "were not carried out in exchange for any irregular benefit" in the Concession Contract. *Id.* ¶¶ 295, 297. Similarly, at the arbitration hearing, Rutas represented to the Tribunal in categorical terms: "We deny that there are any acts of corruption linked to the conclusion of this contract or to the execution of this contract." Dkt. # 1-6, at 77:9–20. Rutas repeated that, "among the projects in which corruption has been accepted [by Rutas' parent company], the Rutas de Lima contract does not figure and does not exist." Dkt. # 1-7, at 1229:19–20. In fact, Rutas went so far as to accuse the Municipality of fabricating Rutas' corruption to end-run the Concession Contract, informing the Tribunal that the Municipality was "contaminat[ing] the arbitration with allegations of corruption to avoid compliance with the contract." *Id.* at 1228:2–3.

### D. The Tribunal's Reliance on Rutas' Denials of Corruption

Rutas' denials were effective, and in an award issued on May 11, 2020, the Tribunal concluded that Rutas had not secured the Concession Contract or its modifications through corruption. The Tribunal noted that it had a "very clear . . . duty to declare the Concession Contract null and void if there [was] sufficient evidence that it was obtained by corrupt means." Dkt. # 1-3,

¶ 399.  It concluded, however, that the available evidence did not demonstrate corruption primarily for two reasons.

First, the Tribunal decided that the Concession Contract had not been corruptly procured because it found that the timing of the payments to Villarán's campaign did not align closely enough with key dates in the negotiation of the Contract to permit an inference of corruption.  *See id.* ¶¶ 421–422, 435, 488.  Without further evidence connecting the payments to the negotiation of the Concession Contract, the Tribunal found that it did not have enough evidence to conclude that Rutas procured the Concession Contract corruptly.  *Id.* ¶ 500.

Second, the Tribunal found that the Municipality had not adequately shown that the payments recorded in the Odebrecht ledger were linked to the Bankability Addendum.  The Tribunal conceded that the ledger payments "could have been made in relation to the [Concession] Contract," but concluded it did not have the necessary evidence "to confirm the existence of the[] corrupt payments."  *Id.* ¶¶ 441–442.  In so concluding, the Tribunal specifically relied on the fact that the corrupt payments were "*denied by Rutas de Lima.*"  *Id.* ¶ 442 (emphasis added).

The Tribunal thus credited and relied on Rutas' denials as a reason for determining that Rutas had not procured the Concession Contract or its modifications via corrupt acts.  The Tribunal awarded Rutas approximately $67 million dollars, as well as $2 million in arbitration costs.  Dkt # 1-1, at 20.

### E. Evidence Obtained by the Municipality After the Arbitration Establishes that Rutas Made False Representations in the Arbitration

After the Tribunal issued its award, the Municipality obtained, for the first time, evidence from the investigations into Rutas' corruption from the relevant investigative authorities.  Although the Municipality requested this evidence during the arbitration, it was informed that the investigatory documents could not be shared at that stage of the investigation.  *See* Dkt. # 1-5,

¶¶ 3–5. Further, some of the evidence the Municipality obtained did not exist until after the arbitration's conclusion. Specifically, in June 2020, Castro Gutiérrez, the former Municipal manager, entered into an "effective collaboration" agreement with the prosecutor's office. Dkt. # 1-1, at 23. Pursuant to the agreement, Castro Gutiérrez testified regarding his involvement in obtaining bribes from Odebrecht related to the Concession Contract. *See* Dkt. # 1-10. The Municipality subsequently received excerpts of that testimony, which revealed that municipal officials had accepted payments in exchange for agreeing in the Bankability Addendum to assign Rutas additional work and inflate the value of that work, thereby increasing Rutas' compensation under the Concession Contract. *See id.* at 1–2; Dkt. # 1-13, at 1–2. Castro Gutiérrez further testified that Odebrecht's contributions to Villarán's re-election campaign were "directly linked" to the Concession Contract and the signing of the Bankability Addendum. Dkt. # 1-10, at 2.

In August 2020, the Municipality received additional evidence from the relevant investigative authorities revealing that Raúl Ribeiro Pereira Neto, Rutas' former General Manager, testified under oath that the two payments recorded in Odebrecht's ledger were made to Castro Gutiérrez as a representative of the Villarán campaign. *See* Dkt. # 1-9, at 2–3. The first of the payments was made two weeks after the execution of the Bankability Addendum. *See id.*

That same month, the Municipality received written testimony from Henrique Simoes Barata, the former superintendent of Odebrecht Peru, and Valdemir Pereira Garreta, a political consultant on Villarán's referendum campaign. *See* Dkt. # 1-1, at 21–22. Among other things, Barata testified that he met with Castro Gutiérrez and spoke on the phone with Villarán regarding the $3 million payment to Villarán's campaign. *Id.* at 22. Garreta similarly testified that he met with Barata in Lima and he personally received $2 million of Odebrecht's payment to Villarán's campaign. *Id.* The testimony shows, among other things, that in exchange for such payments,

7

Villarán permitted the Concession Contract to bypass the otherwise mandatory Ministry review and approval process. *Id.* at 20–21.

