**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
)
Metropolitan Municipality of Lima, )
)
)   Case No. 20-CV-02155 (FYP)
*Petitioner and Cross-Respondent*, )
)
v. )
)
Rutas de Lima S.A.C., )
)
*Respondent and Cross-Movant*. )
———————————————————— )

**STATEMENT OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO METROPOLITAN MUNICIPALITY OF LIMA'S**
**<u>MOTION FOR DISCOVERY</u>**

**WHITE & CASE**

Jonathan C. Hamilton
Nicolle Kownacki
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:      + 1 202 626 3600
Facsimile:       + 1 202 639 9355
jhamilton@whitecase.com
nkownacki@whitecase.com

David G. Hille
1221 Avenue of the Americas
New York, NY 10020
Telephone:      + 1 212 819 8200
Facsimile:       + 1 212 354 8113
dhille@whitecase.com

January 11, 2022                    *Counsel for Rutas de Lima S.A.C.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .............................................................................................................. 4

    A.    The Contract .................................................................................................. 4

    B.    The Arbitration and Defense of MML ......................................................... 5

    C.    The Tribunal Rejected MML's Defense After Considering the Evidence ......... 7

    D.    MML Moved for Vacatur on the Same Grounds That the Tribunal
    Already Considered and Rejected .................................................................. 8

ARGUMENT .................................................................................................................. 10

I.    Post-Arbitration Discovery Is Highly Disfavored and MML Has Failed to
Establish a Basis for It Here .......................................................................... 10

    A.    The Discovery MML Seeks Will Not Convert MML's Supposed
    Allegations of "Fraud" into a Basis for Vacatur Under § 10(a)(1) .................. 11

    B.    MML Has Not Shown That the Discovery It Seeks Was "Not
    Discoverable" During the Arbitration ........................................................... 16

CONCLUSION ............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### CASES

*ARMA, S.R.O. v. BAE Sys. Overseas,
   961 F. Supp. 2d 245 (D.D.C. 2013) ................................................................................. passim

*Cook Chocolate Co. v. Salomon, Inc.,
   748 F. Supp. 122 (S.D.N.Y. 1990) ...................................................................................... 2, 11

Doscher v. Sea Port Grp. Sec., LLC,
   No. 15-CV-384 (JMF), 2017 U.S. Dist. LEXIS 200770 (S.D.N.Y. Dec. 6, 2017) ................... 2

Empresa Constructora Contex Limitada v. Iseki, Inc.,
   106 F. Supp. 2d 1020 (S.D. Cal. 2000) ......................................................................... 2, 10, 16

FTC v. Boehringer Ingelheim Pharm., Inc.,
   180 F. Supp. 3d 1  (D.D.C. 2016) ........................................................................................... 14

Hamilton Park Health Care Ctr., LTD v. 1199 SEIU United Healthcare Workers E.,
   No. 13-CV0 0621 (DMC), 2013 U.S. Dist. LEXIS 162026 (D.N.J. Nov. 13, 2013) ................. 2

Int'l Trading & Indus. Inv. Co. v. DynCorp Aero. Tech.,
   763 F. Supp. 12 (D.D.C. 2011) ................................................................................................ 1

Lummus Glob. Amazonas, S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.,
   256 F. Supp. 2d 594 (S.D. Tex. 2002) ................................................................................. 2, 10

Magid v. Waldman,
   No. 19-CV-11516 (JMF), 2020 U.S. Dist. LEXIS 224688 (S.D.N.Y. Dec. 1, 2020) ........... 2, 17

MCI Constructors, LLC v. City of Greensboro,
   610 F.3d 849 (4th Cir. 2010) ............................................................................................... 2, 13

Merrill Lynch, Pierce, Fenner & Smith v. Lambros,
   1 F. Supp. 2d 1337 (M.D. Fla. 1998) ...................................................................................... 18

Midwest Generation EME, LLC v. Continuum Chem. Corp.,
   768 F. Supp. 2d 939 (N.D. Ill. 2010) ...................................................................................... 10

O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.,
   857 F.2d 742 (11th Cir. 1988) .......................................................................................... 10, 17

Republic of Arg. v. AWG Grp. Ltd.,
   211 F. Supp. 3d 335 (D.D.C. 2016 .......................................................................................... 15

Tradiverse Corp. v. Luzar Trading S.A.,
   No. 20 Civ. 3387, 2020 U.S. Dist. LEXIS 110287 (S.D.N.Y. June 23, 2020) .......................... 2

*Watermill Ventures, Ltd. v. Cappello Capital Corp.*,
  No. 2:14-cv-08182-CAS(PLAx), 2015 U.S. Dist. LEXIS 9185 (C.D. Cal. Jan. 5, 2015).......... 2

*Wichard v. Suggs*,
  95 F. Supp. 3d 935 (E.D. Va. 2015)........................................................................ 2, 15

## STATUTES

9 U.S.C. § 10(a)(1)..................................................................................................... *passim*

*\* indicates authority on which counsel chiefly relies*

Respondent and Cross-Movant Rutas de Lima S.A.C. ("Rutas") respectfully submits this Opposition to the Metropolitan Municipality of Lima's ("MML") Motion for Discovery.  ECF 35.

