**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                      |     |                                    |
|--------------------------------------|-----|------------------------------------|
| Metropolitan Municipality of Lima,   | )   |                                    |
|                                      | )   |                                    |
| Petitioner,                          | )   |                                    |
|                                      | )   |                                    |
| v.                                   | )   | Civil Action No. 1:20-cv-02155-FYP |
|                                      | )   |                                    |
| Rutas de Lima S.A.C.,                | )   |                                    |
|                                      | )   |                                    |
| Respondent.                          | )   |                                    |
|                                      | )   |                                    |

_____

**THE METROPOLITAN MUNICIPALITY OF LIMA'S MEMORANDUM**
**IN OPPOSITION TO RESPONDENT'S MOTION FOR SECURITY**

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND ...................................................................................................3

III. ARGUMENT ........................................................................................................5

    A.   Article VI Does Not Apply, and Rutas Has Not Identified Any Authority that
        Permits the Court to Require Security ....................................................................6

    B.   The Municipality Is Immune from Prejudgment Attachment Under the FSIA .......8

    C.   Even If Article VI Applies, Security Is Not Justified Because Rutas Is Not
        Prejudiced by the Stay .........................................................................................13

        1.   The Municipality Is Entitled to a Presumption Against a Security
            Requirement ..............................................................................................13

        2.   A Short Stay Will Not Affect the Municipality's Ability to Satisfy
            Any Award Against It ................................................................................14

        3.   Rutas' Allegations of Delay Are Incorrect and Fail to Establish Any
            Prejudice to Rutas that Merits Requiring the Municipality to Post
            Security .....................................................................................................16

IV.  CONCLUSION....................................................................................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) .................................................................................8, 11

*Cef Energia, B.V. v. Italian Republic*,
No. 19-cv-3443 (KBJ), 2020 U.S. Dist. LEXIS 130291 (D.D.C. July 23, 2020) ............ *passim*

*Chevron Corp. v. Republic of Ecuador*,
949 F. Supp. 2d 57 (D.D.C. 2013), *aff'd* 795 F.3d 200 (D.C. Cir. 2015) .................................7

*Clinton v. Jones*,
520 U.S. 681 (1997) ...................................................................................1, 7

*De Sousa v. Embassy of Angola*,
229 F. Supp. 3d 23 (D.D.C. 2017) ......................................................................9, 10

*DRC, Inc. v. Republic of Honduras*,
774 F. Supp. 2d 66 (D.D.C. 2011), *vacated on other grounds*, 999 F. Supp.
2d 1 (D.D.C. 2012) ..........................................................................................14

*Europcar Italia, S.P.A. v. Maiellano Tours*,
156 F.3d 310 (2d Cir. 1998) ...............................................................................7

*G.E. Transp. S.p.A. v. Republic of Albania*,
693 F. Supp. 2d 132 (D.D.C. 2010) .......................................................................6

*Getma Int'l v. Republic of Guinea*,
142 F. Supp. 3d 110 (D.D.C. 2015) .............................................................7, 13, 14

*Hulley Enters. v. Russian Federation*,
502 F. Supp. 3d 144 (D.D.C. 2020) .............................................................8, 13, 15

*Int'l Ins. Co. v. Caja Nacional De Ahorro Y Seguro*,
293 F.3d 392 (7th Cir. 2002) ..............................................................................12

*Maritime Int'l Nominees Establishment v. Republic of Guinea*,
693 F.2d 1094 (D.C. Cir. 1982) ..........................................................................11

*NML Capital, Ltd. v. Republic of Argentina*,
No. 04-cv-197 (CKK), 2005 U.S. Dist. LEXIS 47027 (D.D.C. Aug. 3, 2005) .........2, 9, 10, 15

*Novenergia II v. Kingdom of Spain*,
No. 18-cv-1148 (TSC), 2020 U.S. Dist. LEXIS 12794 (D.D.C. Jan. 27, 2020) ....................13

*Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*,
  771 F.3d 980 (7th Cir. 2014) .......................................................................10

*Process & Indus. Devs. Ltd. v. Federal Republic of Nigeria*,
  962 F.3d 576 (D.C. Cir. 2020) .....................................................................12

*Reading & Bates Corp. v. Nat'l Iranian Oil Co.*,
  478 F. Supp. 2d 724 (S.D.N.Y. 1979).........................................................10

*S. & S. Mach. Co. v. Masinexportimport*,
  706 F.2d 411 (2d Cir. 1983)................................................................2, 9, 10, 11

*Stephens v. Nat'l Distillers & Chem. Corp.*,
  69 F.3d 1226 (2d Cir. 1995)..........................................................................9

*Tatneft v. Ukraine*,
  301 F. Supp. 3d 175 (D.D.C. 2018) ..............................................................6

*Verlinden B.V. v. Cent. Bank in Nig.*,
  461 U.S. 480 (1983).......................................................................................9

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ...................................................................11

**Statutes**

28 U.S.C. § 1605...............................................................................9, 11, 12

28 U.S.C. § 1609.....................................................................................8, 11

28 U.S.C. § 1610........................................................................... *passim*

## I.      INTRODUCTION

Respondent Rutas de Lima S.A.C.'s ("Rutas") motion for security is a poorly conceived attempt to force Petitioner Metropolitan Municipality of Lima (the "Municipality") to pay nearly $117 million in order to exercise its right under Section 10 of the Federal Arbitration Act to seek vacatur of the arbitral award that Rutas procured through fraud.  Rutas' motion fails for three independent reasons—each of which is dispositive.

