## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **METROPOLITAN MUNICIPALITY OF LIMA,** | |
| *Petitioner*, | |
| **v.** | **Civil Action No. 20-cv-2155 (FYP)** |
| **RUTAS DE LIMA S.A.C.,** | |
| *Respondent*. | |

## ORDER

This matter comes before the Court on Respondent Rutas de Lima S.A.C.'s Motion for Security, filed on December 14, 2021. *See* ECF No. 34 (Respondent's Motion). Petitioner filed an Opposition to Respondent's Motion on January 11, 2022, *see* ECF No. 38 (Petitioner's Opposition), and Respondent filed its Reply on January 25, 2022, *see* ECF No. 42 (Respondent's Reply). For the following reasons, Respondent's Motion for Security is denied.

On May 11, 2020, an arbitral tribunal in Washington, D.C., found that the Metropolitan Municipality of Lima ("MML") breached a contractual obligation to Rutas de Lima S.A.C. ("Rutas"), and awarded Rutas over $91 million in damages, interest, and costs. *See* Resp. Mot. at 3. MML filed a petition in this Court on August 7, 2020, seeking to vacate the arbitral award. *See generally* ECF No. 1 (Petition to Vacate Arbitral Award). To comply with the service deadlines in the Federal Arbitration Act, *see* 9 U.S.C. § 12, MML asked the Court to authorize alternative service on Rutas, since effecting service "by [an] internationally agreed means of service" would "require[] many months to be completed." *See* ECF No. 3 (Petitioner's *Ex Parte* Motion for Alternative Means of Service and Stay) at 46 (quoting ECF No. 3-1 (Declaration of

José Guillermo Aguado López), ¶ 4).  MML also sought a stay of the proceedings "until service can be effectuated under the Inter-American Convention" because "Peruvian courts may not recognize a judgment rendered by this Court if Rutas is not first served under the Inter-American Convention's procedures."  *Id.* at 3–4.

Based on MML's representations, the Court stayed the case and authorized alternative means of service.  *See* Order, dated Aug. 10, 2020.  On September 17, 2020, MML asked the Court to issue letters rogatory in order to effectuate service under the Inter-American Convention.  *See generally* ECF No. 6 (Petitioner's Motion for Issuance of Letters Rogatory).  Rutas, which was served with process under alternative means, cross-moved on December 23, 2020, to confirm the arbitral award, and also moved to lift the stay.  *See generally* ECF No. 10 (Respondent's Cross-Motion to Confirm Arbitral Award); ECF No. 11 (Respondent's Motion to Lift Stay).

The Court held a hearing on November 16, 2021, to consider MML's request for the issuance of letters rogatory and Rutas's motion to lift the stay.  *See* Minute Entry, dated Nov. 16, 2021.  During this proceeding, the Court granted the motion for issuance of letters rogatory and lifted the stay for the limited purpose of accepting briefing on preliminary issues that were raised at the hearing, including Rutas's request that MML be required to post security.  *See id.*

In the instant Motion, Rutas asks the Court to order MML "to post security for the duration of these proceedings in the full amount" of its obligation to Rutas under the arbitral award, which was $116.9 million as of November 30, 2021.  *See* ECF No. 34-1 (Respondent's Memorandum Supporting Motion for Security) at 1.  Rutas argues that Article VI of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York

Convention") empowers the Court to issue an order requiring security,[1] *see* Resp. Mem. at 7–9; that MML has waived its immunity from prejudgment attachment, *id.* at 7–8; and that equitable considerations favor the posting of security, *id.* at 9–14.  Specifically, Rutas contends that MML should be required to post security due to "the extraordinary delay and obstruction employed by MML to date, MML's worsening financial status as evidenced by its recent credit-rating downgrade, and the resulting material risk that MML will never satisfy its obligations under the Award."  *Id.* at 9–10 (footnote and citation omitted).  In opposition, MML contends that a security requirement is improper because this case has been stayed under the Court's inherent powers, not under the New York Convention.  *See* Pet. Opp. at 6–8.  MML also argues that it has not waived its immunity from prejudgment attachment, *id.* at 8–13; and that Rutas fails to articulate how it is prejudiced by the stay of proceedings, *id.* at 13–19.

As a foreign municipality, MML is "a political subdivision of a foreign state," *see* 28 U.S.C. § 1603, and thus enjoys the protections of the Foreign Sovereign Immunities Act ("FSIA").  *See id.* §§ 1330, *et seq.*; *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (stating that FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts").  Under the FSIA, the Court has jurisdiction over this case because "the Municipality has waived immunity from suit by filing the Petition."  *See* Pet. Opp. at 8; *see also* 28 U.S.C. § 1605(a)(1).[2]

In addition to setting forth exceptions to jurisdictional immunity, the FSIA also states that

---

[1]     "If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V (1) (e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security."  *See* New York Convention, Art. VI.
[2]     "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the foreign state has waived its immunity either explicitly or by implication . . . ."  *See* 28 U.S.C. § 1605(a)(1).

"a foreign state shall be immune from attachment," subject to certain exceptions. *See* 28 U.S.C.

§ 1609. Here, the parties contest whether MML has waived its immunity from prejudgment

attachment under one of FSIA's exceptions, such that MML could be subject to a security

requirement under Article VI of the New York Convention.[3] The relevant provision of the FSIA

states:

> The property of a foreign state . . . used for a commercial activity in the
> United States, shall not be immune from attachment prior to the entry of
> judgment in any action brought in a court of the United States or of a
> State . . . if the foreign state has *explicitly waived* its immunity from
> attachment prior to judgment . . . .

