UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Metropolitan Municipality of Lima, | ) ) ) | |
| *Petitioner and Cross-Respondent*, | ) ) | Case No. 20-CV-02155 (ACR) |
| v. | ) ) ) | |
| Rutas de Lima S.A.C., | ) ) | |
| *Respondent and Cross-Movant.* | ) ) ) | |

**RESPONDENT AND CROSS-MOVANT RUTAS DE LIMA S.A.C.'S
RESPONSE IN OPPOSITION TO MUNICIPALITY OF LIMA'S
<u>SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR DISCOVERY</u>**

WHITE & CASE
701 Thirteenth Street, NW
Washington, DC 20005

1221 Avenue of the Americas
New York, NY 10020

May 15, 2023                                        *Counsel for Rutas de Lima S.A.C.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   MML Has Failed To Establish A Basis For Post-Arbitration Discovery ........................... 1

II.  The Second Arbitration Award Forecloses Discovery ....................................................... 4

III. MML Seeks Privileged Information Or Information Related To The Underlying Concession Contract, Not Rutas' "Guilty Mind" In The Arbitration ................................................................................................................. 7

CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*1100 West, LLC v. Red Spot Paint & Varnish Co., Inc*,
   2009 U.S. Dist. LEXIS 7320
   (S.D. Ind. Jan. 30, 2009) ........................................................................................................11

*\*ARMA, S.R.O. v. BAE Sys. Overseas*,
   961 F. Supp. 2d 245 (D.D.C. 2013) ....................................................................1, 2, 4, 9, 10

*Banks v. Office of the Senate Sergeant-At-Arms*,
   236 F.R.D. 16 (D.D.C. 2006) ..................................................................................................8

*Dist. Title v. Warren*,
   265 F. Supp. 3d 17 (D.D.C. 2017) ..........................................................................................8

*France v. Bernstein*,
   43 F. 4th 367 (3d Cir. 2022) ....................................................................................................3

*In re Grand Jury*,
   475 F.3d 1299 (D.C. Cir. 2007) ............................................................................................11

*In re Search for Info. Associated*,
   2017 U.S. Dist. LEXIS 229728 (D.D.C. 2017) ....................................................................11

*Jinks-Umstead v. England*,
   232 F.R.D. 142 (D.D.C. 2005) ..............................................................................................12

*\*MCI Constructors, LLC v. City of Greensboro*,
   610 F.3d 849 (4th Cir. 2010) ...................................................................................................3

*Midwest Generation EME, LLC v. Continuum Chem. Corp.*,
   768 F. Supp. 2d 939 (N.D. Ill. 2010) ......................................................................................1

*Sea Tow Int'l, Inc. v. Pontin*,
   246 F.R.D. 421 (S.D.N.Y. 2007) ............................................................................................9

*In re Sealed Case*,
   754 F.2d 395 (D.C. Cir. 1985) .........................................................................................10, 11

*\*In re Sealed Case*,
   107 F.3d 46 (D.C. Cir. 1997) .....................................................................................10, 11, 12

*Simpson v. Braider*,
   104 F.R.D. 512 (D.D.C. 1985) ................................................................................................9

*Tradiverse Corp. v. Luzar Trading S.A.*,
  2020 U.S. Dist. LEXIS 110287
  (S.D.N.Y. Jun. 23, 2020) ..................................................................................................9

*United States v. Singhal*,
  842 F. Supp. 2d 1 (D.D.C. 2012) ....................................................................................11

## STATUTES AND RULES

9 U.S.C. § 10(a)(1) ..................................................................................................................2

D.C. Rule of Professional Conduct 3.3 (1999) ...............................................................10

\* Authorities upon which counsel chiefly relies are marked by an asterisk

Rutas de Lima S.A.C. ("Rutas" or "RDL") respectfully submits this Response to MML's Supplemental Brief (ECF 78) in support of its Motion for Discovery (ECF 35). The Court granted MML a supplemental submission to address questions of the Court, as well as implications of the Award issued in the Second Arbitration. *See* March 15, 2023, Hr'g Tr. at 71:19-24. MML's brief offers no further legal or factual support for its Motion, in respect of the Second Award or otherwise. Instead, it largely repeats arguments that MML has made in its other filings. The Motion is a desperate attempt to delay the inevitable confirmation of the Award—nothing more.

