**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Metropolitan Municipality of Lima, | ) | |
| *Petitioner*, | ) | |
| v. | ) | Case No. 20-CV-02155 (ACR) |
| Rutas de Lima S.A.C., | ) | |
| *Respondent*. | ) | |

|  |  |  |
|---|---|---|
| Metropolitan Municipality of Lima, | ) | |
| *Petitioner*, | ) | |
| v. | ) | Case No. 23-CV-00680 (ACR) |
| Rutas de Lima S.A.C., | ) | |
| *Respondent*. | ) | |

**RUTAS DE LIMA S.A.C.'S OPPOSITION TO MOTION TO STAY JUDGMENT**
**ENFORCEMENT PENDING APPEAL WITHOUT A BOND**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

1221 Avenue of the Americas
New York, NY 10020

January 7, 2025                              *Counsel for Rutas de Lima S.A.C.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT.........................................................................................................................2

    I.        MML Cannot Meet the Legal Standard for Obtaining a Stay .................................2

    II.      MML Should Be Required to Post a Full Bond as a Condition for
           Any Stay.........................................................................................................................5

           A.      MML Has Consistently Demonstrated That It Is Unwilling to Satisfy the
                    Judgment ............................................................................................ 6

           B.      MML Has Not Demonstrated That Posting a Bond Is Impracticable....... 12

CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Baker v. Socialist People's Libyan Arab Jamahirya*,
810 F. Supp. 2d 90 (D.D.C. 2011) ...................................................................................5

*Bass Drilling v. Sand Hill Found.*,
2010 U.S. Dist. LEXIS 164970 (E.D. Tex. Apr. 19, 2010) ............................................9

*Comm. on the Judiciary v. McGahn*,
407 F. Supp. 3d 35 (D.D.C. 2019) ..................................................................................3

*Fed. Prescr. Serv., Inc. v. Am. Pharm. Ass'n*,
636 F.2d 755 (D.C. Cir. 1980) ...............................................................................1, 3, 5, 6, 12

*FTC v. Church & Dwight Co.*,
756 F. Supp. 2d 81 (D.D.C. 2010) ..................................................................................4

*Godfrey v. Iverson*,
2007 U.S. Dist. LEXIS 76267 (D.D.C. Oct. 16, 2007) ...............................................5, 9

*Gold Reserve Inc. v. Bolivarian Republic of Venezuela*,
No. 14-2014 (D.D.C. 2016) .............................................................................................7

*Kurke v. Oscar Gruss & Son, Inc.*,
454 F.3d 350 (D.C. Cir. 2006) ........................................................................................4

*Metropolitan Municipality of Lima v. Rutas de Lima S.A.C.*,
No. 24-7053 (D.C. Cir. 2024) .........................................................................................4

*Smarra v. Boilermaker-Blacksmith Nat'l Pension Trust*,
2022 U.S. Dist. LEXIS 123292 (W.D. Pa. Mar. 25, 2022) ...........................................13

*Stati v. Republic of Kazakhstan*,
2018 U.S. Dist. LEXIS 245802 (D.D.C. Nov. 13, 2018) ...............................................3

*Stati v. Republic of Kazakhstan*,
2020 U.S. Dist. LEXIS 263173 (D.D.C. May 18, 2020) ................................................8

*Tatneft v. Ukraine*,
2021 U.S. Dist. LEXIS 102179 (D.D.C. Jun. 1, 2021) ...............................3, 5, 6, 7, 9, 12

*Teamsters Loc. Union No. 61 v. United Parcel Serv., Inc.*,
272 F.3d 600 (D.C. Cir. 2001) ........................................................................................4

ii

*TMR Energy, Ltd. v. State Prop. Fund of Ukr.*,
    2004 U.S. App. LEXIS 8195 (D.C. Cir. Apr. 23, 2004)............................................................3

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977)...............................................................................................3, 4

## STATUTES AND RULES

28 U.S.C. § 1782...........................................................................................................................8

Fed. R. Civ. P. 62..........................................................................................................................6

Fed. R. Civ. P. 69..........................................................................................................................8

Pursuant to the Court's Minute Order dated December 5, 2024, Respondent Rutas de Lima S.A.C. ("Rutas") respectfully submits this opposition to the motion of the Metropolitan Municipality of Lima ("MML") to stay enforcement of this Court's Judgment (ECF 118) pending appeal without a bond.  MML's Mot. to Stay ("Mot.") (ECF 132).