### F. The Discovery the Municipality Seeks Concerning Rutas' False Statements

The newly obtained evidence, which was unavailable to the Municipality at the time of the arbitration, ties specific corrupt payments to the execution of the Concession Contract and the Bankability Addendum. The evidence thus establishes that Rutas made false statements to the Tribunal during the arbitration when it denied that the Concession Contract or any of its modifications were secured through corruption. The Municipality now seeks discovery to assist it in establishing that Rutas knew that its misrepresentations to the Tribunal were false and that Rutas made these misrepresentations with the intent to deceive the Tribunal. The requested discovery is thus highly germane to the Municipality's Petition, which asks the Court to vacate the arbitral award under 9 U.S.C. § 10(a)(1) because it "was procured by corruption, fraud, or undue means."

## III. ARGUMENT

### A. Legal Standard

This Court has discretion to permit the Municipality to take discovery in aid of its Petition. Federal Rule of Civil Procedure 81 provides that the Federal Rules "govern procedures . . . relating to arbitration" under Title 9 of the U.S. Code. Fed. R. Civ. P. 81(a)(6)(B). Consistent with Rule 81, courts have "maintain[ed] that the discovery procedures of the Federal Rules of Civil Procedure are generally applicable to Title 9 proceedings." *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 702 (2d Cir. 1978); *see also Deiulemar Compagnia di Navigazione S.P.A. v. M/V Allegra*, 198 F.3d 473, 482 (4th Cir. 1999) (noting that "'by its language Rule 81(a)(3) . . . applies to judicial proceedings under the FAA,' such as motions to stay

8

arbitration, compel arbitration, or vacate arbitration awards" (emphasis omitted) (quoting *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995))).

It is thus well established that "a district court may award further discovery in a post-arbitration vacatur proceeding . . . where such discovery is 'relevant and necessary to the determination of an issue raised by such an application.'" *ARMA*, 961 F. Supp. 2d at 261 (quoting *Frere v. Orthofix, Inc.*, No. 99-cv-4049, 2000 U.S. Dist. LEXIS 17467, at *4 (S.D.N.Y. Dec. 6, 2000)); *accord Lyeth v. Chrysler Corp.*, 929 F.2d 891, 898 (2d Cir. 1991) (affirming district court's discretion to allow "discovery in a proceeding to confirm an arbitral award"); *Wichard v. Suggs*, 95 F. Supp. 3d 935, 948 (E.D. Va. 2015) ("[A] district court may permit discovery in a post-arbitration proceeding when such discovery is relevant and necessary to the determination of an issue raised by such an application." (internal quotation marks omitted)); *Watermill Ventures, Ltd. v. Cappello Capital Corp.*, No. 2:14-cv-8182-CAS(PLAx), 2015 U.S. Dist. LEXIS 9185, at *12–13 (C.D. Cal. Jan. 5, 2015). Post-arbitral discovery may be particularly useful where, as here, a petition to vacate rests on an allegation that the award was procured through fraud because discovery can assist the court in "satisfy[ing] itself that the award was not infected by fraud by either the parties or counsel." *See Thomas Kinkade Co. v. Hazelwood*, No. C 06 7034 MHP, 2007 U.S. Dist. LEXIS 9136, at *12 (N.D. Cal. Jan. 25, 2007) (noting the court must serve "as guardian of the integrity of the arbitration process").

Where a party contends that an arbitral award was the product of undue influence or fraud, the party must have exercised due diligence in discovery during the arbitration proceedings before requesting discovery from a reviewing court, and courts typically require the party seeking discovery to show that the fraud was not discoverable in the underlying arbitration. *See, e.g.*, *ARMA*, 961 F. Supp. 2d at 261; *Thomas Kinkade Co.*, 2007 U.S. Dist. LEXIS 9136, at *9.

9

The Court should thus consider three factors in determining whether to permit the Municipality to take discovery from Rutas: (1) whether the discovery sought is relevant; (2) whether the discovery sought is necessary; and (3) whether the fraud was discoverable during the arbitration proceeding. All three considerations favor the Municipality.