## PRELIMINARY STATEMENT

Arbitration confirmation and vacatur proceedings are extremely limited and "generally summary in nature" with only restricted inquiry into factual issues.  *Int'l Trading & Indus. Inv. Co. v. DynCorp Aero. Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (confirming arbitral award). Consistent with the Federal Arbitration Act ("FAA") and the goals of arbitration—*i.e.*, settling disputes efficiently and avoiding long and expensive litigation—vacatur of an award is rare and post-arbitration discovery is rarer still.  Courts repeatedly caution that U.S. public policy favoring prompt confirmation and enforcement of final arbitral awards would be frustrated where an award-debtor attempts to use discovery as a tactic to avoid its obligations under an award.  *See, e.g. ARMA, S.R.O. v. BAE Sys. Overseas*, 961 F. Supp. 2d 245, 261 (D.D.C. 2013) (denying concurrent requests for vacatur and discovery).

That is precisely the situation here.  To avoid its obligations to Rutas under a valid and binding arbitral award (the "Award," ECF 1-3) rendered by a Tribunal presided by Dr. Alexis Mourre, the then-president of the Chamber of Commerce International Court of Arbitration, MML filed a petition with this Court to vacate the Award under the FAA, 9 U.S.C. § 10(a)(1), and on public policy grounds.  Petition, ECF 1.  Now, MML attempts to leverage its own baseless grounds for vacatur to further delay this proceeding by pursuing discovery.  Mot. for Discovery, ECF 35. In particular, MML seeks discovery as to Rutas' purported knowledge of the veracity of certain advocacy statements made by its counsel during the arbitration regarding supposed corrupt payments allegedly related to the concession contract underlying the parties' dispute (the "Contract").  Discovery Mem., ECF 35-1 at 1, 10.

Post-arbitration discovery, however, is highly disfavored and consistently rejected.[1]  In the limited circumstances where discovery is appropriate, the requesting party must show that the discovery sought is both relevant and necessary to resolving the vacatur petition and that it was not discoverable during the arbitration itself.  None of those circumstances exists here.

First, the requested discovery is irrelevant as to whether Rutas actually engaged in fraudulent conduct *during the course of the arbitration*, as required for vacatur under § 10(a)(1).  As courts have routinely held, attorney statements—such as the "denials of corruption" MML alleges—are not evidence.  Rather, such statements are considered non-testimonial legal arguments, and are thus not a basis for vacatur under § 10(a)(1).  *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010); *Cook Chocolate Co. v. Salomon, Inc.*, 748 F. Supp. 122, 126 (S.D.N.Y. 1990); *ARMA*, 961 F. Supp. 2d at 258.  MML has never suggested that any witness for Rutas committed perjury or that Rutas submitted a false document—and MML's discovery is accordingly unrelated to any such circumstance that actually could constitute fraud in the arbitration.

---

[1] *See, e.g., Glob. Gaming Phil., LLC v. Razon*, No. 21-CV-02655 (LGS) (SN), 2021 U.S. Dist. LEXIS 176519, at *1 (S.D.N.Y. Sep. 16, 2021) (denying post-arbitration discovery); *Magid v. Waldman*, No. 19-CV-11516 (JMF), 2020 U.S. Dist. LEXIS 224688, at *8 (S.D.N.Y. Dec. 1, 2020) (same); *Tradiverse Corp. v. Luzar Trading S.A.*, 20 Civ. 3387, 2020 U.S. Dist. LEXIS 110287, at *9 (S.D.N.Y. June 23, 2020) (same); *Shepherd v. LPL Fin. LLC*, No. 5:17-CV-150-D, 2019 U.S. Dist. LEXIS 43614, at *8 (E.D.N.C. Mar. 18, 2019) (same); *Doscher v. Sea Port Grp. Sec.*, LLC, No. 15-CV-384 (JMF), 2017 U.S. Dist. LEXIS 200770, at *17 n.4 (S.D.N.Y. Dec. 6, 2017) (same); *Wichard v. Suggs*, 95 F. Supp. 3d 935, 948 (E.D. Va. 2015) (same); *Watermill Ventures, Ltd. v. Cappello Capital Corp.*, No. 2:14-cv-08182-CAS(PLAx), 2015 U.S. Dist. LEXIS 9185, at *31 (C.D. Cal. Jan. 5, 2015) (same); *ARMA*, 961 F. Supp. 2d at 261 (same); *Hamilton Park Health Care Ctr., LTD v. 1199 SEIU United Healthcare Workers E.*, No. 13-CV00621 (DMC), 2013 U.S. Dist. LEXIS 162026, at *19 (D.N.J. Nov. 13, 2013)(same); *Lummus Glob. Amazonas, S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.*, 256 F. Supp. 2d 594, 628 (S.D. Tex. 2002) (same); *Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F. Supp. 2d 1020, 1025 (S.D. Cal. 2000) (same).

Second, the requested discovery is not necessary to resolve MML's vacatur petition.  The Tribunal expressly held that MML's allegations of corruption, *even if true*, "could [not] have affected the validity of the Contract."   Award ¶ 442.  The allegations that MML makes now are mere reformulations of the exact allegations the Tribunal already rejected.  *See* Opp'n to Pet., ECF 9 at 20–23.