*First*, the motion is based on the mistaken premise that the Court has stayed these proceedings pursuant to Article VI of the New York Convention.  It did not.  Article VI applies only where there are parallel proceedings in different countries to vacate and enforce the same arbitral award.  That is not the case here:  both the Municipality's petition to vacate and Rutas' cross-petition to confirm are proceeding in the same action.  Article VI therefore does not apply. Indeed, the Court did not issue the stay under Article VI, but instead did so pursuant to its inherent powers to manage its docket.  *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (noting a court's "broad discretion to stay proceedings as an incident to its power to control its own docket").  Rutas has not identified any authority that would allow the Court to order the Municipality to post security during the pendency of such a discretionary stay, and the Court should deny Rutas' motion for this reason alone.

*Second*, the motion should be denied because the Municipality is immune from prejudgment attachment pursuant to Section 1610(d) of the Foreign Sovereign Immunities Act ("FSIA").  While Rutas wrongly breezes past the Municipality's immunity from prejudgment attachment, the Court must nonetheless assure itself that it has jurisdiction to issue a prejudgment attachment against a foreign sovereign.  It is well settled that a foreign sovereign does not waive immunity from prejudgment attachment when it waives immunity from suit and instead must "explicitly waive[] its immunity from attachment prior to judgment" before a court can require it

to post security.  28 U.S.C. § 1610(d)(1).  The bar for such an explicit waiver is high:  an "'asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this count[r]y.'"  *NML Capital, Ltd. v. Republic of Argentina*, No. 04-cv-197 (CKK), 2005 U.S. Dist. LEXIS 47027, at *22 (D.D.C. Aug. 3, 2005) (quoting *S. & S. Mach. Co. v. Masinexportimport*, 706 F.2d 411, 416 (2d Cir. 1983)).  Rutas tries to rely on Article VI of the New York Convention to supply that waiver, but neither Article VI nor any other provision in the New York Convention so much as mentions sovereign immunity.  The New York Convention thus cannot supply the necessary explicit waiver of immunity from prejudgment attachment.

*Third*, even if the lack of an Article VI stay and the Municipality's sovereign immunity were not insurmountable barriers to Rutas' motion for security (which they are), Rutas has not established that prejudgment security is justified.  The case law in this Circuit uniformly establishes that sovereigns are "generally . . . not required . . . to post security because they are presumably solvent and will comply with legitimate orders issued by courts in this country or in their home jurisdiction."  *Cef Energia, B.V. v. Italian Republic*, No. 19-cv-3443 (KBJ), 2020 U.S. Dist. LEXIS 130291, at *23 (D.D.C. July 23, 2020) (alterations omitted) (internal quotation marks omitted).  Rutas fails to acknowledge this presumption, much less apply it.  Rather, Rutas tries to argue that security is justified based on a selective and misleading description of changes to the Municipality's credit rating and unfounded assertions that the Municipality is seeking to delay these proceedings.  Neither argument is persuasive.  As to the Municipality's credit rating, the very source that Rutas cites explains that the Municipality's credit rating remains high and was modestly lowered primarily because the Republic of Peru's credit rating was downgraded.  The Municipality's ability to satisfy a judgment has not changed.  Further, Rutas' argument that the

Municipality is seeking to delay these proceedings is baseless. The Court has already considered the interval needed to complete service under the Inter-American Convention on Letters Rogatory and Additional Protocol ("Inter-American Convention") and determined that a stay is appropriate to ensure the judgment is enforceable in Peru, the parties' home jurisdiction. Rutas' continued dissatisfaction with the Court's ruling is not grounds for imposing security.

## II.    BACKGROUND

On August 7, 2020, the Municipality moved to vacate an arbitral award concerning a Concession Contract between the Municipality and Rutas because Rutas fraudulently misrepresented to the arbitral tribunal that it had not procured the Concession Contract and various benefits thereunder through corruption. *See* Dkt. # 1-1. A wealth of recently uncovered evidence—including sworn testimony from participants on both sides of the corrupt transactions— confirms that Rutas engaged in fraud during the arbitration when it falsely denied that any corruption had occurred. *See id.* The tribunal expressly relied on these fraudulent assurances to determine that the Concession Contract was not void for corruption. *See id.* Simultaneously with the filing of its Petition to Vacate Arbitral Award (the "Petition"), the Municipality moved for an order permitting it to serve the Petition via alternative means and an order staying the proceedings while the Municipality completes service pursuant to the Inter-American Convention, the means of service required under Peruvian law. *See* Dkt. # 3. The Municipality's motion made clear that it sought a stay pursuant to the Court's inherent power to manage its docket. *See id.* at 12.