*See* 28 U.S.C. § 1610(d)(1) (emphasis added).[4] Section 1610(d) of the FSIA thus requires

waiver to "be explicit in the common sense meaning of the term: the asserted waiver must

demonstrate unambiguously the foreign state's intention to waive its immunity from

prejudgment attachment in this country." *S. & S. Mach. Co. v. Masinexportimport*, 706 F.2d

411, 418 (2d Cir. 1983); *accord de Sousa v. Embassy of the Republic of Angola*, 229 F. Supp. 3d

23, 27 (D.D.C. 2017). "While the D.C. Circuit has not addressed the issue directly, in analogous

circumstances, the Circuit has held that a 'foreign sovereign will not be found to have waived its

immunity unless it has clearly and unambiguously done so.'" *de Sousa*, 229 F. Supp. 3d at 28

(quoting *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir.

2002); and citing *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094,

---

[3]     The parties both view Rutas' Motion for Security as a request for prejudgment attachment. *See* Resp. Mot. at 7; Resp. Reply at 1; Pet. Opp. at 9 n.1 ("Rutas concedes that the security it requests is a prejudgment attachment for purposes of the FSIA.").

[4]     Even though MML has waived its immunity to the Court's jurisdiction, its immunity from prejudgment attachment remains a separate question. *See S. & S. Mach. Co. v. Masinexportimport*, 706 F.2d 411, 417 (2d Cir. 1983) ("[W]aivers of immunity from suit or from execution of judgment have no bearing upon the question of immunity from prejudgment attachment."); Pet. Opp. at 8–9.

1100 n. 10 (D.C. Cir. 1982)).[5]

Rutas's request for security must be denied because MML has not explicitly waived its immunity from prejudgment attachment, and the Court therefore may not require MML to post security.  Rutas nevertheless argues that MML has waived its immunity by seeking a stay of enforcement.  According to Rutas, MML knew when it sought to stay these proceedings that Article VI of the New York Convention would apply and that the New York Convention allows courts to impose a security requirement.  *See* Resp. Mot. at 7 (*citing Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 400 (7th Cir. 2002)); Resp. Reply at 5.  That argument fails for two reasons.  First, it relies on a chain of inferences — namely, that MML knew that the stay would be subject to the New York Convention's provision that authorizes the imposition of security; that the security provision includes a waiver of sovereign immunity; and that MML thus intended to waive its immunity from prejudgment attachment by asking for a stay.  Even if the Court were to accept Rutas' view of the facts, MML's request for a stay cannot be characterized as an "explicit" waiver of immunity, as MML did not "clearly and unambiguously" convey any intent regarding prejudgment attachment.  *See de Sousa*, 229 F. Supp. 3d at 28 (quoting *World Wide Minerals*, 296 F.3d at 1162); *see also NML Capital v. Republic of Argentina*, No. 04-197, 2005 WL 8161968, at *6 (D.D.C. Aug. 3, 2005) ("Section 1610(d)(1) is intended to preclude inadvertent waivers where the foreign state's intent is 'equivocal' or 'ambiguous.'" (citation omitted)).

Second, contrary to Rutas' assertion, there is no indication MML expected that its request

---

[5]     While waiver of immunity to jurisdiction may be "explicit[] or by implication," *see* 28 U.S.C. § 1605(a)(1), waiver of immunity to prejudgment attachment can only be "explicit[]."  *See id.* ¶ 1610(d); *NML Capital v. Republic of Argentina*, No. 04-197, 2005 WL 8161968, at *23 (D.D.C. Aug. 3, 2005).

for a stay would implicate the security provision of the New York Convention.  In its *ex parte* motion for a stay, MML did not reference the New York Convention at all; instead, it urged the Court to issue the stay under its "broad discretion to stay proceedings as an incident to its power to control its own docket."  *See* Pet. *Ex Parte* Mot. at 12 (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)); Pet. Opp. at 7.  Moreover, the relevant provision of the New York Convention was inapplicable at the time that MML requested the stay.  Article VI provides that "the authority *before which the award is sought to be relied upon* may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, *on the application of the party claiming enforcement of the award,* order the other party to give suitable security."  *See* New York Convention, Art. VI.  MML did not "seek to rely upon" the arbitral award, and Rutas did not make its cross-motion for enforcement of the award until four months after MML requested and obtained the stay.  *See* Pet. Opp. at 7–8.  Thus, even if inferences were permissible, which they are not, the Court would be unable to conclude that MML's mere request for a stay of the proceedings demonstrated that it consented to be governed by Article VI of the New York Convention and that MML understood Article VI to include a waiver of its immunity from prejudgment attachment.[6]

---

[6]         Furthermore, the Court is not persuaded by Rutas' citation to *International Insurance Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392.  The precedents of this District are more persuasive, as they better adhere to the plain meaning of "explicit."  *See de Sousa*, 229 F. Supp. 3d at 27–28; *NML Capital*, 2005 WL 8161968, at *6; *see also World Wide Minerals*, 296 F.3d at 1162 ("A foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so."); *Maritime Int'l Nominees Establishment*, 693 F.2d at 1100 n.10 (holding contract with "no particular provision . . . arguably concerning immunity" did not constitute "specific and explicit" waiver of sovereign immunity).

For the foregoing reasons, it is hereby **ORDERED** that Respondent's Motion for

Security is **DENIED**.

**SO ORDERED.**

_____
FLORENCE Y. PAN
United States District Judge

Date:   January 31, 2022

7