Nothing in the Supplemental Brief changes the fact that post-arbitration discovery is allowed only in rare circumstances; that MML has not identified any issue that was not discoverable within the arbitration; that MML has already had multiple opportunities to develop and present evidence regarding its corruption allegations; that those allegations have been rejected, after careful consideration, by two different Tribunals; and that MML's discovery requests—an array of 14 document requests, 10 interrogatories, 32 requests for admission, and an 11-category Rule 30(b)(6) deposition notice—even on their face are incredibly overbroad and run directly into the attorney-client and work product privileges. The Motion should be denied.

## I.   MML Has Failed To Establish A Basis For Post-Arbitration Discovery

As Rutas demonstrated in its Opposition (ECF 37), post-arbitration discovery is generally disfavored and only allowed in rare circumstances where the discovery sought is directly "relevant and necessary" to determining an issue raised in the application for vacatur. Opp. 10 (citing *ARMA, S.R.O. v. BAE Sys. Overseas*, 961 F. Supp. 2d 245, 261 (D.D.C. 2013) (citations omitted); *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 943 (N.D. Ill. 2010)). And where, as here, a party seeks discovery that relates to allegations of fraud under 9 U.S.C. § 10(a)(1), the alleged fraud must also not have been discoverable in the arbitration. Opp.

1


10 (citing *ARMA*, 961 F. Supp. 2d at 261).  MML has failed to meet its burden in both respects.

First, the discovery is not relevant or necessary to an issue in MML's vacatur petition. Declining to respond to a question from the Court, MML did not address whether Rutas put forth any evidence in the arbitration that there was no corruption.  *See* Hr'g Tr. 24:19-21; Supp. Br. 3. Indeed, MML still has not argued—and cannot argue—that Rutas put forth *any* documentary *or* testimonial evidence to that effect.  Rutas did not.  Accordingly, there is no basis for MML's fraud claim here.  Instead, MML contends that discovery may help show (1) whether Rutas "knew it was speaking falsely" and; (2) whether "Rutas intended to deceive the first tribunal" when Rutas' counsel and Chairman made statements regarding the corruption allegations.  Supp. Br. 1.

MML argues again, and with reference to many of the same authorities already briefed, that it has allegedly "ample" evidence that Rutas made fraudulent representations.  *Id.* at 2.  This assertion remains fundamentally flawed as a matter of fact and law:

- Statements by counsel *cannot* constitute a basis for fraud warranting vacatur because they are attorney advocacy, not testimonial statements of fact.  *See* Opp. 11-13; *see also* ECF 80 at 25-29.  Nothing in MML's supplemental brief changes that.

- Effectively conceding the point, MML again mischaracterizes argumentative statements by counsel as statements of fact, as it did in its Petition.  This requires a selective and misleading reading of the statements, as Rutas addressed in the detailed table in its Opposition to MML's Petition.  *See* ECF 80 at 27-29.  MML's supplemental brief slightly modifies these distortions, but cannot refute the points in Rutas' table or the fact that the selected statements are plainly *examples of attorney advocacy*.

- Submissions filed by counsel on behalf of a party in arbitration are attorney advocacy, not party statements of fact.  As Rutas previously showed, even the arbitration authorities cited by MML only address counsel's obligation to refrain from misrepresentations of *fact*.  The same authorities underscore that counsel is free to make arguments, including any construction of a law or contract that counsel believes is reasonable.  ECF 80 at 29.  Nothing in MML's brief changes that.