**PRELIMINARY STATEMENT**

MML asserts that "an appeal bond is necessary only 'where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable.'"  Mot. 3 (quoting *Fed. Prescr. Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)).

MML has shown more than a "reasonable likelihood" of "unwillingness to satisfy the judgment."  MML's Mayor, Rafael Lopéz Aliaga, has stated openly that MML does not *ever* intend to pay Rutas.  After the Judgment in this proceeding was issued, the Mayor stated on multiple occasions that MML will not pay Odebrecht's so-called "accomplices," referring to Rutas and its affiliated companies.[1]  At the initial hearing on this motion on September 12, 2024, counsel for MML told the Court that MML had a change of heart and now fully intended to pay the Judgment after the appeal, stating that "once the legal defenses have been exhausted, the city would pay."  Sept. 12, 2024 Hr'g Tr. 22:25-23:1.  Alas, zebras do not change their stripes and, less than a month later, the Mayor stated publicly that "under [his] management" Lima will not pay even a "single

---

[1] *See, e.g.*, La Municipalidad no le paga a grupos criminales, Canal N (Apr. 19, 2024), *available at* https://cms.imedia.pe/2024/04/19/la-municipalidad-no-le-paga-a-grupos-criminales/71717406/ 3338, at 0:52, 1:45 (Tovar Decl., **Ex. 1**) (stating that "the Municipality does not pay criminal groups," referring to "Odebrecht and its accomplices") (unofficial translation); Post by Rafael López Aliaga, Facebook (Apr. 25, 2024), *available at* https://www.facebook.com/ RafaelLopezAliagaOficial/videos/1233646998018346/ (Tovar Decl., **Ex. 2**) ("We do not pay delinquents! We are requesting that Odebrecht and its accomplices pay 3500 million dollars in damages to Lima's most vulnerable residents who were affected by the corrupt tolls.") (unofficial translation).

mango" on the arbitration awards because it "do[es] not pay delinquents."  *See* Interview with Rafael López Aliaga, Latina TV (Oct. 6, 2024), *available at* https://cms.imedia.pe/2024/10/06/entrevista-al-alcalde-de-lima-rafael-l-pez-aliaga/74147148/ 3353, at 32:05 (Tovar Decl., **Ex. 3**) (unofficial translation).[2]  It is hard to imagine a statement more damning to a motion for a stay of enforcement without bond.

MML's repeated repudiation of the Judgment is grounds alone to deny MML's request for an unsecured stay.  If MML seeks to contest these representations by the Mayor, Rutas respectfully requests that this Court authorize it to take discovery from MML, including document discovery regarding the Mayor's and MML's intentions and abilities with respect to paying the Judgment or a bond, and a deposition of the Mayor in the United States.

In addition, as discussed below, MML cannot satisfy the appropriate legal standard for a stay pending appeal.  MML cannot show a strong likelihood of success on the merits of its appeal or any irreparable harm from denial of its motion.  To the contrary, a stay of enforcement will delay Rutas' ability to pursue enforcement efforts, which, quite clearly, will be necessary for Rutas to collect on its awards and judgment.

The Court should reject MML's latest attempt to avoid its obligations to Rutas and deny MML's request for an unsecured stay pending appeal.

## ARGUMENT

### I.    MML Cannot Meet the Legal Standard for Obtaining a Stay

When assessing a motion for a stay pending appeal, courts in this Circuit apply the traditional four-factor test requiring the court to consider (1) whether the movant has made a

---

[2] "Mango" is slang for a unit of money in Spanish.  *See* Diccionario de la lengua española, Definition of "Mango," *available at* https://dle.rae.es/mango ("peso," "money") (unofficial translation).

"strong showing" that it is likely to prevail on the merits, (2) whether the movant has shown that it would be "irreparably injured" without the stay, (3) whether a stay would "substantially harm" other parties interested in the proceedings, and (4) where the public interest lies.  *See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see also TMR Energy, Ltd. v. State Prop. Fund of Ukr.*, 2004 U.S. App. LEXIS 8195, at *2 (D.C. Cir. Apr. 23, 2004) (referring to the four-factor test as "the stringent standards required for a stay pending appeal").  The party seeking the stay bears the "'burden of showing that exercise of the court's extraordinary injunctive power is warranted.'"  *Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38 (D.D.C. 2019) (quoting *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).