### B. The Discovery the Municipality Seeks Is Relevant to Establishing that Rutas Committed Fraud on the Tribunal

The discovery that the Municipality seeks into Rutas' knowledge of the corruption underlying the Concession Contract and its intent in misrepresenting to the Tribunal that such corruption did not exist is directly relevant to the central issues raised in the Petition: whether the arbitral award was procured by fraud. To succeed under 9 U.S.C. § 10(a)(1), the Municipality must prove, among other things, "by clear and convincing evidence that [Rutas] actually engaged in fraudulent conduct or used undue means during the course of the arbitration." *ARMA*, 961 F. Supp. 2d at 254. The Municipality must prove five elements to establish fraudulent conduct: "(1) a false representation (2) in reference to a material fact (3) made with the knowledge of its falsity (4) with the intent to deceive and (5) on which action is taken in reliance upon the representation." *Blake Constr. Co.*, 431 A.2d at 577 (citing *Bennett v. Kiggins*, 377 A.2d 57, 60 (D.C. 1977)); *see also ARMA*, 961 F. Supp. 2d at 254 (noting that the test for fraud under the Federal Arbitration Act is rooted in the common law).

With the documents and testimony that it has obtained since the arbitration, the Municipality already has evidence that Rutas made false representations in reference to a material fact—that is, that the Concession Contract and its modifications were not procured by corruption. *See* Dkt. # 1-4, ¶ 96; *id.* ¶¶ 295, 297; Dkt. # 1-6, at 77:9–20; Dkt. # 1-7, at 1229:19–20; *id.* at 1228:2–3. The Municipality also has evidence that the Tribunal relied on those representations in issuing its award. *See* Dkt. # 1-3, ¶ 442 (concluding that it could not "confirm the existence of

the[] corrupt payments, *which are denied by Rutas de Lima*" (emphasis added)).  The discovery the Municipality seeks directly bears on elements three and four—whether Rutas made these misrepresentations with knowledge that they were false and with the intent to deceive the Tribunal.  *See Nat'l Hockey League Players' Ass'n v. Bettman*, No. 93-cv-5769 (KMW), 1994 U.S. Dist. LEXIS 1160, at *20 (S.D.N.Y. Feb. 4, 1994) (granting post-arbitration discovery after the court "examine[d] the relationship of the discovery requests to the specific factual issues raised by the parties' claims and defenses").

In fact, Rutas itself argues that the Municipality's Petition cannot succeed because the Municipality "has not identified any information supporting an inference—let alone establishing by clear and convincing evidence"—that Rutas "'knew' the Contract or Bankability Addendum were obtained through corruption."  Dkt. # 9, at 17–18.  It has further suggested that Rutas' statements to the Tribunal were not intended to deceive but instead were merely advocacy.  *See id.* at 16–17.  In so arguing, Rutas concedes that evidence concerning its knowledge of the falsity of the misrepresentations it made to the Tribunal and its intent in making those misrepresentations are relevant.  The discovery the Municipality seeks is therefore clearly "keyed to specific issues raised . . . in [the] pleadings" and is thus especially appropriate.  *Batesville Casket Co. v. USW*, No. 4:07-cv-12, 2007 U.S. Dist. LEXIS 89606, at *14 (E.D. Tenn. Dec. 4, 2007).

### C. The Discovery the Municipality Seeks Is Necessary to the Court's Determination of Whether Rutas Committed Fraud on the Tribunal

Discovery concerning Rutas' knowledge and intent is also necessary to the Court's resolution of the Municipality's Petition.  *See ARMA*, 961 F. Supp. 2d at 261.  In determining whether discovery is necessary, the Court must undertake a "practical" inquiry that is "keyed to the specific issues raised by the party challenging the award and the degree to which those issues implicate factual questions that cannot be reliably resolved without some further disclosure."

11

*Frere*, 2000 U.S. Dist. LEXIS 17467, at *15; *see also Thomas Kinkade Co.*, 2007 U.S. Dist. LEXIS 9136, at *6.  Discovery is especially necessary where a party could not "reasonably be expected to offer proof of such [information] prior to discovery."  *Nat'l Hockey League Players' Ass'n*, 1994 U.S. Dist. LEXIS 1160, at *11.

The Municipality cannot obtain direct evidence regarding Rutas' knowledge and intent without discovery in this matter.  The Municipality has diligently collected compelling evidence that Rutas' representations to the Tribunal were false.  But, without discovery into what Rutas knew about the corruption during the arbitration and its intent in denying that the Concession Contract and its modifications were procured by corruption, the Municipality can rely only on an inference that Rutas knew about the corruption and intended to deceive the Tribunal in the arbitration.  Put differently, while the Municipality can prove that Rutas made material misrepresentations during the arbitration proceedings, it seeks additional evidence to confirm that those misrepresentations were fraudulent.