Third, the supposedly false nature of Rutas' "denials" is based on evidence that not only was easily discoverable, but actually was "discovered" by MML during the arbitration and considered by the Tribunal.  In fact, MML made the corruption allegations a central defense in its case, based, again, upon the same factual circumstances it alleges now.  Critically, although Rutas denied the corruption allegations during the arbitration, MML *never* sought *any* discovery regarding the corruption allegations *from Rutas*.  Having elected not to seek this discovery from Rutas in the arbitration, MML certainly cannot obtain it here.  Moreover, MML failed to disclose that it already participated in an additional opportunity to seek discovery of Rutas in a separate ongoing arbitration, which is imminently going to hearing.  MML is now abusing this enforcement proceeding to try to get a third bite at the apple with discovery efforts.

Ultimately, after extensive briefing and an evidentiary hearing, the Tribunal rejected the suggestion that Rutas' denials were false.  MML's motion for discovery—much like its petition for vacatur—seeks only to re-litigate the same issues that were presented in the arbitration proceedings, which is entirely improper within the severely circumscribed scope of review in a vacatur action under the FAA.  MML's belated request for discovery, which was *not once* mentioned in its vacatur petition, illustrates the true motive of MML's motion: to further delay the inevitable confirmation and enforcement of a valid and binding arbitral award.  MML should not be permitted to bog down this summary proceeding any further.  Given the very limited review by

the courts of arbitration awards and the more limited circumstances in which post-arbitration discovery is warranted, the Court should deny MML's motion.

## BACKGROUND

As argued below, MML's request for discovery fails for largely the same reasons that its entire vacatur petition must fail. Specifically, the only suggestion of fraud during the arbitration that MML has ever alleged is Rutas' supposed "denials" of corruption allegations that the Tribunal ultimately rejected and MML now raises again here. No discovery is going to convert Rutas' counsel's advocacy statements into a basis for finding fraud. Because of the overlap in the bases for rejecting both vacatur and discovery, Rutas has reproduced here, in part, its description of the relevant Background from its vacatur Opposition. *See* Opp'n to Pet. 3–11.

### A.    The Contract

The Republic of Peru established a legal framework, pursuant to its Constitution of 1992, to promote investment in infrastructure to improve the country and develop its economy. Pursuant to that framework, in April 2010, a consortium of companies submitted to MML a proposal for the design, construction, operation, and maintenance of new urban roads, as well as the improvement, operation, and maintenance of existing urban roads, within Lima, Peru. Award ¶¶ 92, 98. Over the course of more than two years, MML evaluated multiple versions of the consortium's proposal with the assistance of independent, outside consultants. Award ¶¶ 418, 425–26, 551.[2] On May 3, 2012, MML formally expressed its interest in the consortium's proposal and, in accordance with applicable law, commenced a bidding process that was open to any interested third party for a

---

[2] Citations to the Award included herein refer to the English translation of the Award that MML submitted with its Petition. *See* ECF 1-3. That translation omits paragraph 398, and therefore all subsequent paragraphs are mis-numbered by one. For ease of reference, Rutas refers to the paragraphs as they are numbered in the English translation. For completeness, Rutas has provided a translation of paragraph 398 of the Award. *See* ECF 9-4.

period of 90 days.  Award ¶ 93.  No other entities submitted a bid for the project, and MML awarded the project to the consortium on September 18, 2012.  Award ¶¶ 416, 418.  The consortium formed a company (which later became Rutas) to perform the project, and on January 9, 2013, Rutas and MML signed the Contract.  Award ¶¶ 96–97.

Rutas used its own resources and financing to complete certain construction, improvement, and maintenance works for sections of highways.  Award ¶ 98(iv).  Rutas' sole compensation for its work was the right to receive toll revenues paid by users of the highways.  *Id.*  Within days after Rutas began collecting tolls, however, massive social protests and riots erupted in response to the tolls, which caused significant and material damage to Rutas' assets, including the newly constructed toll units.  Award ¶¶ 118–19.  Under the Contract, the parties had agreed expressly that in the event that Rutas was unable to operate the toll units due to acts of social protest, MML would be required to restore order so that normal operations could resume.  Award ¶ 98(xiv).   In response to Rutas' request for MML's assistance, however, MML unilaterally and permanently closed the new toll units.  Award ¶ 125.

### B.    The Arbitration and Defense of MML

On May 3, 2018, Rutas initiated arbitration proceedings against MML.  Award ¶¶ 146–52.  Over a period of two years, the parties made detailed written submissions and participated in an evidentiary hearing on the merits.  Award ¶ 83.  The parties submitted nearly 300 exhibits and presented testimony of eight witnesses and experts.  Award ¶¶ 73, 78, 83.

In its second round of briefing, MML raised a new defense, alleging that the Contract had been obtained through corrupt means.  Award ¶ 388.  Specifically, MML argued that the Contract had been awarded as a result of a $3 million contribution by Odebrecht, the former majority owner of Rutas, to the campaign of the former Mayor of Lima, Susana Maria del Carmen Villarán de la Puente, in the period between the end of 2012 and early 2013.  Award ¶ 420.  MML further alleged

that a subsequent modification to the Contract, the "Bankability Addendum," also had been secured without the requisite approval from the Ministry of Economy due to payments of $420,168 and $291,700 by Odebrecht to José Miguel Castro Gutiérrez, the former municipal manager for MML, on February 26, 2014.  Award ¶¶ 440, 446.