On August 10, 2020, the Court granted the Municipality's motion and ordered that the matter be "STAYED while the Municipality effectuates service on Rutas de Lima pursuant to the Inter-American Convention." Dkt. # 4, at 2. The Court further required the Municipality to file a status report on October 1, 2020, and every 60 days thereafter to "update[e] th[e] Court on [the Municipality's] efforts to serve . . . Rutas de Lima." *Id.* Shortly thereafter, the Municipality moved

3

the Court for issuance of letters rogatory, a predicate for service under the Inter-American Convention. *See* Dkt. # 6.

The Municipality's motion for issuance of letters rogatory remained *sub judice* for some time. Pursuant to the Court's order granting the stay, the Municipality filed status reports explaining its efforts to serve Rutas pursuant to the Inter-American Convention and noting that its motion for the issuance of letters rogatory was pending. *See* Dkt. # 7, at 2; Dkt. # 8, at 2; Dkt. # 16, at 2; Dkt. # 18, at 2; Dkt. # 21, at 2; Dkt. # 22, at 2; Dkt. # 23, at 2.

In the meantime, on December 23, 2020, more than seven months after the arbitral award was issued, Rutas filed a brief in opposition to the Municipality's Petition, Dkt. # 9; a Cross-Motion to Confirm an International Arbitral Award, Dkt. # 10; and a Motion to Lift Stay, Dkt. # 11. Rutas' motion did not suggest that the stay had been imposed pursuant to Article VI of the New York Convention. Nor could it have since the Court entered the stay more than seven months before Rutas asked the Court to enforce the award under the New York Convention. While the parties briefed Rutas' motion to lift the stay, the Court explicitly reminded the parties that "[t]his matter remains stayed until further Order of this Court." Minute Order, Dec. 29, 2020.

On October 1, 2021, the case was reassigned to the Honorable Judge Florence Y. Pan following the Honorable Judge Ketanji Brown Jackson's elevation to the U.S. Court of Appeals for the D.C. Circuit. Minute Entry, June 29, 2021; Minute Entry, Oct. 1, 2021.

The Court subsequently held a motions hearing on November 16, 2021. At that hearing, Rutas indicated for the first time that it would seek a bond in connection with the action. Rutas suggested that its request for a bond was "essentially almost like a supersedeas bond in an appeal situation" and argued that, "if the stay is to remain in place pending service, [it felt] very strongly that there should be security for the full amount of the award." Dkt. # 36, at 10. As with its motion

to lift the stay, Rutas did not contend that the Court had stayed the proceedings under Article VI of the New York Convention.  The Court deferred ruling on Rutas' request for security, as well as the Municipality's request for discovery, pending briefing, but concluded that the stay should continue.  The Court considered and rejected Rutas' arguments that it would be prejudiced by a stay, *see id.* at 6–7 (noting that the longer the stay remained in place Rutas was "just getting more money later"); *id.* at 16–17, and informed the parties that it was "inclined to let [the Municipality] effectuate [its] service via letters rogatory and not take any action in this case that could be nullified because service had not been effectuated," *id.* at 21.  The Court reaffirmed that the stay would remain in place except for the "limited purpose of accepting briefing on preliminary issues"— namely, the instant motion for security and the Municipality's motion for discovery.  Nov. 16, 2021 Minute Order.

### III.    ARGUMENT

Rutas' argument for security rests on the flawed premise that this action has been stayed under Article VI of the New York Convention.  That is simply not the case.  The Court did not exercise its powers under Article VI to adjourn consideration of a petition to enforce an award to clear the way for a court in another country to decide whether the award should be set aside.  Rather, it exercised its inherent powers to manage its docket to stay this case so that the Municipality could serve Rutas under the Inter-American Convention and ensure that the Court's ultimate judgment will be recognized in Peru.  Rutas does not identify any authority that would permit the Court to require the Municipality to post security in these circumstances.

Even if Rutas could identify a relevant authority, however, its motion for security also must fail because the Municipality is immune from prejudgment attachment under the FSIA and because Rutas is not prejudiced by the Court's decision to continue the stay while service under the Inter-American Convention is being completed.

**A.    Article VI Does Not Apply, and Rutas Has Not Identified Any Authority that Permits the Court to Require Security**

Rutas' motion proceeds on the erroneous premise that the Court has stayed this case pursuant to Article VI of the New York Convention.  *See* Dkt. # 34-1, at 7 (arguing "the court's power to . . . require suitable security flow[s] from Article VI of the New York Convention"). Article VI, however, is not applicable to this action because the stay was issued pursuant to the Court's inherent power to manage its docket.  Rutas does not identify any authority that would permit this Court to require the Municipality to post security for such a stay.

Article VI of the New York Convention provides in full:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(*e*), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. VI, June 10, 1958, 21 U.S.T. 2517 [hereinafter N.Y. Conv.].   The "competent authority referred to in article V(1)(*e*)" is "a competent authority of the country in which, or under the law of which, that award was made."  *Id.* art. V(1)(e).   By its plain language, Article VI thus refers to parallel proceedings before *two* different authorities:  (1) the competent authority in which an application for setting aside or suspension of the award has been made and (2) an "authority before which the award is sought to be relied upon."  *Id.* art. VI.