- Statements by Rutas' Chairman during brief opening remarks at a hearing were not testimonial statements of fact under oath, and thus cannot constitute fraud warranting vacatur.  In any event, Mr. Franco's limited statement that MML had alleged corruption in the arbitration was *true*.  *See* ECF 80 at 30.  Nothing in MML's brief changes that.

MML attempts to distinguish the cases previously addressed by Rutas as "inapposite because they focus on legal arguments and tactics." Supp. Br. 6. The statements by Rutas' counsel were precisely that, and cannot amount to fraud warranting vacatur. Rutas' knowledge of the supposed truthfulness of its counsel's and Chairman's statements is immaterial and unnecessary to the vacatur petition. *See* Opp. 13 (citing *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010)). MML's discovery request fails on this basis alone.

Even if such discovery were relevant and necessary to an issue here (it is not), the alleged fraud was discoverable in the arbitration. MML considerably altered and expanded the scope of the arbitration, which to that point had concerned strictly contractual claims, with its corruption allegations. Those allegations were front and center, and received considerable attention by the parties and Tribunal. MML claims, nonetheless, that the alleged fraud was not discoverable because Rutas denied the existence of documents responsive to one MML document request. Relying again on *France v. Bernstein*, MML claims that this statement amounts to perjury. Supp. Br. 2, 5 (citing 43 F. 4th 367, 378-79 (3d Cir. 2022)). Not so. As Rutas has addressed, the Third Circuit's decision in *France* is readily distinguishable because the party committing the fraud lied ***under oath*** several times and denied the existence of documents that were later discovered in the same proceeding through due diligence, and the opposing party sought a stay of the proceedings to allow more time to obtain evidence. ECF 80 at 32-34. None of those features is present here.

Further, MML's claim that it had "no occasion" to seek discovery of false representations in the Arbitration is off-target. *See* Supp. Br. 6. The question is not whether MML could have sought the same discovery requested from this Court, but whether the ***alleged fraud was discoverable*** during the arbitration—*i.e.*, whether MML could have determined in that proceeding that Rutas' counsel and Chairman's "denials" were false. *See ARMA*, 961 F. Supp. 2d at 261

3

(finding that alleged fraudulent misrepresentations rebutted in the arbitration were "discoverable"). Like in *ARMA*, MML's corruption allegations and Rutas' "denials" were extensively addressed. MML "discovered" and litigated the issues at length, and the Tribunal rejected its arguments. It is not credible for MML to contend that it could not have discovered the "fraud" it now alleges. What has happened since the First Arbitration that allowed MML to discover that Rutas' alleged denials were false? Nothing. MML asserted that the Concession Contract was the product of corruption then, just as it does now. That MML claims to have found more evidence in the interim does not change that basic and dispositive fact.

## II. The Second Arbitration Award Forecloses Discovery

Setting aside the fundamental flaws in MML's Motion, MML also cannot change the fact that all of the "newly obtained evidence" on which it bases its discovery request was considered and rejected by the Tribunal in the Second Arbitration as insufficient to establish that the Concession Contract, its addenda, or any other contractual agreement between the parties was procured through corruption. Rutas addressed this in its Notice of Supplemental Exhibit and in more recent briefing. ECF 60 at 2-3; ECF 80 at 12-21; ECF 83 at 3-10.

MML contends that additional "new" documents from the Prosecutor's investigative files—which concern a years-old investigation into third parties, not Rutas, and which MML submitted only in recent weeks with its revised Petition—were not considered by the Tribunal in the Second Arbitration and show that Rutas committed fraud in the First Arbitration. Supp. Br. 8-11. MML's account of this "new" evidence is wrong in several respects.

MML's contention (*id.* at 7, 10) that the Tribunal "refused to allow" MML to submit evidence from the August 2022 indictment of Mayor Villarán and others is false. In fact, as Rutas has detailed, the Tribunal extraordinarily allowed MML, months ***after*** the final hearing, to hand

4

pick and submit hundreds of pages from the indictment files, and to address that evidence in a new submission.  *See* ECF 80 at 15-16.  While MML now suggests that the Tribunal artificially limited MML to submitting excerpts of the indictment materials, MML itself argued to the Tribunal that its corruption theory was corroborated by the mere existence of the indictment and the "relevant pages of the document," and thus that it was "not MML's intention" to "reopen[] the evidentiary debate indefinitely or mak[e] arguments de novo in this stage of the process."  ECF 80-11 at 2.