MML is wrong (Mot. 3 n.2) that the four-factor test "primarily governs stays of equitable relief," and not stays of monetary judgments.  Courts in this Circuit routinely apply the four-factor test in considering stays of monetary judgments pending appeal.  *See, e.g.*, *TMR Energy*, 2004 U.S. App. LEXIS 8195, at *2; *Tatneft v. Ukraine*, 2021 U.S. Dist. LEXIS 102179, at *13-14, 19 (D.D.C. Jun. 1, 2021); *Stati v. Republic of Kazakhstan*, 2018 U.S. Dist. LEXIS 245802, at *5 (D.D.C. Nov. 13, 2018).  MML advocates for an alternative standard, relying on *Federal Prescription*, 636 F.2d at 760.  *See* Mot. 3; *see also* Sept. 12, 2024 Hr'g Tr. 31:10-21.  But the D.C. Circuit has recognized that the four-factor test remains applicable after *Federal Prescription*.  *See TMR Energy*, 2004 U.S. App. LEXIS 8195, at *2 (denying extension of unsecured stay based on both four-factor test and *Federal Prescription*); *Stati*, 2018 U.S. Dist. LEXIS 245802, at *5 n.3 ("[T]he D.C. Circuit considers both standards relevant.").  In any case, MML fails to meet the legal standard for obtaining an unsecured stay both under the four-factor test or any alternative standard.

It is unsurprising that MML wants to avoid the four-factor test.  *First*, MML cannot make

a strong showing that it is likely to succeed on the merits in the appeal.  Substantive briefing on the appeal has concluded.  After two arbitration tribunals found MML's arguments and evidence concerning corruption insufficient, and this Court independently assessed those arguments and evidence and also found them insufficient to overturn the arbitration awards, MML again relies on the *same* arguments and evidence in the appeal to attempt to obtain yet a fourth bite at the apple.  *See* Rutas Br. 1-2, 31-43, *Metropolitan Municipality of Lima v. Rutas de Lima S.A.C.*, No. 24-7053 (D.C. Cir. Nov. 26, 2024).  MML is unlikely to prevail on its thrice-rejected arguments and evidence, especially given the "extremely limited" standard for judicial review of arbitration awards, s*ee Teamsters Loc. Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001), which forecloses courts from "hear[ing] claims of factual or legal error" by the arbitrators.  *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006).  Moreover, several of the key issues on appeal are factual questions reviewable only for clear error and not *de novo* review, rendering MML's likelihood of success in the appeal even more remote.  *See* Rutas Br. 21, 33, 43, 47, 52, *Metropolitan Municipality of Lima v. Rutas de Lima S.A.C.*, No. 24-7053 (D.C. Cir. Nov. 26, 2024).  Indeed, when this Court asked at the hearing on the motion to stay what MML's counsel thought MML's chances of success were on appeal, all MML's counsel could muster was: "[s]omething above zero."  Sept. 12, 2024 Hr'g Tr. 34:21-24.  That is far from a "strong showing" of a likelihood of success.  *See Washington Metro.*, 559 F.2d at 843.

     *Second*, MML has not shown that it would be irreparably injured absent a stay pending appeal.  The judgment here is a monetary judgment, and "'[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough'" to be considered irreparable.  *FTC v. Church & Dwight Co.*, 756 F. Supp. 2d 81, 86 (D.D.C. 2010) (quoting *Virginia Petroleum Jobbers Ass'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

*Third*, a stay would substantially harm Rutas.  Rutas has a substantial interest in avoiding a further delay in enforcement of a judgment on two arbitration awards now totaling over US$ 200 million, the first of which was issued nearly five years ago, and which MML has made clear it has no intention of satisfying.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 100 (D.D.C. 2011) (denying stay and noting that "Syria has failed to convince the court of any justification to delay plaintiffs' recovery for their injuries").  Rutas' interest in pursuing payment is particularly significant because the awards are intended to compensate Rutas for lost toll revenues that Rutas needs in order to recoup its substantial upfront investment into the construction of the highway project at issue in this case.