Evidence related to a party's knowledge and intent rests in the exclusive control of the party itself.  That is, Rutas is in sole possession of evidence regarding its knowledge and intent when it informed the Tribunal that it did not obtain the Concession Contract and its modifications through corruption.  Moreover, Rutas argues in this vacatur action that the Municipality's lack of evidence concerning Rutas' knowledge and intent when it made those misrepresentations is grounds for denying the Petition.  *See* Dkt. # 9, at 17–18 (arguing the Municipality has failed to show Rutas knew its statements were false); *id.* at 16–17 (arguing Rutas' statements to the Tribunal were mere advocacy and not intended to deceive the Tribunal).  Rutas' knowledge and intent are thus disputed issues that the Court must determine.  Because the Municipality "cannot reasonably be expected to offer proof of" Rutas' knowledge and intent "prior to discovery," *Nat'l Hockey*

*League Players' Ass'n*, 1994 U.S. Dist. LEXIS 1160, at *11, discovery is necessary for the Court to determine whether Rutas knew about the corruption at the time of the arbitration and intended to deceive the Tribunal when it falsely denied having committed those corrupt acts.

### D. Evidence Regarding Rutas' Knowledge and Intent Was Not Discoverable During the Arbitration

Finally, the Court should permit the Municipality to take discovery because Rutas' fraud on the Tribunal was not discoverable during the arbitration. This final inquiry is intended to prevent parties from "hold[ing] claims of fraud in reserve" in order to "engage in 'sandbagging' strategies" to circumvent arbitration proceedings. *ARMA*, 961 F. Supp. 2d at 254. Thus, the touchstone is whether the movant "could have discovered the information" requested "through the exercise of due diligence in the proceedings below." *Thomas Kinkade Co.*, 2007 U.S. Dist. LEXIS 9136, at *9.

The Northern District of California's decision in *Thomas Kinkade Co.* is instructive. There, the court considered a motion to take discovery regarding the defendants' billing practices in support of the plaintiffs' petition to vacate an arbitral award. *Id.* at *1–2. The plaintiffs had presented "substantial evidence to the [arbitral] panel related to billing fraud, and the panel explicitly found that defense counsel's billing records were unreliable and unsupportable." *Id.* at *8–9. Although they had already presented evidence on the defendants' billing practices, the plaintiffs argued to the district court that further discovery of the defendants' billing practices was necessary because the plaintiffs had "learned the identities of certain former employees" with relevant information only *after* the arbitration award was entered. *Id.* at *4–5. The court concluded that this late-breaking information gave the plaintiffs grounds to take discovery. Specifically, the court found "that plaintiffs acted diligently in the arbitration proceedings, and should be permitted to explore relevant information that they obtained after the final award was issued." *Id.* at *9–10.

13

Just like the plaintiffs in *Thomas Kinkade Co.*, the Municipality diligently sought and presented evidence during the arbitration that suggested Rutas had procured the Concession Contract and its modifications through corrupt acts. During the arbitration, however, the Municipality lacked certain particularly probative evidence of Rutas' corruption that either was under seal or did not exist at the time of the arbitration. It was not until after the Tribunal issued its award that the Municipality obtained such evidence.

The Municipality is therefore similarly situated to the plaintiffs in *Thomas Kinkade Co.* The Municipality sought and secured—through its persistence and diligence—additional, highly probative evidence after the arbitration that showed that Rutas' statements regarding corruption were false. In light of the Municipality's dogged attempts to uncover evidence of Rutas' corruption, it is plain that the Municipality did not hold its claims that Rutas made fraudulent misrepresentations to the Tribunal in reserve to circumvent the Tribunal's decision. *ARMA*, 961 F. Supp. 2d at 254. Instead, the Municipality is requesting discovery now because new information became available after the Tribunal entered its award that shed critical light on the fact that Rutas made false statements to the Tribunal. The Municipality "should be permitted to explore relevant information that [it] obtained after the final award was issued" through narrowly tailored discovery concerning Rutas' knowledge and intent. *Thomas Kinkade Co.*, 2007 U.S. Dist. LEXIS 9136, at *10.

## IV.    CONCLUSION

For the foregoing reasons, the Municipality respectfully requests that the Court permit it to take discovery from Rutas regarding Rutas' knowledge and intent when it represented to the Tribunal that it had not engaged in corrupt acts related to the Concession Contract or its modifications.

14

| | |
|---|---|
| Dated: December 14, 2021 | Respectfully submitted,<br><br>THE METROPOLITAN MUNICIPALITY OF LIMA<br><br>By its attorneys,<br>/s/ Andrew B. Loewenstein<br><br>Andrew B. Loewenstein (D.D.C. Bar No. MA0018)<br>FOLEY HOAG LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2600<br>Tel: 617-832-1000<br>Fax: 617-832-7000<br>aloewenstein@foleyhoag.com<br><br>Shrutih Tewarie (*pro hac vice to be submitted*)<br>José Rebolledo (*pro hac vice to be submitted*)<br>FOLEY HOAG LLP<br>1301 Avenue of the Americas, 25th Floor<br>New York, NY 10019<br>Tel: 646-927-5500<br>Fax: 646-927-5599<br>stewarie@foleyhoag.com<br>jrebolledo@foleyhoag.com |