In an attempt to support these allegations, MML submitted a variety of evidence, including (i) Congressional Reports; (ii) a witness statement by Ad-Hoc State Attorney Jorge Miguel Ramírez, who presented a description of the findings of the ongoing criminal investigations against Mayor Villarán and other former public officers; (iii) an Audit Report of the Comptroller General regarding purported irregularities related to the Bankability Addendum; and (iv) press reports from journalists investigating the corruption allegations.  Award ¶ 389.

After MML raised these allegations and provided its supporting evidence in its final written submission before the hearing, Rutas made an additional submission addressing this defense. Award ¶ 78.  In that submission, Rutas argued that MML's evidence did not in fact show that the Contract or the Bankability Addendum was obtained as a result of any payments by any individual representing Odebrecht to officials of MML.  Award ¶ 317.  Specifically, Rutas emphasized that the Contract—which had been evaluated by the Municipality for more than two years and executed in compliance with Peruvian law—reflected terms that had been agreed to *well before* any alleged payments were made.  Award ¶¶ 319–21.   Moreover, Rutas argued that the signing of the Contract complied with Peruvian law, particularly given that no third parties had bid for the project, among other considerations.  Award ¶ 320.

Rutas also pointed to the fact that the key witness whose testimony MML relied upon, Jorge Barata (who was the former superintendent of Odebrecht Peru), had expressly told State authorities that Rutas did *not* benefit from Odebrecht's contribution to the Villarán campaign.

6

Award ¶¶ 435–36.  As Rutas also noted, Barata's statement was consistent with the plea agreement Odebrecht entered into with Peruvian authorities in which Odebrecht admitted to corruption in connection with *four separate other* infrastructure projects in Peru, but made no such admission with respect to the Contract.  Award ¶ 322.  MML offered no basis to suggest that Odebrecht's plea was incomplete.

At the hearing, both sides further emphasized their respective arguments on the corruption issue, and Rutas had the opportunity to cross-examine State Attorney Ramírez.  Award ¶ 83.  Rutas did not submit additional evidence or testimony regarding the corruption allegation, but maintained its position that MML had not satisfied its burden to prove that the Contract or Bankability Addendum were obtained through corruption.   MML made clear to the Tribunal that the investigations in Peru were ongoing (Award ¶¶ 479–81), but it did not at any time request a delay, stay, or continuance of the underlying arbitration on the basis of a purported need to further develop its corruption allegations or to obtain additional evidence, and it did not seek to obtain from Rutas *any* discovery related to the purported corruption or Rutas' denials. *See generally* Award ¶¶ 15–90 (describing the procedural history of the arbitration).  Nor did MML seek the Tribunal's or any court's assistance in obtaining any such evidence.  *See id.*

### C.  The Tribunal Rejected MML's Defense After Considering The Evidence

Based on the evidence presented, the Tribunal issued a valid and binding Award, which expressly concluded that MML breached its contractual obligation to compensate Rutas for lost toll revenues under the Contract.  Award ¶ 754.  Given the future lost revenue incurred by Rutas and the continued accrual of interest to date on both damages amounts, Rutas is owed over $119 million as of December 31, 2021.

In the Award, the Tribunal expressly considered and unanimously rejected the same allegations of corruption related to the procurement of the Contract that MML raises in these U.S.

proceedings and its motion for discovery.  *See* Award ¶ 500; Petition ¶ 5; Discovery Mem. 12–14.
The Tribunal found that, "in light of the evidence provided and the public information available at
the date of issuing" the Award, "there are insufficient indications to conclude the existence of these
corrupt payments and their link with the Contract," and therefore there were "insufficient elements
to declare the total or partial nullity of the Contract."  Award ¶ 500.

The Tribunal concluded that any alleged payments relating to the prior majority
shareholder (Odebrecht) *post-dated* the award of the project to Rutas, and thus did not create a
sufficient basis for a finding of corruption in the making of the Contract.  Award ¶¶ 436–37.  The
Tribunal also found that there was "no evidence to conclude" that a subsequent Bankability
Addendum had been obtained because of any payments by Odebrecht.  Award ¶ 457.  The Tribunal
emphasized that MML had put forth "no study or evidence" that allowed the Tribunal to assess
whether the toll rates increased disproportionately under the Addendum, and also noted that the
terms of the Addendum in fact appeared to be "more onerous for [Rutas]."  Award ¶¶ 454, 457.

More generally, the Tribunal also noted that MML had not made any reference to illicit
acts during the period that the parties were negotiating compensation for Rutas as a result of the
cancellation of the toll unit.  Award ¶ 498.  The Tribunal also observed that MML had declined to
affirmatively request as part of its counterclaim the total or partial nullity of the Contract on the
basis of corruption, which was itself a "relevant indication of absence of sufficient evidence of the
alleged acts of corruption."  Award ¶¶ 391, 499.