Consistent with its text, courts uniformly interpret Article VI to permit a court to stay an action and require prejudgment security "if there is a pending action *in another jurisdiction* to set aside the award."  *G.E. Transp. S.p.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 137 (D.D.C. 2010) (emphasis added); *Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 196 (D.D.C. 2018) ("Pursuant

to the New York Convention, district courts have discretion to stay proceedings where 'a *parallel* proceeding is ongoing in the originating country and there is a possibility that the award will be set aside." (emphasis added) (quoting *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 71 (D.D.C. 2013), *aff'd* 795 F.3d 200 (D.C. Cir. 2015))); *Getma Int'l v. Republic of Guinea*, 142 F. Supp. 3d 110, 113 (D.D.C. 2015) (noting the New York Convention permits a stay "if there is a pending action in another jurisdiction to set aside the award").   Article VI thus addresses the unique concerns that arise "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside." *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 317 (2d Cir. 1998).  An Article VI stay is intended to address these concerns because "a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings" where the award could be set aside. *Id.*

Such concerns are not implicated here.  Both the Municipality's Petition and Rutas' cross-motion to confirm the award are pending before this Court.  There is thus no risk of conflicting judgments, such as would arise where a court in one jurisdiction allows enforcement only for a court in another jurisdiction later to vacate the award.  There was accordingly no reason for the Court to have issued a stay under Article VI.  Rather, the stay's sole purpose is to permit the Municipality to effectuate service pursuant to the Inter-American Convention.  *See* Dkt. # 4, at 2 (ordering "that proceedings in this matter are STAYED while the Municipality effectuates service on Rutas de Lima pursuant to the Inter-American Convention").

Indeed, when the Municipality asked the Court for a stay, it requested that the Court do so by exercising its "'broad discretion to stay proceedings as an incident to its power to control its own docket."  Dkt. # 3, at 12 (quoting *Clinton*, 520 U.S. at 706).  The Municipality's motion did not reference Article VI of the New York Convention.  Nor could it have.  At the time that the

Municipality requested the stay, Rutas had not yet filed its cross-petition for confirmation of the arbitral award.  There thus was no petition in which the award was "sought to be relied upon," as required for Article VI to apply.  N.Y. Conv. art. VI.  Consequently, Rutas' "reliance on the New York Convention provision expressly authorizing a stay with posting of a bond is not applicable here since the Court is relying on its inherent authority to control its docket by issuing a . . . stay." *Hulley Enters. v. Russian Federation*, 502 F. Supp. 3d 144, 164 (D.D.C. 2020) (citation omitted).

Rutas does not identify any authority that permits a court to require a party—much less a foreign sovereign—to post prejudgment security as a prerequisite for a stay pursuant to the Court's inherent powers to manage proceedings before it.  Rutas' motion is therefore without precedent or support, and the Court should deny it.

**B.     The Municipality Is Immune from Prejudgment Attachment Under the FSIA**

The Court should also deny Rutas' motion for security because the Court lacks jurisdiction under the FSIA to order prejudgment attachment against the Municipality.  Rutas concedes that "a sovereign is generally immune from prejudgment attachment absent an exception or explicit waiver."  Dkt. # 34-1, at 7.  Nonetheless, Rutas appears to argue that it can avoid this otherwise applicable bar because Article VI of the New York Convention is somehow either (1) an explicit waiver of the Municipality's sovereign immunity from prejudgment attachment or (2) a preexisting abridgment of sovereign immunity to which the FSIA is subject pursuant to 28 U.S.C. § 1609. *See* Dkt. # 34-1, at 7.  Either way, Rutas is wrong.

Even though the Municipality has waived immunity from suit by filing the Petition, Rutas must separately establish that the Municipality, as a foreign sovereign, has waived immunity from prejudgment attachment.  The FSIA is "the sole basis for obtaining jurisdiction over a foreign state," and it "'must be applied by the district courts in every action against a foreign sovereign.'" *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–35 (1989) (quoting

*Verlinden B.V. v. Cent. Bank in Nig.*, 461 U.S. 480, 493 (1983)).  Section 1610(d) of the FSIA provides that a foreign state "shall not be immune from attachment prior to the entry of judgment . . . if . . . the foreign state has ***explicitly waived*** its immunity from attachment prior to judgment." 28 U.S.C. § 1610(d)(1) (emphasis added).  Thus, a foreign state is immune from being required to post security before a judgment is entered unless it explicitly waives its immunity.[1]  *See NML Capital Ltd.*, 2005 U.S. Dist. LEXIS 47027, at *21–22; *De Sousa v. Embassy of Angola*, 229 F. Supp. 3d 23, 27–28 (D.D.C. 2017).  Notably, the requirement that a sovereign *explicitly* waive immunity from attachment sets a higher bar than even waiver of immunity from suit, which can be waived explicitly or by implication.  *Compare* 28 U.S.C. § 1605(a)(1) (permitting jurisdiction where "the foreign state has waived its immunity either explicitly or by implication"), *with id.* § 1610(d)(1) (permitting jurisdiction where "the foreign state has explicitly waived its immunity from attachment prior to judgment").