Further, much of the "new" evidence on which MML relies was ***specifically considered and rejected*** by the Second Tribunal, as Rutas has addressed in detail.  *See* ECF 80 at 12-21.  The Second Tribunal *also* considered, in excerpted form, all the rest of the "new" evidence on which MML relies in its supplemental brief.  Those documents all merely support the *same* allegations of corruption that the Second Tribunal considered and rejected for not establishing a link between alleged payments and the Concession Contract.  *Id.*; ECF 83 at 3-10.  MML is therefore wrong to suggest that the Second Tribunal excluded evidence that could have proven MML's corruption theory.  Supp. Br. 7-8.  For the Court's reference, Rutas provides an allegation-by-allegation breakdown in **Annex 1**, which incorporates the positions of both parties as to the issues and evidence before the Tribunal in the Second Arbitration.  *See also* Supp. Br. 9-10 (responding to chart provided in Rutas' Notice of Supplemental Exhibit, ECF 60 at 3).

In addition to the documents referenced in Annex 1, MML identifies a few other documents that it claims the Second Tribunal did not consider.  Supp. Br. 10.  This, too, is wrong:

- The full testimonies of Mr. Garreta and Mr. Barata were in the record of the Second Arbitration and considered by the Tribunal.  *See, e.g.*, Second Award (ECF 73-7), ¶¶ 397 n.307, 400, 404 nn.316 & 317, 408 n.323, 597 n.329, 598 n.331, 716 n.416.

- Excerpts of Mr. Lira's testimony were in the record and considered by the Second Tribunal.  Second Award ¶¶ 384-386.  In any event, the full transcript does not purport to establish any connection between alleged payments and the awarding of the

>     Concession Contract.  *See* ECF 74-5 at PDF pp. 7-8 (responding "no" when asked if he was aware of any payments made by Odebrecht to MML officials).
>
> - Excerpts of Mr. Meiggs' testimony regarding the alleged use of "sham" sub-contracts were in the record.  *See* Decl. of Nicolle Kownacki, Ex. 1.  In the full transcripts (ECF 74-22, 74-23), Mr. Meiggs makes no mention of any connection between the sub-contracts and the awarding of the Concession Contract, and only discusses events occurring after the Contract was awarded and the Bankability Addendum was signed. The sub-contracts themselves were also in the record, and the Second Tribunal found that there was no link between the contracts and the execution of the Concession Contract or any of its addenda.  Second Award ¶¶ 689-93, 704-705.

In sum, MML's "new" evidence—much of it submitted in the Second Arbitration—concerns only the same corruption allegations rejected by the Tribunal in the First Arbitration and then rejected by the Tribunal in the Second Arbitration after considering still further evidence put forward by MML.  The Second Award only underscores that no further discovery is warranted here.  MML continues to ignore that the Tribunals in both arbitrations concluded not just that there was ***no evidence*** connecting any corrupt payments to the Concession Contract, but also that there were basic flaws in the *logic* of MML's corruption case.

MML also urges the Court not to take into account the conclusions of the Second Award as to the alleged corruption, insofar as it relied on the Award in the First Arbitration and is thus "fruit of the poisonous tree."  Supp. Br. 11.  As detailed above, however, MML has failed to meet its burden to show that the Award in the First Arbitration was tainted by fraud in any way.  *See also* ECF 80 at 22-40.  In any event, MML's argument is misleading.  The Second Tribunal gave *res judicata* effect to the Award in the First Arbitration only on the narrow issue of whether failing to secure the approval of the Ministry of Economy and Finance ("MEF") for a draft contract constituted a violation of a public policy rule sufficient to declare the contract null and void. Second Award ¶¶ 243-48.  Critically, the Second Tribunal conducted its own independent analysis of whether the lack of MEF approval constituted evidence of corruption, specifically stating that