*Fourth*, the public interest does not favor a stay.  Rather, "it is in the public interest to support a timely and efficient process for recognition and execution of foreign arbitral awards." *Tatneft*, 2021 U.S. Dist. LEXIS 102179, at \*19.  The public interest is compounded here given MML's long history of delay in this matter and its publicly stated disdain for the awards of the arbitrators and the judgment of this Court.

## II.    MML Should Be Required to Post a Full Bond as a Condition for Any Stay

Even if the four-factor test for obtaining a stay does not apply, MML has not shown that it is entitled to an unsecured stay under any standard.

As the D.C. Circuit explained in *Federal Prescription*, on which MML relies (Mot. 3), a "full supersedeas bond" is the default requirement for a stay pending appeal in "normal circumstances," such as "where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable."  636 F.2d at 760; *see also Godfrey v. Iverson*, 2007 U.S. Dist. LEXIS 76267, at \*3 (D.D.C. Oct. 16, 2007) (describing an unsecured stay as a

"departure" from "the usual requirement"). This is also reflected in Federal Rule of Civil Procedure 62(b) upon which MML's motion is based: "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). Courts have discretion to waive the bond requirement only in "unusual circumstances," if it would not "unduly endanger the judgment creditor's interest in ultimate recovery." *Fed. Prescr.*, 636 F.2d at 760-61. Notably, the unusual circumstances in *Federal Prescription* included the fact that *both* parties had appealed the judgment at issue on the merits, which is not the case here. *Id.* at 761.

Contrary to MML's suggestion (Mot. 3-5), the default rule requiring a full bond applies equally to sovereigns. *See Tatneft*, 2021 U.S. Dist. LEXIS 102179, at *6-7 ("[W]ith regard to foreign sovereigns, there is no hardline exception to the default rule requiring a bond to obtain a stay of execution."). Certainly, Federal Rule of Civil Procedure 62 provides no such exception. Thus, regardless of MML's sovereign status, the Court must "look to the circumstances of this case to determine if there are 'unusual circumstances' that warrant waiving the requirement of a supersedeas bond." *Id.*

No unusual circumstances justify waiving the bond in this case. To the contrary, the circumstances of this case confirm that a full bond *should* be required because MML plainly has demonstrated its unwillingness to satisfy the Judgment and because MML has not shown that posting a bond is impracticable. An unsecured stay thus would only "unduly endanger" Rutas' interest in recovery. *Fed. Prescr.*, 636 F.2d at 760-61.

### A.    MML Has Consistently Demonstrated That It Is Unwilling to Satisfy the Judgment

MML's motion makes the vague, open-ended statement that it is "committed to paying the judgment if it is ultimately held valid and enforceable after MML has exhausted its plausible defenses." Mot. 9. Who knows what MML means by "ultimately," "exhausted," and "plausible

defenses."  MML's prior conduct and public statements certainly do not support a willing and speedy payment.

The Court recapitulated the history of MML's "continued efforts to slow" enforcement of the arbitration awards during the initial hearing on MML's motion to stay.  *See* Sept. 12, 2024 Hr'g Tr. 24:21-30:18; *see also Tatneft*, 2021 U.S. Dist. LEXIS 102179, at *13 (denying unsecured stay and noting significance of the fact that "Ukraine has been actively avoiding satisfaction of the Judgment for a number of years, albeit through legal means"); Order 3, *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 14-2014, ECF No. 58 (D.D.C. Feb. 24, 2016) (denying unsecured stay and noting that "Venezuela has expended a great deal of time and money in attempting to delay (by entirely legal means) the ultimate enforcement of the arbitration award").

In parallel, MML showed its continued contempt for the arbitration decisions issued against it in the third arbitration between the parties, which arises from the same Concession Contract.  In particular, when the third arbitration tribunal issued a provisional measures decision ordering MML to refrain from unilaterally terminating the Concession Contract and from aggravating the dispute, MML challenged the arbitrators on grounds of "bias" and then, as the Court is aware, filed a criminal complaint against them in Peru (*see* Case No. 23-CV-680 ("*Rutas II*"), ECF 41 at 5-6). The complaint was later dismissed by the Peruvian prosecutor as baseless.  *See* Prosecutor's Office Resolution No. 7, ¶¶ 4.49, 4.51, 4.55 (Tovar Decl., **Ex. 4**).  On May 23, 2024, the third arbitration tribunal issued an order finding that MML is in contempt of the tribunal's provisional measures decision due to various inflammatory statements made by MML's Mayor and MML's interventions in Peruvian court proceedings related to the Concession Contract.  *See* Third Arbitration Procedural Order No. 13, p. 7 (Tovar Decl., **Ex. 5**).  MML has nonetheless continued to aggravate the parties' dispute.  On August 9, 2024, for instance, MML issued an ordinance