### D.    MML Moved for Vacatur on the Same Grounds That the Tribunal Already Considered and Rejected

Finding itself in the position of the award-debtor, MML—instead of satisfying its
obligations under the Award—filed a petition with this Court to vacate the Award under § 10(a)(1)
of the FAA and public policy grounds.  ECF 1.  The petition claims that "new" evidence

demonstrates that certain statements Rutas made through its counsel during the course of the arbitration—specifically, arguments Rutas made regarding MML's corruption defense—were "false."  Pet. Mem., ECF 1-1 at 26.  In particular, the purportedly new evidence consists of three documents prepared by the Peruvian State Prosecutor's office (ECF 1-8, 1-9, 1-13), as well as the written testimony of Valdemir Pereira Garreta, a political consultant (ECF No. 1-10), and the written testimony of Jorge Barata, the former superintendent of Odebrecht Peru (ECF No. 1-11).  Each of these documents describes the same factual accounts that were described in various reports MML already presented in the arbitration—which the Tribunal considered and deemed insufficient to establish that the Contract and/or Bankability Addendum were obtained through illicit conduct.  *See* Opp'n to Pet., ECF 9 at 10–11.

In an attempt to further delay payment to Rutas, MML now seeks discovery on Rutas' purported "knowledge and intent with respect to the misrepresentations Rutas made to the [Tribunal] when it falsely denied that it engaged in corrupt acts in securing the [Contract] and the Contract's modifications."  Discovery Mem. 1.  Similar to its petition to vacate, MML's motion for discovery relies on a self-serving declaration from MML's Public Prosecutor's Office (ECF No. 1-15) and other reports that were addressed in the arbitration to argue that MML could not previously access the "new" evidence that supposedly demonstrates the falseness of Rutas' counsel's statements.  Discovery Mem. 4.  But, as described below, MML has not shown that the discovery it seeks is relevant or necessary to resolution of its vacatur petition, and it also has not shown that the information it seeks could not have been discovered during the arbitration.

## ARGUMENT

**I.      Post-Arbitration Discovery Is Highly Disfavored and MML Has Failed to Establish a Basis for It Here**

"Post-arbitration discovery is rare, and courts have been extremely reluctant to allow it.  It is often a tactic employed by disgruntled or suspicious parties who, having lost the arbitration, are anxious for another go at it." *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 943 (N.D. Ill. 2010) (citation omitted) (denying post-arbitration discovery); *see also ARMA*, 961 F. Supp. 2d at 261 (describing request for post-arbitration discovery as an "unjustified fishing expedition").  "[T]he liberality that normally attends discovery in civil litigation is not appropriate" in the context of a challenge to an arbitration award.  *Lummus Global Amazonas S.A.*, 256 F. Supp. 2d at 626 (denying post-arbitration discovery).

The party challenging an arbitration award bears the burden of demonstrating that the requested discovery would substantiate a "fundamental defect in the arbitration proceeding." *Empresa Constructora Contex Limitada*, 106 F. Supp. 2d at 1025 (denying post-arbitration discovery).   Where, as here, a party seeks discovery that relates to allegations of fraud under 9 U.S.C. § 10(a)(1), the party must first establish that "such discovery is 'relevant and necessary to the determination of an issue raised by such an application.'"  *ARMA*, 961 F. Supp. 2d at 261 (quoting *Frere v. Orthofix, Inc*., No. 99-cv-4049, 2000 U.S. Dist. LEXIS 17467, at *12 (S.D.N.Y. Dec. 6, 2000)).  Next, the movant must demonstrate that "the alleged fraud was not discoverable during the arbitration itself." *Id.* (citing *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 749 (11th Cir. 1988)).

As detailed below, none of these conditions is met here.  Rather, MML's motion seeks information that is irrelevant to outcome of its vacatur petition and attempts to re-litigate issues that were squarely before the Tribunal in the underlying arbitration.

**A.     The Discovery MML Seeks Will Not Convert MML's Supposed Allegations of "Fraud" into a Basis for Vacatur Under § 10(a)(1)**

The need and relevance of post-arbitration discovery rests on the impact of the requested discovery on the post-arbitral process. *Glob. Gaming Phil., LLC*, 2021 U.S. Dist. LEXIS 176519, at *3 (denying post-arbitration discovery request) (citation omitted).  "The court's inquiry is 'necessarily keyed to the specific issues raised by the party challenging the award and the degree to which those issues implicate factual questions that cannot be reliably resolved without some further disclosure.'"  *Id*. (quoting *Frere*, 2000 U.S. Dist. LEXIS 17467, at *15).

MML claims that this Court cannot resolve its vacatur petition until MML receives discovery on Rutas' purported knowledge that certain advocacy statements made by its counsel to the Tribunal were false and "its intent in misrepresenting to the Tribunal that such corruption did not exist."  Discovery Mem. 10.  MML is wrong for several distinct reasons.

First, the requested discovery is irrelevant as to whether Rutas "actually engaged in fraudulent conduct or used undue means *during the course of the arbitration*" as required for vacatur under § 10(a)(1).   *ARMA*, 961 F. Supp. 2 at 254 (acknowledging that a party seeking vacatur under § 10(a)(1) must not only show fraud during the course of the arbitration, but must also show that the fraud "materially related to an issue in the arbitration").  As detailed in Rutas' Opposition to MML's petition, (Opp'n to Pet. 16–17), attorney statements that were made during arbitration proceedings are not a basis for vacatur under § 10(a)(1) because they are "not assertions of a testimonial nature, but rather legal arguments regarding the relevance of certain evidence or the proper inferences to be drawn from the evidence."  *Cook Chocolate*, 748 F. Supp. at 126; *see also ARMA*, 961 F. Supp. 2d at 258 (holding that petitioner failed to make even a "passable case" for vacatur and additional discovery where it alleged that respondent's counsel made false