The requirement that a foreign sovereign explicitly waive immunity from prejudgment attachment has two consequences here.  First, as courts have uniformly concluded, "[o]bviously waivers of immunity from suit or from execution of judgment have no bearing upon the question of immunity from prejudgment attachment."  *S. & S. Mach. Co.*, 706 F.2d at 417; *see also NML Capital Ltd.*, 2005 U.S. Dist. LEXIS 47027, at *23 (noting vague waivers may be permissible for

---

[1] Section 1610(d)'s reference to "prejudgment attachment" is interpreted to apply to prejudgment security.  *See, e.g.*, *Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226, 1229 (2d Cir. 1995) (interpreting New York insurance security requirement to be substantively the same as a prejudgment attachment because, as with an attachment of property, "[t]he pre-judgment security requirement . . . would force foreign sovereign [entities] to place some of their assets in the hands of the United States courts for an indefinite period").  As noted above, Rutas concedes that the security it requests is a prejudgment attachment for purposes of the FSIA.

a sovereign to "waive[] immunity to jurisdiction as opposed to a sovereign immunity waiver to attachment").

Second, Section 1610(d)'s explicit waiver requirement must be applied strictly.  Section 1610(d) reflects Congress's "'recogni[tion] that pre-judgment attachments are potentially more harassing than post-judgment attachments and, therefore, a waiver of immunity from the former should not be lightly implied.'"  *NML Capital Ltd.*, 2005 U.S. Dist. LEXIS 47027, at *24 (quoting *Reading & Bates Corp. v. Nat'l Iranian Oil Co.*, 478 F. Supp. 2d 724, 728 (S.D.N.Y. 1979)).  "A waiver of immunity from prejudgment attachment must be explicit in the common sense meaning of that word:  'the asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this count[r]y.'"  *Id.* at *22 (quoting *S. & S. Mach. Co.*, 706 F.2d at 416).  Courts take this mandate seriously.  For example, the Second Circuit has found that a foreign sovereign's waiver of "immunities from suit or execution of judgment or ***other liability***" did not waive immunity from prejudgment attachment because the term "other liability" did "not unequivocally express the will of the parties to waive immunity from prejudgment attachment."  *S. & S. Mach. Co.*, 706 F.2d at 417 (emphasis added).  Likewise, district courts in this Circuit have held that a sovereign does not explicitly waive immunity where "the words 'immunity' and 'attachment' do not appear in the" provision purportedly waiving immunity.  *De Sousa*, 229 F. Supp. 3d at 31.

Rutas fails to identify an explicit waiver of the Municipality's immunity from prejudgment attachment.  While its argument is less than a model of clarity,[2] Rutas appears to argue that

---

[2] To the extent Rutas argues that the Municipality's waiver of immunity to counterclaims constitutes a waiver of immunity from prejudgment security, that too is incorrect.  Such a waiver "do[es] not speak to orders of pre-answer security in judicial proceedings" and therefore cannot "be 'explicit.'"  *Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 985 (7th Cir. 2014) (quoting 28 U.S.C. § 1610(d)(1)).

Article VI of the New York Convention provides such an explicit waiver.  Dkt. # 34-1, at 7.
Alternatively, Rutas seems to suggest that, under 28 U.S.C. § 1609, the Municipality's immunity
from prejudgment attachment is "[s]ubject to existing international agreements to which the United
States [was] a party" as of October 21, 1976, when the FSIA was enacted.  28 U.S.C. § 1609; *see*
Dkt. # 34-1, at 7 (citing 28 U.S.C. § 1609).  According to Rutas, "Article VI of the New York
Convention provides such waiver."  Dkt. # 34-1, at 7.

     As a threshold matter, Article VI does not apply here.  *See supra* section III.A.  But even
if it did, Article VI does not mention sovereign immunity, much less waive it explicitly; it therefore
cannot be an explicit waiver of the Municipality's immunity from prejudgment attachment.  *See*
*Amerada Hess Shipping Corp.*, 488 U.S. at 442 (noting the Court did not "see how a foreign state
can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no
mention of a waiver of immunity to suit in United States courts"); *see also World Wide Minerals,*
*Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002) ("A foreign sovereign will
not be found to have waived its immunity unless it has clearly and unambiguously done so.");
*Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1100 n.10 (D.C.
Cir. 1982) (finding contract that contained "no particular provision . . . arguably concerning
immunity" did not constitute a requisite "specific and explicit" waiver of sovereign immunity).
Article VI merely provides that a court may stay an enforcement action that is proceeding in
parallel with an action to set aside the arbitral award and in those circumstances may "order the
other party to give suitable security."  N.Y. Conv. art. VI.  Article VI does not address sovereign
immunity at all, so it cannot supply the "unequivocal waiver by the foreign state" that is required
under Section 1610(d) of the FSIA.  *S. & S. Mach. Co.*, 706 F.2d at 416.