its *res judicata* ruling "does not mean that the Tribunal is barred from analyzing the facts underlying [MML's] allegation in order to ascertain whether they are relevant to the analysis of a possible link between the Contract and the Addendum and the alleged acts of corruption." *Id.* ¶¶ 600-612. The Tribunal concluded that the lack of approval by the MEF did not "constitute[] evidence that the Contract and the Bankability Addendum were secured through corruption." *Id.*

### III. MML Seeks Privileged Information Or Information Related To The Underlying Concession Contract, Not Rutas' "Guilty Mind" In The Arbitration

MML claims that it has "minimized th[e] risk" of invading the attorney-client and work product privileges by carefully crafting its discovery requests. Supp. Br. 11. But it is clear on their face that the majority of MML's overbroad requests concern information that would directly infringe on privileged communications between client and counsel regarding case strategy in the First Arbitration.[1] Thus, Rutas is not merely "speculating that it may have a privilege claim," or making a "blanket assertion" of privilege, as MML suggests. Supp. Br. 13 (citing *Dist. Title v. Warren*, 265 F. Supp. 3d 17, 23 (D.D.C. 2017)). Rather, it is difficult to see how ***any*** document responsive to these requests would not be subject to an applicable privilege. *See, e.g.*, *Banks v. Office of the Senate Sergeant-At-Arms*, 236 F.R.D. 16, 21 (D.D.C. 2006) (holding documents

---

[1] *See, e.g.*, Ex. B (ECF 78-3) ("Request No. 6: All documents and communications concerning your decision to represent in your Reply Memorial, dated July 29, 2019, in the First Arbitration that, with respect to the Municipality's allegations that Rutas engaged in corruption in connection with the Concession Contract, 'Rutas de Lima rejects it and asks the [Tribunal] not to be impressed by the[se] type[s] of allegations that lack seriousness.'"); *id.* ("Request No. 7: All documents and communications concerning Your decision to represent in Your Rejoinder on Counter-Claims, dated September 24, 2019, during the First Arbitration that Odebrecht's contributions to the campaigns of officials of the Municipality 'were not carried out in exchange for any irregular benefit.'"); Ex. C (ECF 78-4) ("Interrogatory No. 7: State the basis for Your representation at the merits hearing in the First Arbitration that You 'deny that there are any acts of corruption linked to the conclusion of this contract or to the execution of this contract.'"); *see also, e.g.*, Requests for Production Nos. 8-14 (ECF 78-3), all Interrogatories (ECF 78-4), and Requests for Admission Nos. 1-3, 6-17, and 22-30 (ECF 78-2).

concerning "counsel's instructions and questions regarding litigation matters, such as responding to plaintiff's interrogatories and gathering relevant information and documents" "reflect the process by which defense counsel prepared th[e] case [and] constitute highly protected opinion work product," and need not be produced).[2]

MML also is wrong to contend (Supp. Br. 12) that the privilege has been waived through disclosure to third parties. As an initial matter, the documents that MML contends are directed at third parties do not address Rutas' alleged mindset and purported fraud in the arbitration, but seek general information regarding the Concession Contract. *See, e.g.*, Ex. B, Request Nos. 1-5 (ECF 78-3) ("Request No. 1: All documents and communications concerning the Concession Contract that you have shown, disclosed, provided, made available to, or received or obtained from, any law enforcement, regulatory, or investigative agency, office, department, division, organization, officer, agent, or attorney in the United States, Peru, and Brazil."). This is clearly a fishing expedition, not "narrowly tailored" requests as MML represents to this Court. Supp. Br. 11.