declaring a state of emergency in one of the remaining operating sections of the concession road, ordering that works in that section be awarded to other contractors, and ordering Rutas to reimburse MML for the costs of those works.  *See* Municipal Order No. 2644 (Tovar Decl., **Ex. 6**).

As its latest maneuver, MML has brought an application in the Southern District of New York for discovery under 28 U.S.C. § 1782.  *See* No. 1:24-mc-533-LJL (S.D.N.Y).  The *fifteen* targets of the discovery include related and parent entities of Brookfield Peru, which is the majority shareholder of Rutas, law firms, advisors, and financial institutions that have worked with Brookfield and Rutas, and even the Federal Reserve Bank of New York.  MML claims to be seeking this discovery "for use" in Peruvian criminal proceedings and investigations to which MML is not even a party.  (As the Court will recall, MML is distinct from the State prosecutor's office.  *See* Dec. 6, 2023 Hr'g Tr. 30:6-10, 32:5-12; Maguiña Affidavit ¶¶ 3-6 (ECF 81-4).)

In addition to MML's conduct, as noted above, MML's Mayor has openly stated that MML does not intend to pay Rutas on the judgment or the awards—not one of the more than US$ 200 million mangos that MML now owes.  *See supra*, Preliminary Stmt., n.1.[3]  As also noted above, if MML wishes to contradict these statements in any way, Rutas requests to serve document requests regarding MML's and the Mayor's intention and ability to pay the Judgment, along with a deposition of the Mayor to take place in the United States.  *See Stati v. Republic of Kazakhstan*, 2020 U.S. Dist. LEXIS 263173, at *12-13 (D.D.C. May 18, 2020) (explaining that Fed. R. Civ. P.

---

[3] During the initial hearing on MML's stay motion, MML's counsel stated that the Mayor has also "privately and publicly said that the City is willing to pay Rutas to go away, to leave the country, to leave the city."  Sept. 12, 2024 Hr'g Tr. 61:22-24.  But the Mayor has in fact said that this statement is "false" and denied having said it.  *See* Rafael López Aliaga se contradice: ahora niega que ofreció dinero para que se retire Rutas de Lima, La República (Nov. 7, 2023), *available at* https://larepublica.pe/sociedad/2023/11/06/rafael-lopez-aliaga-se-contradice-ahora-niega-que-ofrecio-dinero-para-que-se-retire-rutas-de-lima-municipalidad-de-lima-fondo-brookfield-peajes-panamericana-norte-panamericana-sur-458340 (Tovar Decl., **Ex. 10**) (unofficial translation).

69 allows "discovery beyond a judgment-debtor's self-serving statements" about its ability to satisfy a judgment); *see also Bass Drilling v. Sand Hill Found.*, 2010 U.S. Dist. LEXIS 164970, at *4-5 (E.D. Tex. Apr. 19, 2010) ("The Court is of the opinion that post-judgment discovery is warranted to determine the ability of [judgment-debtors] to post a supersedeas bond.").

MML's allegation that it has the resources to pay the Judgment "in due course" (*see, e.g.*, Mot. 7) does not address MML's demonstrated *unwillingness* to pay. *See Tatneft*, 2021 U.S. Dist. LEXIS 102179, at *8-9 (requiring Ukraine to post bond even where there was "no dispute regarding Ukraine's solvency and ability to pay"); *Godfrey*, 2007 U.S. Dist. LEXIS 76267, at *4 ("[W]hile defendant Iverson undoubtedly has sufficient assets and income to satisfy the judgment, that fact alone is not enough."). And this demonstrated unwillingness to pay also clearly distinguishes this case from those cited by MML (Mot. 4-5) in which sovereigns obtained unsecured stays.