representations to the tribunal).  The conduct of Rutas that MML asserts constituted fraud during the arbitration is listed in the following table.  They are *all* advocacy statements of counsel:

| Allegation | Source |
| --- | --- |
| "Rutas represented 'that no irregular act was committed'" by Rutas "'in connection with the Concession Contract,'" Mot. for Discovery 5, and that there was also no 'evidence' of 'alleged acts of corruption' by 'third parties.'" Pet. Mem. 26. | Rutas' Rejoinder Brief to MML's Counter-Claim ¶ 96. |
| "Rutas represented that there was 'no indication or evidence of acts of corruption' by Odebrecht 'directly linked to the Concession Contract,' and that '[t]here is . . . . no evidence to suggest that Rutas . . . benefited' from any 'contributions' made towards Villaran's campaign 'during the execution of the concession contract.'" Pet. Mem. 26. | Rutas' Rejoinder Brief to MML's Counter-Claim ¶ 302. |
| "Rutas 'strongly rejected any act of corruption' and represented to the Tribunal that contributions to Municipality officials' campaigns 'were not carried out in change for any irregular benefit' in the Concession Contract." Mot. for Discovery 5. | Rutas' Rejoinder Brief to MML's Counter-Claim ¶¶ 295, 297 |
| "Rutas . . .stated that there was 'no evidence . . . that in exchange for the campaign contributions made by Odebrecht, Rutas . . . benefited from the conclusion of the Contract or during its execution.'" Pet. Mem. 26-27. | Rutas' First Post-Hearing Brief ¶ 195. |
| "[D]uring the oral hearing, Rutas stated that it 'denies that there are any acts of corruption linked to the conclusion of this contract or to the execution of this contract.'" Pet. Mem. 27; Mot. for Discovery 5. | Statement of Rutas Attorney M. Tovar, Arbitration Hearing Day 1, Tr. 77:9-20. |
| "Rutas . . . went so far as to blame the Municipality for 'contaminat[ing]' the arbitration with 'allegations of corruption to avoid compliance with the contract.'" Pet. Mem. 27; Mot. for Discovery 5. | Statement of Rutas Attorney M. Tovar, Arbitration Hearing Day 5, Tr. 1228:2 – 1229:20. |
| "Rutas repeated that, 'among the projects in which corruption has been accepted by Rutas' parent company, the Rutas de Lima contract does not figure and does not exist.'" Mot. for Discovery 5. | Statement of Rutas Attorney M. Tovar, Arbitration Hearing Day 5, Tr. 1229:19–1229:20. |

Because attorney advocacy "carries no connotation of wrongfulness or immorality," Rutas' knowledge of the truthfulness of counsel's advocacy to the Tribunal is immaterial to the Tribunal's decision and this Court's resolution of MML's vacatur petition. *MCI Constructors, LLC*, 610 F.3d at 858 ("no court has ever suggested that the term 'undue means' should be interpreted to apply to actions of counsel that are merely legally objectionable"). Accordingly, contrary to MML's suggestion (Mot. for Discovery 11), Rutas does not "concede[]" that evidence about its supposed knowledge and intent in the process of *its counsel* making such statements is "relevant."

Indeed, Rutas' knowledge of the supposed corrupt payments in relation to the Contract and Bankability Addendum would not have changed the argument Rutas made during the arbitration, which was that *MML*, on the basis of its own evidence, had not satisfied its burden to show the Contract and Bankability Addendum were procured through corruption. Opp'n to Pet. 24 (citing Award ¶¶ 442–43). Therefore, discovery of Rutas' knowledge is irrelevant to the vacatur proceedings, and there is no basis to authorize discovery on this issue. To hold otherwise "would be to defeat the very purposes for which the parties chose arbitration as a method of dispute resolution" and turn arbitration proceedings into just "the first step in the litigation process." *Shepherd*, 2019 U.S. Dist. LEXIS 43614, at *6 (denying request for post-arbitration discovery) (citation omitted).

Furthermore, the requested discovery is not "necessary to the determination of an issue raised" by MML's vacatur petition (*Frere*, 2000 U.S. Dist. LEXIS 17467, at *12), because no discovery of Rutas' "knowledge" will change the fact that MML is trying, improperly, to relitigate an issue already squarely decided and rejected by the Tribunal.[3]

---

[3] An order authorizing discovery here is particularly unnecessary because the only conduct that MML asserts constituted fraud during the arbitration are advocacy statements of Rutas' counsel. The focus of MML's discovery thus would not be Rutas' "knowledge," as MML suggests, but rather information as to Rutas' legal strategy and what specifically Rutas discussed with its

In its motion for discovery and in its vacatur petition, MML contends it has "new" information" regarding purported corruption, but this "new" information simply repackages the same facts MML presented to the Tribunal regarding the supposed corruption.  In particular, MML alleged during the arbitration—on the basis of statements from Jorge Henrique Simoes Barata and Valdemir Flavio Pereira Garreta, whose testimony was summarized by State Attorney Ramírez— that Odebrecht paid $3 million in the first quarter of 2013 to Villarán's recall referendum campaign. *Compare* Pet. Mem. 22, *with* Award ¶¶ 301, 420, 435, 485.  In addition, MML alleged during the arbitration, just as now, that additional payments by Odebrecht led to the Bankability Addendum. *Compare* Pet. Mem. 23-24, *with* Award ¶¶ 446–47.