Nor is the New York Convention the type of "existing international agreement[]" to which the FSIA is subject. *See* 28 U.S.C. § 1609. The New York Convention applies broadly to all foreign arbitral awards, the vast majority of which do not involve sovereigns. *See* N.Y. Conv. art. I ("This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought . . . ."). It would therefore make little sense for a waiver of sovereign immunity to appear among the New York Convention's general provisions concerning the enforcement of arbitral awards. Indeed, if Rutas were correct that Article VI of the New York Convention waives sovereign immunity to prejudgment attachment, the United States would have waived its own immunity to prejudgment attachment in proceedings in the courts of all 168 other parties to the New York Convention. There is no indication that the United States contemplated such a sweeping waiver of its immunity.

Rutas' citation to *International Insurance Co. v. Caja Nacional De Ahorro Y Seguro*, 293 F.3d 392 (7th Cir. 2002), is not persuasive authority to the contrary. There, the Seventh Circuit held that the Argentinian instrumentality Caja Nacional De Ahorro Y Seguro "ha[d] not presented sufficient prima facie evidence to establish that it [was] a foreign instrumentality under the FSIA such that it would be entitled to immunity from posting pre-judgment security." *Id.* at 399. The court's consideration of the waiver of sovereign immunity under the New York Convention was therefore dicta, and that dicta is at odds with the text of Section 1610(d) of the FSIA and with precedent in this Circuit. The D.C. Circuit recently clarified that it has never held that the New York Convention creates an implicit waiver of a foreign state's sovereign immunity to suit, much less the explicit waiver required for a foreign state to waive sovereign immunity from prejudgment attachment. *See Process & Indus. Devs. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 583–84

(D.C. Cir. 2020) (concluding Nigeria had a "colorable" immunity defense that the New York Convention did not waive sovereign immunity explicitly or implicitly under 28 U.S.C. § 1605(a)(1)).

Accordingly, Rutas has not shown that the New York Convention abrogates sovereign immunity at all, much less that it provides an explicit waiver of the Municipality's immunity from prejudgment attachment. The Court therefore lacks jurisdiction to require the Municipality to post prejudgment security.

### C.   Even If Article VI Applies, Security Is Not Justified Because Rutas Is Not Prejudiced by the Stay

Even if this Court determines that the stay has been issued pursuant to Article VI and the Municipality is not entitled to sovereign immunity, Rutas comes nowhere close to providing a sufficient factual basis for its request for security. First, there is a strong presumption against requiring foreign sovereigns to post prejudgment bonds. Second, Rutas' passing reference to the Municipality's credit rating does not demonstrate that there is any risk that a short delay will negatively impact the Municipality's ability to satisfy an adverse judgment. Third, Rutas has not articulated any prejudice that it would suffer from a brief pause while the Municipality completes service under the Inter-American Convention.

#### 1.   The Municipality Is Entitled to a Presumption Against a Security Requirement

Courts in this Circuit decline to "require[] foreign sovereigns to post security because they are 'presumably . . . solvent and will comply with legitimate orders issued by courts in this country or [their home jurisdiction].'" *Cef Energia*, 2020 U.S. Dist. LEXIS 130291, at *23 (quoting *Novenergia II v. Kingdom of Spain*, No. 18-cv-1148 (TSC), 2020 U.S. Dist. LEXIS 12794, at *6 (D.D.C. Jan. 27, 2020)); *Hulley Enters.*, 502 F. Supp. 3d at 164 (noting same presumption); *Getma Int'l*, 142 F. Supp. 3d at 118 n.10 ("As another member of this Court has explained, 'a sovereign

13

state is presumably solvent and will comply with legitimate orders issued by courts in this country or abroad.'" (alterations omitted) (quoting *DRC, Inc. v. Republic of Honduras*, 774 F. Supp. 2d 66, 76 (D.D.C. 2011), *vacated on other grounds*, 999 F. Supp. 2d 1 (D.D.C. 2012))); *see also DRC*, 774 F. Supp. 2d at 76 (articulating presumption).  Rutas does not identify a single case in which a foreign sovereign has been required to post security in connection with a stay under Article VI. *See Getma Int'l*, 142 F. Supp. 3d at 118 n.10 (rejecting as irrelevant case law in support of imposing a security that did "not involve respondents that were solvent sovereigns").  This Court should not break with the long line of district courts in this Circuit that have refused to require foreign sovereigns to post prejudgment security.

2.    A Short Stay Will Not Affect the Municipality's Ability to Satisfy Any Award Against It

The Court should not credit Rutas' weakly supported argument that there is a "risk" that the Municipality would not satisfy its obligations if the Court enforces the award notwithstanding the grounds for vacatur set out in the Municipality's Petition.  *See* Dkt. # 34-1, at 9–10.