MML also has articulated no basis for its contention that Rutas disclosed documents of its alleged "guilty mind" to third parties. MML claims it has reason to believe that Rutas disclosed documents revealing its "guilty mind" to third parties because, in 2016, Odebrecht entered a plea agreement with the U.S. Department of Justice in connection with corruption allegations against Odebrecht. Supp. Br. 12. MML further speculates that, to the extent Rutas' documents were provided to the DOJ in connection with Odebrecht's plea, this would have waived privilege. *Id.* But it was Odebrecht—not Rutas—that cooperated with the DOJ. And it is unlikely that, even if

---

[2] The applicable privilege law in most if not all instances is the law of Washington, D.C. as the seat of the arbitration. *See, e.g.*, Gary Born, International Commercial Arbitration, § 11.01(C) (2021); Restatement (Second) of Conflict of Laws §§ 6, 122, 139 (Am. Law Inst. 1971).

Rutas documents were disclosed, this was a voluntary waiver of privilege. *Cf. Simpson v. Braider*, 104 F.R.D. 512, 523 (D.D.C. 1985) ("A court should be reluctant to find a waiver of a privilege when testimony is involuntarily given such as pursuant to a subpoena, or to defend against criminal charges or under circumstances indicating there was realistically no voluntary disclosure."). In any event, as Rutas has shown, the Odebrecht plea agreement *did not* address the Concession Contract or project, but rather certain *other* projects. ECF 80 at 4. Moreover, documents produced by Odebrecht to the DOJ for a *2016* plea agreement could not contain evidence of Rutas' "guilty mind" in an arbitration raising contract claims that would not commence for another *two years*. The same fundamental problem applies to MML's request regarding documents that Rutas may have provided to Brookfield over the course of due diligence in 2016.

MML suggests that privilege issues should not be a concern because the Federal Rules of Civil Procedure provide a "familiar process" for resolving privilege claims. Supp. Br. 13. But MML has the process backwards. Courts do not put parties through a burdensome process of asserting and objecting to privilege claims when there is no proper basis for discovery in the first place. *See, e.g.*, *ARMA*, 961 F. Supp 2d at 261 (stating that it "could not in good conscience authorize Petitioner to hold up confirmation of the award and go on an unjustified fishing expedition on the mere chance that it might turn up more ammunition"); *Tradiverse Corp. v. Luzar Trading S.A.*, 2020 WL 8838055, at *1-4 (S.D.N.Y. Jun. 23, 2020) (denying discovery in post-arbitration proceeding because it was based on an "unsupported hope" that it would unearth relevant and necessary information); *see also Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 428 (S.D.N.Y. 2007) (quashing subpoena of attorney where request was "patently overbroad" and documents sought were "likely privileged"). MML must first meet its burden of establishing that the discovery sought is "relevant and necessary to the determination of an issue" in its Petition to

9

Vacate and that the information was not discoverable during the arbitration. *See ARMA*, 961 F. Supp. 2d at 261. MML has failed to meet that burden here.

MML asserts that, even if the information it seeks is privileged, "it *may* be discoverable" under the "crime-fraud exception to the attorney-client privilege or the substantial need exception to the work product privilege." Supp. Br. 13 (emphasis added).[3] The crime-fraud exception applies where a party seeking discovery (i) makes a *prima facie* showing of a "violation sufficiently serious to defeat the privilege," and (ii) establishes a relationship between a communication and the *prima facie* violation. *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985). As MML recognizes, the *prima facie* showing requires establishing that the client engaged in a crime or fraud and obtained counsel's assistance in furtherance of that crime or fraud. Supp. Br. 14 (citing cases). In particular, the proponent must offer "evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." *In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997). It is inconceivable that the advocacy statements made by Rutas' counsel and its Chairman, or Rutas' response to a document request, constitute a crime or fraud that would warrant invasion of the privilege. *See supra* § I; *see also* ECF 80 at 22-40.