Moreover, while MML argues that it has "no history of failing to pay valid and enforceable monetary judgments against it, and no intention of starting to now" (Mot. 8), MML cannot point to any judgment it has satisfied that comes close to the more than US$ 200 million owing under the Judgment. *See Tatneft*, 2021 U.S. Dist. LEXIS 102179, at *13 (noting that Ukraine had not "proffered anything to demonstrate" that "it has satisfied judgments of this size"). And, there is in fact evidence to the contrary, as the Mayor has recently stated his refusal to pay a US$ 30 million arbitration award issued in favor of another concessionaire in Lima, Lima Expresa S.A.C., again based on allegations that the underlying contract was obtained through corruption.[4] MML's

---

[4] *See* Alcalde de Lima acerca de laudo arbitral a favor de Lima Expresa: "No le pagaremos nada a ningún delincuente," La Noticia (Apr. 20, 2024), *available at* https://lanoticia.com.pe/alcalde-de-lima-acerca-de-laudo-arbitral-a-favor-de-lima-expresa-no-le-pagaremos-nada-a-ningun-delincuente/ (Tovar Decl., **Ex. 11**) (reporting on Mayor's statement that "30 million dollars (…).

statement (Mot. 9) that "protect[ing] its investment-grade credit rating and general financial standing" is an incentive for it to satisfy the Judgment is likewise unconvincing.  And let us be clear, MML's Baa3+ Moody's rating (Mot. 7-8) is the very last rung in the rating scale before junk status.  *See* The Rating Scale, Moody's Ratings, *available at* https://ratings.moodys.io/ratings (describing "Baa" rating as "subject to moderate credit risk" and "as such may possess speculative characteristics").  In any event, MML has already shown that it is willing to take actions that could threaten its credit rating, including not complying with arbitration decisions.  *See, e.g.*, *Rutas II*, ECF 31-3 (statement by former Peruvian Minister of Economy and Finance, Mr. Castilla, recognizing MML's actions in response to the third arbitration provisional measures decision as "damag[ing] the legal security that every investor requires"); *Rutas II*, ECF 31-4 (letter from Mr. Castilla and seventeen other former ministers of Peru stating that "a country that aspires to remain investment-grade does not act in this way").

MML's unwillingness to satisfy the Judgment is further demonstrated by the fact that MML has not taken any steps to budget for payment.  *See* Mot. 11; *see also* Sept. 12, 2024 Hr'g Tr. 9:14-21.  The first arbitration award was issued nearly five years ago, and MML has been on notice that this Court would issue a judgment confirming the awards since at least December 6, 2023.  *See* Dec. 6, 2023 Hr'g Tr. 127:9-16.  Yet, Rutas is not aware of any provisions by MML to budget for payment in its 2024 budget, 2025 budget, or any future budget.

MML's city manager's description of MML's budgeting process does not provide any comfort.  According to his declaration, MML is allowed to allocate up to 5% of its current-expenditures budget each year to paying prioritized judgments.  Lozan Decl. ¶ 24 (ECF 132-2).

---

The Municipality of Lima is not going to pay anything to any criminal.  Not to OAS nor to Odebrecht nor to the accomplices") (unofficial translation).

10

Based on MML's 2024 current-expenditures budget of US$ 282.5 million, *id.* at ¶ 13, MML could have allocated only around US$ 14 million for paying prioritized judgments in 2024. At this rate, even assuming Rutas could receive the entire allocated amount at any given year without sharing with other creditors, it would take MML more than *14 years* to pay off the Judgment, not even accounting for interest. This process does not demonstrate a good faith willingness to satisfy the Judgment. Indeed, MML's Mayor has admitted that he sees as an available "defense mechanism" the possibility of allocating for payment of unfavorable arbitration awards "in 100 years if necessary." Interview with Rafael López Aliaga, Canal N (Apr. 24, 2024), *available at* https://cms.imedia.pe/2024/04/24/entrevista-al-alcalde-de-lima-rafael-l-pez-aliaga/71785939/ 3338, at 10:30 (Tovar Decl., **Ex. 7**) (unofficial translation).