But the Tribunal already concluded on the basis of those *very same facts* that there was insufficient evidence of corruption to nullify the Contract.  Award ¶¶ 442–43.  More specifically, the Tribunal found no indication the alleged payment by Odebrecht in 2013 amounted to a bribe related to the Contract, including because the available evidence did not show how the alleged payments could have affected the validity of the Contract particularly given that the decision to award the project was made months *before* Mayor Villarán's campaign had even begun.  Award ¶¶ 442, 443, 461.  Specifically, the Tribunal stated:

> The Tribunal . . . has no elements to confirm the existence of these corrupt payments, which are denied by Rutas de Lima.  Nor is there any explanation of how these payments, <u>had they existed</u>, could have affected the validity of the Contract or the June 2016 Memorandum.  Indeed, as stated, these payments would have been made more than 18 months after the Adjudication and more than a year after the signing of the Concession Contract, and there is no evidence to conclude that they could be related to the Adjudication or with the signing of the Contract.

counsel regarding the corruption allegations.  Such information is clearly privileged and precluded from disclosure.  *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 31 (D.D.C. 2016) (denying request for disclosure of attorney-client communications discussing litigation strategy).

Award ¶¶ 442–43 (emphasis added).   Moreover, assessing the same facts that MML relies on now, the Tribunal further held that the Bankability Addendum was not obtained by illicit means, including because the Addendum was executed in compliance with an express provision of the Contract, and it did not even reflect terms that were more favorable to Rutas than the original Contract.  Award ¶¶ 449, 457, 460, 462.

The Tribunal's conclusions on these issues cannot be revisited in a vacatur petition, *see* Opp'n to Pet. 11–12 (collecting cases), or in a motion for post-arbitration discovery.  *See Glob. Gaming Phil., LLC*, 2021 U.S. Dist. LEXIS 176519, at *3 (holding that a court's review for post-arbitration discovery "should not involve the relitigating of issues previously before the arbitral body"); *Wichard*, 95 F. Supp. 3d at 948 (denying request for discovery and holding that "discovery in post-arbitration review proceedings is typically limited, or not necessary at all, given the deference this Court owes the arbitrator's findings of fact and conclusions of law"); *cf. Republic of Arg. v. AWG Grp. Ltd.*, 211 F. Supp. 3d 335, 344 (D.D.C. 2016) (noting the enormous deference afforded to arbitrators).

In any event, contrary to MML's assertion (Mot. for Discovery 5), the Tribunal did not "rely on" Rutas' "denials" to formulate its conclusion that the Contract and the Bankability Addendum were not obtained by illicit means.  Rather, the Tribunal conducted a lengthy assessment on its own of the evidence MML presented.  Because the Tribunal already expressly addressed—and rejected—MML's corruption theory on the exact same facts MML puts forth in its vacatur petition here, discovery about Rutas' knowledge of the so-called corruption will not suddenly make the events of that period, or Rutas' advocacy statements during the arbitration, a basis for vacatur.

**B.      MML Has Not Shown That the Discovery It Seeks Was "Not Discoverable" During the Arbitration**

Even if the discovery MML seeks were somehow relevant or necessary to resolution of MML's vacatur petition (which it is not), MML also must demonstrate that it could not have obtained the same discovery during the arbitration.  *ARMA*, 961 F. Supp. 2d at 261.  MML cannot satisfy this burden.

First of all, MML never once sought discovery *from Rutas* regarding the corruption allegations during the arbitral proceedings, despite ample opportunity to do so.  MML knew that Rutas denied a material relation between the alleged corrupt payments and the procurement of the Contract and Addendum.  But MML never requested related information from Rutas even as MML advanced the corruption defense throughout the arbitration.  Nor does MML identify any obstacle that prevented it from seeking information about Rutas' knowledge before or during the arbitration proceedings about the discovery it now requests.  *See Empresa Constructora Contex Limitada*, 106 F. Supp. 2d at 1027 (denying request for post-arbitration discovery where the discovery "could have been identified and pursued at the time of the arbitration").  That alone should end MML's bid for discovery here.

It is simply not credible for MML to assert now that its need for this discovery arose only *after* the arbitration, because MML's corruption defense—and Rutas' subsequent denials—featured prominently *during* the arbitration.  Not only was the fraud "discoverable" during the arbitration—and therefore any connected discovery obtainable—the supposed fraud was "discovered," litigated, and fully rejected by the Tribunal.  As a judge of this Court in *ARMA* stated:

> Petitioner's own arguments and records have made it abundantly clear not only that each of the allegedly fraudulent acts and representations was discoverable during the course of the arbitration itself, but that the majority of these instances were actually 'discovered' during the course of the arbitration and either brought to the

> Tribunal's attention or addressed at length at oral argument. The Court,
> accordingly must view [the] discovery request as yet another delaying tactic that
> must be denied.