As a factual matter, Rutas has not pointed to a single instance in which the Municipality has failed to satisfy an obligation to pay an arbitral award after post-award remedies have been exhausted.  Rather, Rutas relies on an article published by the credit agency Fitch Ratings, Inc. regarding the agency's decision to lower slightly the Municipality's credit rating.  *See id.* at 10 n.4 (citing Fitch Ratings, Metropolitan Municipality of Lima, https://www.fitchratings.com/entity/ metropolitan-municipality-of-lima-90475878#ratings (last visited Jan. 10, 2022)).   But Fitch explains that the Municipality's credit rating—which Fitch places at a lofty "A-" for standalone credit and at "BBB" for its overall credit—was downgraded primarily because Fitch does not permit a subnational unit to have a higher overall rating than the rating of the country to which it

belongs.[3]  Thus, because Peru's credit rating was lowered, the Municipality's credit rating was also lowered.  Fitch nonetheless highlights the Municipality's positive standalone creditworthiness that reflects its "low debt burden" and "favorable liquidity."[4]

Other ratings agencies have taken the same approach, rating the Municipality's credit outlook as stable and praising its fiscal policies.  For example, Moody's explains that its adjustment to the Municipality's credit rating reflects factors "captured by the change in Peru's rating."[5] Moody's also notes, however, that the Municipality's "high own-source revenue," among other factors, "will provide the municipality with the necessary resources to limit further downward pressure on operating outcomes."[6]  If anything, then, the Municipality's high credit ratings confirm that it is financially strong and projected to meet its debt obligations.

Regardless, any residual credit risk cannot overcome the important policy concerns that favor denying Rutas' motion.  *See NML Capital Ltd.*, 2005 U.S. Dist. LEXIS 47027, at *24.  For example, in *Hulley Enterprises v. Russian Federation*, the court faced a far more extreme situation in which the Russian Federation had updated its constitution such that it "would refuse to pay" the awards granted to the petitioners.  502 F. Supp. 3d at 163.  Faced with concrete allegations that the

---

[3] *See* Fitch Downgrades Lima and EsSalud After Sovereign Downgrade, Fitch Ratings (Oct. 22, 2021),      https://www.fitchratings.com/research/international-public-finance/fitch-downgrades-lima-essalud-after-sovereign-downgrade-22-10-2021.

[4] *See* Fitch Affirms Metropolitan Municipality of Lima at 'BBB+': Outlook Negative, Fitch Ratings:      Rating      Action      Commentary      (July      9,      2021), https://www.fitchratings.com/research/international-public-finance/fitch-affirms-metropolitan-municipality-of-lima-at-bbb-outlook-negative-09-07-2021.

[5] *See* Moody's Invs. Serv., Rating Action: Moody's Downgrades Lima's Rating to Baa2; Stable Outlook (Sept. 3, 2021), https://www.moodys.com/research/Moodys-downgrades-Limas-rating-to-Baa2-stable-outlook--PR_452872?cid=7QFRKQSZE021.

[6] *Id.*

15

Russian Federation had "fail[ed] to pay awards or sanctions in other cases" and the strong prospect that the Russian Federation would not pay the award at issue in the proceeding at bar, the court nevertheless concluded that "existing precedent" counseled against requiring a foreign sovereign to post security.  *Id.* at 164.

        3.    <u>Rutas' Allegations of Delay Are Incorrect and Fail to Establish Any</u>
                 <u>Prejudice to Rutas that Merits Requiring the Municipality to Post Security</u>

Rutas makes numerous allegations that the Municipality has been dilatory in its prosecution of this action.  *See* Dkt. # 34-1, at 10–14.  These allegations are not only disproven by the record, they also fail to establish any actual prejudice.  Rutas protests that the Municipality has "frustrate[d] Rutas' ability to confirm the Award."  *Id.* at 1.  But, for more than seven months after the arbitral award was rendered, Rutas did not take any steps to enforce it.  Rutas cannot attribute its own delay to the Municipality's Petition or any action by the Municipality:  Rutas sat on its hands during the three months *before* the Municipality filed its Petition.  Even after the Municipality filed the Petition, Rutas waited another four months before filing a cross-petition.  See Dkt. # 5 (noting Rutas was served via alternate means on August 10, 2020); Dkt. # 10 (Rutas's Cross-Motion to Confirm an International Arbitral Award filed on December 23, 2020).  Further, as far as the Municipality is aware, Rutas has not sought to enforce the award in any other jurisdiction either, even though the stay this Court granted does not hinder Rutas' ability to seek recognition of the arbitral award elsewhere.  In fact, Rutas maintains the ability to request that the courts of any country that is a party to the New York Convention enforce the award, *see* N.Y. Conv. art. III, but has chosen not to do so.

Regardless, Rutas is wrong that the Municipality has been dilatory in prosecuting this action.  The Court has agreed that the Municipality's efforts to serve Rutas under the Inter-American Convention justify a stay in proceedings.  *See* Dkt. # 4.  As the Municipality informed

the Court in its opposition to Rutas' motion to lift the stay, Peruvian courts do not recognize service that is not conducted pursuant to the Inter-American Convention. *See* Dkt. #14, at 15 (citing Constitutional Court of Peru, Case No. 07238-2013-AA); *see also* Dkt. # 14-5, ¶ 7. The Inter-American Convention does not permit waivers of service of process requirements, nor does the Peruvian Civil Code of Procedure provide for such waivers. *See* Dkt. # 14, at 17; *see also* Dkt. # 14-4, ¶ 12. Peruvian courts are therefore not required to recognize Rutas' waiver of service under the Inter-American Convention. *See* Dkt. # 14-4, ¶ 13 ("There is nothing in Peruvian law that requires a Peruvian court to excuse such a failure to complete service in the required manner. A Peruvian [court] might decline to do so.").