The Court asked MML to point to any case where a court "granted discovery into communications aimed at what trial counsel knew or didn't know, or what was or was not communicated to trial counsel about what they said at a hearing." Hr'g Tr. 30:15-20. In response, MML cites cases where the court allowed discovery into attorney-client communications under

---

[3] The Court suggested that MML consider D.C. Rule of Professional Conduct 3.3 (1999). Hr'g Tr. 31:8-22. MML has not done so. That Rule does not help its case. Rule 3.3 requires a showing that counsel "***knowingly***" made a "false statement of fact or law," assisted a client to engage in conduct that the lawyer "knows is criminal or fraudulent," or "[o]ffers evidence that the lawyer knows to be false." MML has not come close to establishing those elements here. *See supra* § I.

10

the crime-fraud exception because a *prima facie* case of fraud was clearly established. In *In re Grand Jury*, the court found that the crime-fraud exception applied where the client admitted, and counsel confirmed, that a corporate document submitted to the DOJ was fraudulently back-dated. 475 F.3d 1299, 1305-06 (D.C. Cir. 2007). In *1100 West*, the court applied the crime-fraud exception after finding that the plaintiff established a *prima facie* case for fraud by showing that the defendant had withheld 70,000 responsive documents that contradicted its own submissions and witnesses. *See 1100 West, LLC v. Red Spot Paint & Varnish Co., Inc*, 2009 WL 232060, at *4-5 (S.D. Ind. Jan. 30, 2009).[4] None of these cases permitted discovery into privileged communications in the absence of a clear showing of crime or fraud, as MML seeks here. Indeed, the crime-fraud exception allows parties to obtain discovery by showing fraud, ***not*** to use discovery to attempt to establish the *prima facie* elements of fraud in the first place. *See, e.g.*, *In re Sealed Case*, 107 F.3d at 50-51 (finding crime-fraud exception was not established because proponent did not show that client "intended to further and did commit a crime"). This simply reinforces the impropriety of MML's efforts to use this enforcement proceeding to re-litigate corruption allegations that have already been fully considered and rejected in two different arbitrations.

For the same reasons, MML has not established a *prima facie* case of fraud justifying an infringement of the work product doctrine. As MML's own cases on this issue make clear, a party cannot merely "argue that she needs access to the documents, although they are privileged, in order

---

[4] *See also United States v. Singhal*, 842 F. Supp. 2d 1, 7 (D.D.C. 2012) (finding that the government had established that defendant perpetrated fraudulent financial transactions through various holding companies); *In re Sealed Case*, 754 F.2d at 399, 400-02 (finding clear evidence of a "pervasive and systematic scheme" to destroy subpoenaed evidence and commit perjury before various courts, involving "possible federal crimes") (emphasis omitted); *In re Search for Info. Associated*, 2017 U.S. Dist. LEXIS 229728, at *23-26 (D.D.C. Nov. 9, 2017) (finding a "strong case" that defendant intentionally defrauded a bank).

to make her *prima facie* showing" of fraud. *Jinks-Umstead v. England*, 232 F.R.D. 142, 145-46 (D.D.C. 2005) (finding that crime-fraud exception did not apply to permit discovery of attorney work product); *see also In re Sealed Case*, 107 F.3d at 51-52 (same).

## **CONCLUSION**

For the foregoing reasons, and those set forth in Rutas' Opposition to the Motion and Notice of Supplemental Exhibit, Rutas respectfully requests that the Court deny MML's Motion for Discovery.

Dated: May 15, 2023

Respectfully submitted,

/s/ *David G. Hille*
David G. Hille
**WHITE & CASE**
1221 Avenue of the Americas
New York, NY 10020
Telephone: + 1 212 819 8200
Facsimile: + 1 212 354 8113
dhille@whitecase.com

Jonathan Hamilton
Jonathan Ulrich
Nicolle Kownacki
**WHITE & CASE**
701 Thirteenth Avenue, NW
Washington, DC 20005
Telephone: + 1 202 626 3600
Facsimile: + 1 202 639 9355
jhamilton@whitecase.com
julrich@whitecase.com
nkownacki@whitecase.com

*Counsel for Rutas de Lima S.A.C.*