MML contends that Peruvian law prohibits MML from taking steps to pay or budget for the Judgment because it is not "final." Mot. 10-11. In support, MML's city manager refers to Supreme Decree No. 003-2020-JUS for the proposition that MML can only pay judgments that are "final and enforceable" and that are "without pending means of challenge." Lozan Decl. ¶ 23 (ECF 132-2). However, Article 3.2(b) of the Supreme Decree expressly *excludes* from its ambit "obligations arising from arbitration awards, which are in the process of enforcement before the competent judicial authority." *See* Supreme Decree No. 003-2020-JUS, Art. 3.2(b) (Tovar Decl., **Ex. 8**). Obligations generated by arbitral awards, such as the Judgment, are governed instead by Peru's Arbitration Law, which provides that arbitration awards are final and unappealable, and that "[t]he filing of an appeal for annulment *does not* suspend the obligation to comply with the award or its arbitral or judicial enforcement." *See* Legislative Decree No. 1071, Art. 66 (Tovar Decl., **Ex. 9**) (emphasis added). MML has thus pointed to no laws that could justify MML's failure to take any steps for payment of the Judgment.

11

### B.    MML Has Not Demonstrated That Posting a Bond Is Impracticable

MML argues that it should nonetheless obtain a stay without posting any bond because posting a bond would be impracticable.  Mot. 10-11.  MML does not argue that it does not have the resources to post a bond (which it claims would cost around US$ 2 million (*id.* at 2)), but instead claims that it is unable to do so because Peruvian law prohibits MML from posting a bond while the appeal is pending and because MML has not allocated for the posting of a bond in its annual budget.  *Id* at 10-11.  None of these allegations constitutes "unusual circumstances" that justify a waiver of the full bond requirement.  *Fed. Prescr.*, 636 F.2d at 760-61.

With respect to alleged legal impediments under Peruvian law, MML has not pointed to any law prohibiting MML from posting a bond pending an appeal.  As noted, Supreme Decree No. 003-2020-JUS is inapplicable to the Judgment, *supra* § II.A, and it also does not address the posting of bonds.  *See generally* Supreme Decree No. 003-2020-JUS (Tovar Decl., **Ex. 8**).

Regarding its 2024 annual budget, MML's failure to make preparations to post a bond is not an "unusual circumstance" favoring waiver of the bond requirement, especially where there is also no indication that MML attempted to make any such allocation for its 2025 annual budget. *See Tatneft*, 2021 U.S. Dist. LEXIS 102179, at \*11, 13 (stressing that Ukraine had not "explained clearly why posting a bond is impracticable, although it would perhaps be burdensome," where Ukraine argued that "bond requirement would contravene" its "process for appropriating state funds to pay foreign judgments.").

As noted, MML has had plenty of advance notice of the issuance of the Judgment and of the default requirement that a bond be posted as a condition for a stay pending appeal.  Similarly, MML's contention (Mot. 11-13) that posting a bond would force MML to cut expenditures in social programs for "the city's most at-risk populations" or cause MML to default on other

12

liabilities is entirely misplaced.   Neither Rutas nor this Court is responsible for MML's mismanagement of its public fisc.   MML's failure to properly manage its budget to account for awards issued several years ago is no basis to waive the bond requirement, especially in light of MML's own assertion that it has plenty of available assets to satisfy its obligations (Mot. 7).   *See Smarra v. Boilermaker-Blacksmith Nat'l Pension Trust*, 2022 U.S. Dist. LEXIS 123292, at *3 (W.D. Pa. Mar. 25, 2022) (stating that defendants' position "that they have more than adequate resources to pay any judgment only highlights that posting a bond or other security should pose no problem").

## CONCLUSION

For the foregoing reasons, Rutas respectfully requests that the Court deny MML's motion to stay enforcement of the Judgment pending appeal without a bond (ECF 132).

Dated: January 7, 2025                                          Respectfully submitted,

                                                               /s/ *David G. Hille*

Nicolle E. Kownacki                                            David G. Hille
Blair E. Trahan                                                Renata Rogers de Castilho
**WHITE & CASE**                                               **WHITE & CASE**
701 Thirteenth Avenue, NW                                      1221 Avenue of the Americas
Washington, DC 20005                                           New York, NY 10020
Telephone: + 1 202 626 3600                                    Telephone: + 1 212 819 8200
Facsimile: + 1 202 639 9355                                    Facsimile: + 1 212 354 8113
nkownacki@whitecase.com                                        dhille@whitecase.com
blair.trahan@whitecase.com                                     renata.rogers.de.castilho@whitecase.com

                                                               *Counsel for Rutas de Lima S.A.C.*

13