961 F. Supp. 2d at 261.

Similar to the record in *ARMA*, the record here shows that MML expressly and vigorously attempted to rebut Rutas' supposed "denials" of the corruption charge throughout the arbitration proceedings. *See, e.g.* Hearing Tr. (ECF 9-5) 157: 21–158:4 (Day 1), 170:21–171:11 (Day 1), 290:14-17 (Day 2), 291:11-14 (Day 2), 1404:14-17 (Day 5), 1405:21–1406:5 (Day 5). MML even put forward a summary of precisely the same allegations it makes in the instant motion and in its vacatur petition, through the testimony of State Attorney Ramírez. *See* Ramírez Decl. (ECF 9-3) ¶¶ 26–30. Thus, even assuming Rutas' counsel's statements could constitute fraudulent conduct under § 10(a)(1) (which they do not), the supposedly false nature of those statements not only was easily discoverable by MML, but actually was "discovered" (in the sense it was alleged) during the arbitration and presented to the Tribunal. *See Magid*, 2020 U.S. Dist. LEXIS 224688, at *8 (denying post-arbitration discovery request where the record "makes plain that [the requesting party] knew, or at least should have known" of conduct over which it now sought discovery); *O.R. Sec., Inc.*, 857 F.2d at 748 (issues that are considered and decided on the merits by an arbitration panel are not subject to re-litigation and "ends the inquiry" as to whether discovery is warranted).

MML extensively cites to *Thomas Kinkade Co. v. Hazlewood* to argue that the requested discovery was not discoverable during the arbitration.[4] *See* Discovery Mem. 13–14 (citing No. C 06 7034 MHP, 2007 U.S. Dist. LEXIS 9136, at *10 (N.D. Cal. Jan. 25, 2007)). The discovery

---

[4] The only other cases cited by MML in which any form of post-arbitration discovery was granted, *see* Mot. for Discovery 11, are inapposite, because those cases do not address allegations of fraud under §10(a)(1) based upon advocacy statements made by counsel. The discovery MML seeks here is uniquely irrelevant and unnecessary, because it would not convert the advocacy statements of counsel into a basis for finding fraud.

requested in that case, however, is inapposite to that sought by MML.  In *Thomas Kinkade*, the plaintiffs sought leave to take limited discovery regarding allegedly fraudulent conduct by defense counsel in connection with their application for attorneys' fees.  *Id.* at *7.  In granting plaintiffs' request, the court specifically held that plaintiffs could not have discovered the fraudulent billing practices if "defense counsel lied regarding the availability of contemporaneous time records and pre-bills" and further because they could not depose the members of defense counsel's law firm. *Id.* at *9–11.

Unlike the party requesting discovery in *Thomas Kinkade*, MML knew that the corruption investigation was ongoing *before* the Award was entered and also relied in the arbitration on the testimony of a representative from the State Prosecutor who effectively summarized the same purported "new" evidence MML relies on today.  And MML knew that Rutas denied that that evidence demonstrated the corruption that MML alleged.  Yet MML never once asked the Tribunal for a delay or stay of the arbitration proceedings so it could develop additional evidence of the supposed corruption, despite knowing full well of the ongoing State Prosecutor investigations of Odebrecht and the former mayor.  It cannot be said, then, that MML exercised "reasonable diligence" in discovering the "new" information it now seeks.  *Merrill Lynch, Pierce, Fenner & Smith v. Lambros*, 1 F. Supp. 2d 1337, 1345 (M.D. Fla. 1998) (holding that a party did not use diligence to discover alleged fraud where it did not move to compel witness's appearance or move for a continuance).

Even if some aspect of MML's allegations were not discoverable (which MML has not demonstrated), the Court must weigh MML's "asserted need for previously 'undisclosed information and assess the impact of granting such discovery on the arbitral process[.]'" *Glob. Gaming Phil., LLC*, 2021 U.S. Dist. LEXIS 176519, at *3 (quoting *Frere*, 2000 U.S. Dist. LEXIS

17467, at *15).   Unlike *Thomas Kinkade Co.*, where the court determined that it was "likely the [arbitrators] would have acted differently" if the allegations of billing fraud had been proven, 2007 U.S. Dist. LEXIS 9136, at *11, MML cannot show that disclosure of knowledge Rutas might possess about the alleged payments would have impacted the Tribunal's ultimate decision.   *See supra* Point I.A; Award ¶¶ 442–43 (holding that the alleged payments, "had they existed, could [not] have affected the validity of the Contract").   Accordingly, as in *ARMA*, this Court should view MML's motion for discovery "as yet another delaying tactic that must be denied." 961 F. Supp. 2d at 261.

*          *          *

MML's thinly veiled efforts to frustrate Rutas' ability to confirm the Award are nothing new.   MML, however, invites error when it seeks irrelevant and unnecessary discovery as to a defense that was presented to, and decided by, the Tribunal after MML had a full and fair opportunity to explore it during the arbitration.   The FAA and the relevant case law shield parties from discovery tactics that delay the confirmation and enforcement of a valid and binding arbitral award, and, accordingly, dictate that MML's motion be denied.

## CONCLUSION

For the foregoing reasons, Rutas respectfully requests that the Court deny MML's motion for discovery.

Dated:   January 11, 2022

Respectfully submitted,

/s/  *Jonathan C. Hamilton*
Jonathan C. Hamilton
Nicolle Kownacki
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:     + 1 202 626 3600
Facsimile:     + 1 202 639 9355
jhamilton@whitecase.com
nkownacki@whitecase.com

David G. Hille
**WHITE & CASE**
1221 Avenue of the Americas
New York, New York 10020
Telephone:     + 1 212 819 8200
Facsimile:     + 1 212 354 8113
dhille@whitecase.com

*Counsel for Rutas de Lima S.A.C.*