Rutas is not helped by arguing that the Republic of Peru accepted service in *Hoban v. Sovereign Republic of Peru*, No. 9:15-cv-81105-JIC (S.D. Fla.). *See* Dkt. # 34, at 12 & n.6. In that case, the plaintiff sued to enforce Peruvian bearer bonds in the United States, and no enforcement in Peru was contemplated. *See* Am. Compl., ECF No. 8, No. 9:15-cv-81105-JIC (S.D. Fla. Sept. 8, 2015). In any event, it is irrelevant whether the Republic of Peru and Rutas are willing to accept service by a means other than under the Inter-American Convention because Peruvian courts are not bound to recognize waivers of mandatory process. *See* Dkt. # 14-4, ¶ 13. Therefore, unless the Municipality serves Rutas pursuant to the Inter-American Convention, the proceedings in this Court may not be recognized in Peru.

Moreover, the Municipality has carefully sought and received approval from the Court for the stay at every turn. Knowing that service pursuant to the Inter-American Convention can take several months, the Municipality requested that the Court stay the proceedings while it effectuates service, Dkt. # 3, and the Court agreed with the Municipality, *see* Dkt. # 4. The Municipality then dutifully followed up with the Court every 60 days regarding the status of its service-related efforts

and the pending motion for issuance of letters rogatory.  *See* Dkt. # 7, at 2; Dkt. # 8, at 2; Dkt. # 16, at 2; Dkt. # 18, at 2; Dkt. # 21, at 2; Dkt. # 22, at 2; Dkt. # 23, at 2.  When the Court requested further information on how to process the proposed letters rogatory, *see* Nov. 16, 2021 Minute Order, the Municipality promptly filed a supplemental memorandum and accompanying forms to assist the Court, *see* Dkt. # 29.  Now, having received from the Court signed and sealed original copies of the English-language Forms USM-272, the Municipality transmitted those forms to the Department of Justice's contractor, ABC Legal Services, for onward transmission to the relevant Peruvian authorities.

Rutas derives no assistance from mischaracterizing the Municipality's motion for discovery as a "stall tactic," Dkt. # 34-1, at 13, an accusation Rutas leveled before even receiving the Municipality's motion.  In fact, the Municipality's request for discovery is narrowly tailored to the specific requirements of its Petition and will not cause any unnecessary delay.  *See* Dkt. # 35-1.

Finally, a modest delay while the Municipality effectuates service under the Inter-American Convention would be much shorter than the stays authorized in the cases that Rutas cites.  For example, in *Aperture Software GmbH v. Avocent Huntsville Corp.*, the court noted that enforcement proceedings before it "may not begin for another three years."  No. 5:14-cv-211-JHE, 2015 U.S. Dist. LEXIS 193888, at *22–23 (N.D. Ala. Jan. 5, 2015).  Similarly, in *Cef Energia*, the court acknowledged that resolution in the foreign proceeding "may take one to two more years."  2020 U.S. Dist. LEXIS 130291, at *17; *see also Caroleng Invs. Ltd. v. Bluestone Res., Inc.*, No. 1:20-cv-1793-RGA, 2021 U.S. Dist. LEXIS 86487, at *6 (D. Del. May 6, 2021) (anticipating a "likely period of delay" of about one year).  In contrast, the U.S. Department of State estimates

that Peru generally takes months—not years—to complete service requests pursuant to the Inter-American Convention.[7]

At bottom, Rutas fails to articulate any cogent reason why staying these proceedings while the Municipality completes service in a manner that will ensure the enforceability of the Court's judgment is not amply justified.  Given that Rutas cannot identify any harm that will befall it as a result of the stay, *see* Dkt. # 36, at 17 (the Court noting Rutas will "just get [its] money as it accrues later if [it] prevail[s]"), there is no legal or factual basis for this Court to order the Municipality to post security.

## IV.    CONCLUSION

For the foregoing reasons, the Municipality respectfully requests that the Court deny Rutas' Motion for Security.

---

[7] *See* U.S. Dep't of State, Bureau of Consular Aff., Inter-American Service Convention and Additional Protocol, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Inter-American-Service-Convention-Additional-Protocol.html (last visited Jan. 10, 2022); *see also* Dkt. # 28-1, at 1.

Dated: January 11, 2022            Respectfully submitted,

THE METROPOLITAN MUNICIPALITY OF LIMA

By its attorneys,
/s/ Andrew B. Loewenstein

Andrew B. Loewenstein (D.D.C. Bar No. MA0018)
Nicole E. Smith (*pro hac vice to be submitted*)
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617-832-1000
Fax: 617-832-7000
aloewenstein@foleyhoag.com
nsmith@foleyhoag.com

Shrutih Tewarie (*pro hac vice to be submitted*)
José Rebolledo (*pro hac vice to be submitted*)
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th Floor
New York, NY 10019
Tel: 646-927-5500
Fax: 646-927-5599
stewarie@foleyhoag.com
jrebolledo@foleyhoag.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 11, 2022.

*/s/ Andrew B. Loewenstein*
Andrew B. Loewenstein