# Exhibit 5

# English Translation



**CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into English of the original document entitled "2024-05-23 - Resolución Procesal No. 13 (Agravación de la Disputa)," which was written in Spanish.

City of Buenos Aires, August 21, 2024.

THE TR COMPANY TRANSLATION SERVICES

_____

Cynthia Farber
Certified Translator
License recorded on Page 226:Book XV
Buenos Aires Translators' Association
CTPCBA No. 5402

Manuel Ugarte 2187 1º (C1428BSE) Buenos Aires, Argentina
(54.11) 4896 2693
info@thetrcompany.com - www.thetrcompany.com

**PCA Case No. 2023-34**

***AD HOC* ARBITRATION UNDER THE ARBITRATION RULES OF THE UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW ("UNCITRAL")**

between

**RUTAS DE LIMA S.A.C. (Republic of Peru)**

**- Claimant -**

v.

**MUNICIPALIDAD METROPOLITANA DE LIMA (Republic of Peru)**

**- Respondent -**

<u>Arbitral Tribunal</u>

Professor Luca G. Radicati di Brozolo – Presiding Arbitrator
Professor David Arias - Arbitrator
Dr. Jorge Alberto Balbi Calmet - Arbitrator

<u>Administrative Secretary of the Arbitral Tribunal</u>

Dr. Emilio Bettoni

**PROCEDURAL ORDER NO. 13**
**on the alleged violations of the duty of confidentiality and of Procedural Order No. 5**
May 23, 2024

(a) **Whereas,** Procedural Order No. 1 ("**PO1**"), ¶100, provides that, except for information made available on the PCA website,

> [...] all information exchanged or submitted in this proceeding shall be confidential and shall not be disclosed to any third party, except as necessary for one Party or both Parties to assert or defend a legal right (including in related proceedings between the Parties or with related parties).

(b) **Whereas,** on June 13, 2023, through Procedural Order No. 5 ("**PO5**") regarding Claimant's request for interim measures, the Tribunal decided to:

> (i) **Order** the Respondent that the *status quo* be maintained until the controversy that is the subject of this proceeding is resolved, suspending the termination process of the Contract in progress, during the process of this arbitration;

> (ii) **Order** Respondent to abstain from aggravating the dispute with public manifestations about the subject and against Claimant during the course of this arbitration; and

> (iii) **Reserve** its decision with respect to costs related to the present stage of the proceeding for a later decision or award.

(c) **Whereas,** on July 5, 2023, Respondent complained that Claimant had violated the confidentiality duty established in PO1, ¶100, and asked the Tribunal to order Rutas de Lima to comply with its duty of confidentiality. Specifically, the MML argued that the "Perú 21" newspaper had published images of the cover page and operative part of PO5 which had obviously been obtained from Rutas de Lima, not from the MML;

(d) **Whereas,** on July 13, 2023, Claimant asked the Tribunal to (*i*) deny the MML's request, and (*ii*) find that it was the MML that had violated PO5 as a result of its public statements, including statements by the Mayor of Lima, that exacerbated the dispute. Claimant maintained that it had not shared PO5 (or any portions thereof) with the press, and that the article published in the "Perú 21" newspaper did not make reference to any statement by Claimant, while it did, however, refer to a communication between the newspaper and the MML. Claimant pointed out that it had informed its risk and bond rating agency of the contents of PO5, in compliance with its duty to share all material and relevant information, which is covered by the exception established in PO1, ¶100, and, in any event, this was a very succinct disclosure, without actually providing either PO5 or any images thereof. Moreover, Claimant reported several statements made by the Mayor of Lima in the course of July 2023, arguing that these do exacerbate the dispute, in violation of PO5;

(e) **Whereas,** on December 19, 2023, the Tribunal notified the parties of its availability to hold a procedural hearing, inviting them to state, by January 5, 2024, whether they still expected a ruling by the Tribunal on the pending issues, including the alleged violations of the duty of

confidentiality by Claimant and of PO5 by Respondent;

(f) **Whereas,** on January 5, 2024, Rutas de Lima confirmed that it still expected a ruling regarding the violation of PO5 by the MML, and updated its request to claim that, after July 13, 2023, the MML had engaged in several subsequent violations, also requesting leave to submit a full list of such violations;

(g) **Whereas,** on the same date, the MML reiterated its request that Rutas de Lima be ordered to comply with its duty of confidentiality. Respondent denied having provided PO5 to the "Perú 21" newspaper and having provided significant answers to that media outlet, further noting that the tone of the article suggested that PO5 had been shared by Claimant. Moreover, the MML denied having violated PO5, stating that the Contract termination process had not been completed and the public statements regarding the concession did not amount to a violation of PO5, but were necessary statements instead, as this was a matter of public interest that called for a statement by MML officials;

(h) **Whereas,** at the procedural hearing of January 9, 2024, the Parties argued their positions, among other issues, on the alleged violation of the duty of confidentiality and PO5, asked for a date to be set to file additional submissions on the subject, and confirmed their insistence on a ruling from the Tribunal;

(i) **Whereas,** in its submission of January 15, 2024, Rutas de Lima claimed that the MML had violated the interim measures ordered in PO5, thereby exacerbating the dispute. In this regard, it stated that the MML had systematically harassed it and targeted the arbitration proceeding with statements and criticism in both social and traditional media,[1] as well as in court proceedings, where it had sought interim measures intended to achieve a take-over of the concession.[2] According to Claimant, these actions, as well as the complaint filed against the original members of the Tribunal, are part of the Mayor of Lima's political *modus operandi*, rather than actions merely intended to keep the people updated on his actions in office. Claimant argues that such conduct by the MML (*i*) violates the Tribunal's order, (*ii*) causes reputational damage, as well as operational and financial damage, to Rutas de Lima, (*iii*) sparks social opposition against the Project, and (*iv*) constitutes a threat to the arbitration. Claimant concludes its submission by asking the Tribunal to:

   (i) find that the above-described actions by the MML individually and/or collectively violate the provisions of PO5; and

   (ii) order Respondent to refrain from continuing to engage in any such actions and to

---

[1] Claimant submitted Annexes D-629 to D-748, which concern the MML's statements alleged to have violated PO5.

[2] In particular, Claimant refers to three proceedings: *(i)* the proceeding before the National Superior Court of Justice in Specialized Criminal Matters, where, on November 10, 2023, that Court ruled on the interim measure requested by the Mayor of Lima concerning the concession; *(ii)* the proceeding before the Constitutional Court of Peru, where, on December 4, 2023, the Mayor of Lima submitted his oral arguments intended to revert the concession, and *(iii)* the proceeding before the Lima Court of Justice, where, on December 29, 2023, the Mayor of Lima requested an order that the concession be returned to the MML.

comply with the provisions of PO5; and

(iii)  order the MML to pay the costs of this ancillary proceeding.

(j)   **Whereas,** in its submission of January 29, 2024, the MML claimed to be in compliance with PO5. To begin, it pointed out that PO5 had been made public by Claimant on June 30, 2023, when it was submitted to the District of Columbia Court—which had been asked by Rutas de Lima in January 2024 to affirm PO5, resulting in parallel proceedings on the same subject-matter. Specifically, it argued that, following the interim measures order, it suspended the Contract termination procedure, and that, in any event, the evidence submitted by Rutas de Lima does not support its narrative. On the one hand, the court proceedings mentioned by Claimant were instituted by citizens, social groups, and independent district authorities, and the MML is the defendant in those cases,[3] exercising its rights in order to protect public interest and without violating PO5, which, in any event, does not restrict the MML's procedural rights in separate proceedings. On the other hand, the statements made by MML officials do not violate PO5 either, as they concern a concession that is in full force and effect and, as such, a matter of public interest that requires statements from public officials; some of these concern Claimant's very own conduct, as is the case with its decision to raise the toll rate in early 2024. On the subject of the reputational, operational and financial damage alleged by Rutas de Lima, Respondent argued that there is no evidence to support such claim; furthermore, as regards social opposition to the concession, such opposition is the result of the excessive rates charged to users, considering that the works are still in progress. Lastly, as to the criminal proceedings against the original members of the Tribunal, the MML said that no proceeding has been instituted thus far, as only a complaint has been filed—not by it—, and that it may not interfere with the procedure. Accordingly, Respondent requested that the Tribunal:

(i)      Reject Claimant's claim regarding the alleged violation of PO5 by the MML; and

(ii)     Order Claimant to pay the costs of this ancillary proceeding.

**The Tribunal's view**:

1.   As to the alleged confidentiality violation, the information published by the "Peru21" newspaper on July 5, 2023,[4] indicates that this could indeed have constituted a violation of the confidentiality rules established in PO1, ¶100. This is so because the newspaper article features images of PO5 that do undoubtedly fall within the scope of the confidentiality clause of PO1, ¶100, which provides that "*all information exchanged or submitted in this proceeding shall be confidential and shall not be disclosed to any third party.*"

---

[3] Respondent argued that only in one proceeding it was not the defendant but was made one through compulsory joinder instead.
[4] See the annex to Respondent's letter to the Tribunal dated July 5, 2023.

4

2.  The Tribunal takes note that each Party has denied having transmitted PO5 or portions thereof to the "Peru21" newspaper. Moreover, the contents of the newspaper article in question are not sufficient to determine who provided PO5 or portions thereof to the newspaper, even on a preliminary basis.

3.  Even though Claimant has admitted to having notified Apoyo & Asociado Internacionales S.A.C.—the firm in charge of its risk and bond ratings—of the issue of PO5, it is the Tribunal's view that such disclosure falls under the exception contained in PO1, ¶100, which permits the disclosure of information concerning this arbitration if such disclosure is "*necessary for one Party or both Parties to assert or defend a legal right*." It is the Tribunal's position that Claimant has sufficiently established its obligations under the Common Terms Agreement dated June 27, 2014,[5] to disclose the existence of PO5 and the granting of the request for interim measures. Furthermore, in addition to being succinct, Rutas de Lima's communication[6] does not seem to have PO5 attached to it, and, therefore, the Tribunal cannot infer a link between such disclosure and the information received by the "Peru21" newspaper.

4.  In light of the foregoing, the possibility of a violation of the duty of confidentiality cannot be ruled out. However, the Tribunal notes that, as pointed out by the MML, PO5 was made publicly available on June 30, 2023—*i.e.,* before the "Peru21" newspaper article was published—on submission to the District of Columbia Court. Therefore, the Tribunal is not in a position to determine how PO5 became public or whether confidentiality in this arbitration was indeed violated. In any event, the Tribunal will take this opportunity to insist to all subjects involved in this proceeding on the importance of complying with the order in PO1, ¶100.

5.  As to the <u>alleged violation of PO5 by Respondent</u>, Claimant argued that this happened via the public statements of MML officials, as well as the actions of the MML in court proceedings. For its part, Respondent claims to have complied with PO5, as it did not take any steps to further the Contract termination process, also claiming that MML officials are required to fulfill their duties by keeping the people informed about a project that is a matter of public interest and by exercising the MML's procedural rights.

6.  From the outset, the Tribunal agrees with Respondent that performance of the Contract that is the subject of this dispute is a matter of public interest and, accordingly, the relevant MML officials have the right—as long as they comply with the confidentiality rules of this arbitration—to keep the people informed about the concession.

7.  That said, the Tribunal would note that PO5, the violation of which has been alleged by Rutas de Lima, requires the MML to:

    (i)   Preserve the *status quo* until such time as the dispute that is the subject of this arbitration has been resolved, which means that, while the arbitration is pending, no

---

[5] Annex D-92.
[6] Annex D-121.

conduct should be engaged in that would disrupt the *status quo* as of the date on which Claimant filed its request for interim measures, in particular, as regards termination of the Contract; and

(ii)    Refrain from exacerbating the dispute.

8.    The power to grant such measures arises directly from Article 26 of the Rules[7] and has also been widely recognized by tribunals as a procedural prerogative of arbitrators.[8]

9.    Having carefully analyzed the various conducts of the MML pointed out by Claimant, it is the Tribunal's view that PO5 was indeed violated as a result of actions that are incompatible with the order to maintain the *status quo* and have exacerbated this dispute.

10.   As to the public statements by MML officials, it is the Tribunal's position that, even though they largely do not exacerbate the dispute, in certain cases the official's utterances went beyond their duty to keep their constituents informed, as is also the case with the non-conventional jargon, which, in certain cases, can be found in statements made in a political context.[9] Specifically, the Tribunal believes the following public statements by MML officials contributed to an exacerbation of the dispute:

> "I would not call them *Rutas de Lima* [Lima's routes], I call them *Ratas de Lima* [Lima's rats]" (Annex D- 664);

> "I will never make a corrupt deal or put up with mafia-like corporations that get richer at the expense of the most vulnerable among my brothers and sisters, which is why I

---

[7] See PO5, ¶¶125 *et seq.*

[8] *Biwater Gauff v. United Republic of Tanzania,* ICSID Case No. ARB/05/22, Procedural Order No. 3, September 29, 2006 (**DL-137**), ¶ 135: "[...] *an arbitral tribunal is entitled to direct the parties not to take any step that might (1) harm or prejudice the integrity of the proceedings, or (2) aggravate or exacerbate the dispute. Both may be seen as a* particular *type of provisional measure (as, for example, in Article 17 of the newly revised UNCITRAL Model Law on International Commercial Arbitration, which refers to the prevention of 'current or imminent harm or prejudice to the arbitral process itself'), or simply as a facet of the tribunal's overall procedural powers and its responsibility for its own process. Both concerns have a number of aspects, which can be articulated in various ways, such as the need to: - preserve the Tribunal's mission and mandate to determine finally the issues between the parties; - preserve the proper functioning of the dispute settlement procedure; preserve and promote a relationship of trust and confidence between the parties; - ensure the orderly unfolding of the arbitration process; - ensure a level playing field; - minimize the scope for an external pressure on any party, witness, expert or other participant in the process; - avoid 'trial by media;'"* and ¶ 136: *"It is self-evident that the prosecution of a dispute in the media or in other public fora, or the uneven reporting and disclosure of documents or other parts of the record in parallel with a pending arbitration, may aggravate or exacerbate the dispute and may impact upon the integrity of the procedure* [..]." See also *Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID Case No. ARB/06/11, Decision on Provisional Measures, August 17, 2007 (**DL-144**), ¶96: "*It is not contested that provisional measures can be granted in order to avoid aggravation of a dispute, and international tribunals have often done so;"* and ¶97: "*However, provisional measures, when granted as measures required to prevent aggravation of the dispute, have always been directed at the behavior of the parties to the dispute, whether they consisted of measures required to maintain – or restore – peace between them, or to prevent one party from initiating or pursuing parallel litigation, for example in the national courts, thereby directly undermining the international proceedings. Provisional measures are not designed to merely mitigate the final amount of damages* [...]".

[9] *Biwater Gauff v. United Republic of Tanzania,* ICSID Case No. ARB/05/22, Procedural Order No. 3, September 29, 2006 (**DL-137**), Recommendation (d) : "[...] *the parties may engage in general discussion about the case in public, provided that any such public discussion is restricted to what is necessary, and is not used as an instrument to antagonise the parties, exacerbate their differences, unduly pressure one of them, or render the resolution of the dispute potentially more difficult, or circumvent the terms of this Procedural Order.*"

keep watch on the issue of toll rates" (Annex D-651);

"And I am putting up a fight, I am even close to putting an end to toll rates, corrupt toll rates, *Ratas de Lima's* toll rates" (Annex D-653);

"A corporation it is not, a criminal organization is more like it" (Annex D-656).

11. As to MML's actions in the Peruvian court proceedings, it is the Tribunal's view that Claimant has established that, in two instances, Respondent violated its duty to maintain the *status quo* and not to exacerbate the dispute. This happened for the first time in the context of the criminal proceeding against Ms. Susana María del Carmen Villarán de la Puente (the former Mayor of the City of Lima) *et al.* (Case File No. 00036-2017-141-5001-JR-PE-03), where the MML requested *"an interim measure ordering suspension of the current administration of concessions by Rutas de Lima,"*[10] and, later on, in a proceeding that is pending before the Constitutional Court of Peru, where, regarding the concession that is the subject of this arbitration, the Mayor of Lima requested *"that the Municipality of Lima be ordered to take over administration of all toll booths, not charging toll fees to residents from the affected areas."*[11]

12. It should be noted that, obviously enough, PO5 should not be interpreted to keep the MML from exercising its procedural rights in the proceedings concerning the Contract that is the subject of this arbitration; however, PO5 is intended to keep Respondent, in any such proceeding, from seeking measures that would disrupt the *status quo* and, in particular, measures intended to disrupt the operation or management of the concession, thereby circumventing the interim measures issued in this arbitration.

13. Lastly, the Tribunal would like to point out that it has considered the argument put forth by Respondent that PO5 has not been violated because, once it was issued, Respondent did not complete the termination procedure. In this regard, the Tribunal will note that, other than a few public statements by the Mayor of Lima made after PO5 had been issued,[12] it is not aware of any concrete actions by Respondent intended to move that procedure forward. However, this is not enough to rule out a disruption of the *status quo* and the exacerbation of this dispute, as these can both be the result of other actions.

**Therefore, the Tribunal:**

(a) **Declares** that a finding of a violation of the duty of confidentiality established in PO1, ¶100 is not possible, and **insists on** the importance of complying with said duty;

(b) **Finds** that the MML violated its obligations to preserve the *status quo* and not to exacerbate the dispute under PO5, to the extent discussed above, and, therefore, **orders** the MML to comply with PO5;

---

[10] Annex D-740, p. 1.

[11] Annex D-741.

[12] See, e.g., Annex D-630.

PCA Case No. 2023-34 - *Ad Hoc* UNCITRAL Arbitration – Procedural Order No. 13

(c) **Reiterates** the importance of preserving the *status quo* and not exacerbating the dispute that is the subject of this proceeding until it has been resolved; and

(d) **Reserves** its decision on the costs of this stage of the proceeding to a later decision or award.

Place of arbitration: Washington D.C., United States of America

Date: May 23, 2024

---

Professor Luca G. Radicati di Brozolo
Presiding Arbitrator

# Spanish Original

**CASO CPA No. 2023-34**

**EN EL ARBITRAJE *AD HOC* BAJO EL REGLAMENTO DE ARBITRAJE DE LA COMISIÓN DE LAS NACIONES UNIDAS PARA EL DERECHO MERCANTIL INTERNACIONAL ("CNUDMI")**

entre

**RUTAS DE LIMA S.A.C. (República del Perú)**

**– Demandante –**

c.

**MUNICIPALIDAD METROPOLITANA DE LIMA (República del Perú)**

**– Demandada –**

Tribunal Arbitral

Profesor Luca G. Radicati di Brozolo – Presidente
Profesor David Arias – Árbitro
Dr. Jorge Alberto Balbi Calmet – Árbitro

Secretario Administrativo del Tribunal Arbitral

Dr. Emilio Bettoni

**RESOLUCIÓN PROCESAL n. 13**
**Sobre las alegadas violaciones del deber de confidencialidad y de la Resolución Procesal n. 5**

23 de mayo de 2024

**Considerando que**:

a)  el ¶ 100 de la Resolución Procesal No. 1 ("**RP1**") establece que, salvo la información publicada por la CPA en su página web,

> […] toda la información intercambiada o presentada en este procedimiento será confidencial y no se revelará a ningún tercero, excepto según sea necesario para que una Parte o las Partes ejerzan o defiendan un derecho legal (incluso en procedimientos relacionados entre las Partes o con partes relacionadas).

b)  el 13 de junio de 2023, mediante la Resolución Procesal No. 5 ("**RP5**"), sobre las medidas cautelares solicitadas por la Demandante, el Tribunal dictó lo siguiente:

> (i) **Ordenar** a la Demandada que se mantenga el *status quo* hasta que se dirima la controversia objeto del presente procedimiento, suspendiendo el procedimiento de caducidad del Contrato en curso, durante el trámite del presente arbitraje;

> (ii) **Ordenar** a la Demandada abstenerse de agravar la disputa con manifestaciones públicas sobre el asunto y contra la Demandante durante el trámite del presente arbitraje; y

> (iii) **Reservar** su decisión sobre las costas relacionadas con la presente etapa del procedimiento para una decisión o un lado posterior.

c)  el 5 de julio de 2023 la Demandada denunció que la Demandante había violado el deber de confidencialidad establecido en el ¶ 100 de la RP1 y solicitó al Tribunal ordenar a Rutas de Lima cumplir con ese deber. En concreto, la MML alegó que el diario "Perú 21" había publicado imágenes de la portada y de la parte resolutiva de la RP5 que evidentemente habían sido obtenidas de Rutas de Lima, y no de la MML;

d)  el 13 de julio de 2023, la Demandante solicitó al Tribunal (*i*) rechazar la solicitud de la MML y (*ii*) determinar que era la MML la que había violado la RP5 con declaraciones públicas, incluyendo las del Alcalde de Lima, que agravaban la disputa. La Demandante afirmó que no había compartido la RP5 (o fragmentos de ella) con la prensa y que el artículo del diario "Perú 21" no hacía referencia a ninguna declaración de la Demandante, pero sí a una comunicación entre el periódico y la MML. La Demandante destacó que había comunicado el contenido de la RP5 a su calificadora de riesgos y bonos conforme a su obligación de compartir toda la información material y relevante, la cual recae bajo la excepción prevista por el ¶ 100 del RP1, y, en todo caso, la revelación fue minimalista, sin aportar la RP5 o imágenes de ella. Además, la Demandante reportó varias declaraciones realizadas por el Alcalde de Lima durante el mes de julio de 2023, indicando que estas agravan la disputa en violación de la RP5;

e)  el 19 de diciembre de 2023, el Tribunal comunicó su disponibilidad para celebrar una audiencia procesal e invitó a las Partes a indicar dentro del 5 de enero de 2024 si todavía solicitaban un pronunciamiento del Tribunal sobre los temas pendientes, entre los cuales se encontraban las supuestas violaciones del deber de confidencialidad por parte de la Demandante y de la RP5 por parte de la Demandada;

f)  el 5 de enero de 2024, Rutas de Lima confirmó que insistía en un pronunciamiento acerca de la violación de la RP5 por parte de la MML y actualizó su solicitud alegando que, posteriormente al 13 de julio de 2023, esta había incurrido en violaciones ulteriores, solicitando asimismo la oportunidad de remitir un listado completo de las mismas;

2

Caso CPA No. 2023-34 – Arbitraje *Ad Hoc* CNUDMI – Resolución Procesal n. 13

g) el mismo día la MML reiteró su solicitud de conminar a Rutas de Lima a cumplir con su deber de confidencialidad. La Demandada negó haber proporcionado la RP5 al diario "Perú 21" y haber ofrecido respuestas significativas a ese periódico, y añadió que el tono del artículo sugería que la RP5 había sido compartida por la Demandante. Por otra parte, la MML negó haber incumplido con la RP5, indicando que el proceso de caducidad del Contrato no se había completado y que los pronunciamientos públicos acerca de la concesión no violan la RP5, sino que son necesarios al ser un asunto de interés público, que requiere un pronunciamiento de los funcionarios de la MML;

h) en la audiencia procesal del 9 de enero de 2024 las Partes discutieron, *inter alia,* sobre la supuesta violación del deber de confidencialidad y de la RP5, solicitaron un plazo para presentar escritos adicionales sobre estos temas y confirmaron la necesidad de que el Tribunal se pronunciara;

i) en su escrito del 15 de enero de 2024 Rutas de Lima alegó que la MML había violado las medidas cautelares dispuestas con la RP5 agravando así la disputa. Al respecto, declaró que la MML la había hostigado sistemáticamente y había atacado el proceso arbitral por medio de declaraciones y ataques en redes sociales y medios de comunicación[1], así como en procesos judiciales, en los cuales había solicitado medidas cautelares dirigidas al apropiamiento de la concesión[2]. Según la Demandante, estas acciones, así como la denuncia presentada en contra de los miembros iniciales del Tribunal, hacen parte de un *modus operandi* político del Alcalde de Lima, y no dan simplemente cuenta a la ciudadanía de su gestión. La Demandante sostiene que esta conducta de la MML (*i*) viola la orden del Tribunal, (*ii*) genera un daño reputacional, así como operacional y financiero, para Rutas de Lima, (*iii*) provoca una oposición social al Proyecto, y (*iv*) amenaza al arbitraje. La Demandante concluyó su escrito solicitando al Tribunal:

> (i) que determine que las acciones de la MML previamente descritas incumplen, individual y/o colectivamente, las disposiciones de la RP5; y
>
> (ii) que ordene a la Demandada abstenerse de continuar realizando tales acciones, y cumplir con las disposiciones de la RP5; y
>
> (iii) que ordene a la MML el pago de las costas correspondientes a este incidente;

j) en su escrito del 29 de enero de 2024 la MML indicó haber cumplido con la RP5. De entrada, destacó que la RP5 ha sido hecha pública por la Demandante el 30 de junio de 2023 cuando fue presentada ante la Corte del Distrito de Columbia, a la cual Rutas de Lima pidió en enero de 2024 que confirmara la RP5, así generando procesos paralelos sobre la misma materia. En concreto, sostuvo que tras la emisión de las medidas cautelares ella detuvo el proceso de caducidad del Contrato y que, en todo caso, las pruebas aportadas por Rutas de Lima no se ajustan a su narrativa. Por un lado, los procesos judiciales mencionados por la Demandante

---

[1] La Demandante alegó los Anexos de D-629 a D-748 que corresponden a las declaraciones de la MML que habrían violado la RP5.

[2] En particular, la Demandante hace referencia a tres procedimientos: (*i*) el procedimiento frente a la Corte Nacional de Justicia Penal Especializada que el 10 de noviembre de 2023 se pronunció sobre la medida cautelar solicitada por el Alcalde de Lima con respecto a la concesión; (*ii*) el procedimiento frente el Tribunal Constitucional de Perú en el cual el Alcalde de Lima presentó el 4 de diciembre de 2023 alegatos orales finalizados a retrotraer la concesión y (*iii*) el procedimiento frente a la Corte de Justicia de Lima en el cual el 29 de diciembre de 2023 el Alcalde de Lima solicitó que se ordenase la devolución de la concesión a la MML.

han sido iniciados por ciudadanos, grupos sociales y autoridades distritales independientes, y la MML participa en ellos en calidad de demandada[3], ejerciendo sus derechos con el fin de proteger el interés público, y sin violar la RP5, la cual, en todo caso, no limita las prerrogativas procesales de la MML en procedimientos ajenos. Por otro lado, tampoco las declaraciones de los funcionarios de la MML violan la RP5 porque se relacionan con una concesión vigente que es un asunto de interés público y requiere que los funcionarios se pronuncien al respecto, y a veces se relacionan con la conducta de la misma Demandante, como su decisión de incrementar la tarifa de peaje al comienzo de 2024. En cuanto al daño reputacional, operativo y financiero alegado por Rutas de Lima, la Demandada sostuvo que carece de prueba de respaldo; además, en lo que hace a la oposición social a la concesión, esta deriva de la tarifa excesiva cobrada a los usuarios cuando las obras aún no han terminado. Por último, en relación con el proceso penal en contra de los miembros iniciales del Tribunal, la MML afirmó que todavía no existe ningún proceso, sino solamente una denuncia, y que ella no la presentó ni puede interferir con el procedimiento. Por todo ello, la Demandada solicitó al Tribunal que:

> (i) rechace el reclamo de la Demandante en torno al supuesto incumplimiento de la MML a la RP5; e

> (ii) imponga las costas de este incidente a la Demandante;

**El Tribunal expone lo siguiente**:

1. En relación con la <u>alegada violación de confidencialidad</u>, el Tribunal observa que las informaciones publicadas por el periódico "Peru21" el día 5 de julio de 2023[4] revelan que, efectivamente, pudo haber una violación de las reglas de confidencialidad establecidas en el ¶ 100 de la RP1. Esto debido a que ese artículo muestra imágenes de la RP5 que sin duda estaban cubiertas por la cláusula de confidencialidad del ¶ 100 de la RP1, el cual prevé que "*toda la información intercambiada o presentada en este procedimiento será confidencial y no se revelará a ningún tercero*".

2. El Tribunal toma nota de que cada Parte declara que no fue ella la que transmitió la RP5 o porciones de esta al periódico "Peru21". Además, el contenido del artículo de periódico en cuestión no permite determinar, ni siquiera de manera indiciaria, de quién recibió el periódico la RP5 o porciones de esta.

3. Si bien la Demandante ha reconocido haber informado de la expedición de la RP5 a la empresa Apoyo & Asociado Internacionales S.A.C., encargada de calificar sus riesgo y bonos, el Tribunal considera que esta revelación se ajusta a la excepción prevista por el ¶ 100 de la RP1, la cual permite revelar una información relacionada con el presente arbitraje si esto es "*necesario para que una Parte o las Partes ejerzan o defiendan un derecho legal*". El Tribunal estima que la Demandante ha acreditado suficientemente tener obligaciones bajo el *Common Terms Agreement* del 27 de junio de 2014[5] para revelar la existencia de la RP5 y el hecho de que la solicitud de medidas cautelares hubiese sido declarada procedente. Además, la comunicación de Rutas de Lima[6], más allá de ser sucinta, no parece adjuntar la RP5, y no

---

[3] La Demandada alega que en un solo procedimiento no participó como parte demandada sino como litisconsorte pasivo necesario.

[4] Véase el Anexo a la carta de la Demandada al Tribunal del 5 de julio de 2023.

[5] Anexo D-92.

[6] Anexo D-121.

Caso CPA No. 2023-34 – Arbitraje *Ad Hoc* CNUDMI – Resolución Procesal n. 13

contiene imágenes de la misma, por lo que el Tribunal tampoco puede concluir que haya una relación entre esta revelación y la información recibida por el periódico "Peru21".

4.  A la luz de lo anterior, no se puede excluir que haya habido una violación del deber de confidencialidad. Ahora bien, el Tribunal observa que, tal y como fue indicado por la MML, la RP5 ha sido hecha pública el 30 de junio de 2023, es decir antes de la publicación en el periódico "Peru21", cuando fue presentada ante la Corte del Distrito de Columbia. Por ende, el Tribunal no está en condición de determinar cómo devino pública la RP5, ni si hubo efectivamente vulneración de la confidencialidad del arbitraje. En todo caso, el Tribunal aprovecha la ocasión para enfatizar a todos los sujetos involucrados en este procedimiento la importancia de cumplir con lo establecido en el ¶ 100 de la RP1.

5.  En cuanto al <u>alegado incumplimiento de la RP5 por parte de la Demandada</u>, la Demandante afirma que esto se manifestó a través de declaraciones públicas de funcionarios de la MML, así como de actuaciones de la MML en procesos judiciales. Por su parte, la Demandada sostiene haber cumplido con la RP5 al no haber tomado medida alguna para la continuación del proceso de caducidad del Contrato y añade que los funcionarios de la MML deben cumplir con sus funciones informando a la ciudadanía de un proyecto de interés público y ejerciendo los derechos procesales de la MML.

6.  De entrada, el Tribunal coincide con la Demandada en que la ejecución del Contrato que es objeto de la presente disputa es un asunto de interés público, y, por ende, los funcionarios competentes de la MML tienen la facultad – mientras se respeten las reglas de confidencialidad de este arbitraje – de mantener informada a la ciudadanía acerca de la concesión.

7.  Aclarado esto, el Tribunal recuerda que la RP5, cuya violación es invocada por Rutas de Lima, impone a la MML:

    (i)   mantener el *status quo* hasta que se dirima la controversia objeto del presente procedimiento, lo cual implica que durante el trámite del presente arbitraje no se deben realizar conductas que alteren la situación existente a la fecha en que la Demandante presentó la solicitud de medidas cautelares, en particular, en relación con la caducidad del Contrato; y

    (ii)  abstenerse de agravar la disputa.

8.  El poder de dictar estas medidas surge directamente del artículo 26 del Reglamento[7] y también es ampliamente reconocido por la jurisprudencia como un poder procesal de los árbitros[8].

---

[7] Véase RP5, ¶¶ 125 ss.

[8] *Biwater Gauff c. República Unida de Tanzania,* Caso CIADI No. ARB/05/22*,* Orden Procesal No. 3, 29 de septiembre de 2006 (**DL-137**), ¶ 135: "[…] *an arbitral tribunal is entitled to direct the parties not to take any step that might (1) harm or prejudice the integrity of the proceedings, or (2) aggravate or exacerbate the dispute. Both may be seen as a* particular *type of provisional measure (as, for example, in Article 17 of the newly revised UNCITRAL Model Law on International Commercial Arbitration, which refers to the prevention of 'current or imminent harm or prejudice to the arbitral process itself'), or simply as a facet of the tribunal's overall procedural powers and its responsibility for its own process. Both concerns have a number of aspects, which can be articulated in various ways, such as the need to: - preserve the Tribunal's mission and mandate to determine finally the issues between the parties; – preserve the proper functioning of the dispute settlement procedure; preserve and promote a relationship of trust and confidence between the parties; - ensure the orderly unfolding of the arbitration process; - ensure a level playing field; - minimize the scope for an external pressure on any*

Caso CPA No. 2023-34 – Arbitraje *Ad Hoc* CNUDMI – Resolución Procesal n. 13

9. Tras haber analizado detenidamente las distintas conductas de la MML en las que la Demandante hace hincapié, el Tribunal considera que efectivamente hubo violación de la RP5 en cuanto se realizaron actuaciones incompatibles con el mantenimiento del *status quo* y que agravaron la presente disputa.

10. En cuanto a las declaraciones públicas de funcionarios de la MML, el Tribunal considera que, si bien en buena parte no agravan la disputa, en algunos casos las expresiones utilizadas excedieron la rendición de cuentas a la ciudadanía y también la jerga anticonvencional que, en ciertas ocasiones, puede utilizarse en declaraciones rendidas en un contexto político[9]. En concreto, el Tribunal considera que las siguientes declaraciones públicas de funcionarios de la MML contribuyeron a la agravación de la disputa:

> "Yo no lo llamo a esto Rutas de Lima, yo los llamo Ratas de Lima" (Anexo D-664);

> "Jamás voy a pactar con la corrupción o a tolerar empresas mafiosas que se enriquecen a costa de mis hermanos más vulnerables, por eso pongo gran atención al tema de los peajes" (Anexo D-651);

> "Y yo estoy peleando, inclusive ya termino con los peajes, los peajes de la corrupción, los peajes de las Ratas de Lima" (Anexo D-653);

> "Empresa no es, organización criminal" (Anexo D-656).

11. En cuanto a las actuaciones de la MML en procesos judiciales peruanos, el Tribunal considera que la Demandante ha acreditado que, en dos circunstancias, la Demandada incumplió con el deber de mantener el *status quo* y no agravar la disputa. Esto ocurrió, primero, en el marco del proceso penal en contra de la Sra. Susana María del Carmen Villarán de la Puente (exalcaldesa de la ciudad de Lima) y de otros sujetos (Expediente 00036-2017-141-5001-JR-PE-03), en el cual la MML solicitó una "*medida cautelar genérica que ordene la suspensión de la administración actual de concesiones de Rutas de Lima*"[10], y, posteriormente, en un procedimiento pendiente ante el Tribunal Constitucional del Perú, en el cual el Alcalde de

---

*party, witness, expert or other participant in the process; - avoid 'trial by media'";* y ¶ 136: "*It is self-evident that the prosecution of a dispute in the media or in other public fora, or the uneven reporting and disclosure of documents or other parts of the record in parallel with a pending arbitration, may aggravate or exacerbate the dispute and may impact upon the integrity of the procedure* [..]". Véase también *Occidental Petroleum Corporation and Occidental Exploration and Production Company c. República de Ecuador*, Caso CIADI No. ARB/06/11, Decisión sobre Medidas Provisionales, 17 de agosto de 2007 (**DL-144**), ¶ 96: "*No es objeto de controversia que pueden disponerse medidas provisionales para evitar la agravación de una diferencia, y los tribunales internacionales en muchos casos las han dispuesto*"; y ¶ 97: "*No obstante, las medidas provisionales, cuando se disponen como medidas necesarias para prevenir la agravación de la diferencia, siempre han estado encaminadas a regular el comportamiento de las partes de la diferencia, sea que consistieran en medidas necesarias para mantener —o restablecer— la paz entre ellas, sea a impedir que una de las partes iniciara o llevara adelante litigios paralelos, por ejemplo ante los tribunales nacionales, afectando directamente en consecuencia los procedimientos internacionales. Las medidas provisionales no están destinadas meramente a atenuar la gravedad final de los daños y perjuicios* [...]".

[9] *Biwater Gauff c. República Unida de Tanzania,* Caso CIADI No. ARB/05/22, Orden Procesal No. 3, 29 de septiembre de 2006 (**DL-137**), Recomendación ón (d) : "[…] *the parties may engage in general discussion about the case in public, provided that any such public discussion is restricted to what is necessary, and is not used as an instrument to antagonise the parties, exacerbate their differences, unduly pressure one of them, or render the resolution of the dispute potentially more difficult, or circumvent the terms of this Procedural Order*".

[10] Anexo D-740, pág. 1.

Caso CPA No. 2023-34 – Arbitraje *Ad Hoc* CNUDMI – Resolución Procesal n. 13

Lima solicitó, en relación con la concesión objeto de este arbitraje, "*ordenar a la Municipalidad de Lima la administración de todas las garitas de peaje, eliminando el cobro a los vecinos de las zonas afectadas*"[11].

12. El Tribunal aclara que, evidentemente, la RP5 no debe interpretarse en el sentido de que la MML no puede ejercer sus derechos procesales en los juicios relacionados con el Contrato objeto del presente arbitraje; sin embargo, la RP5 apunta a que la Demandada no solicite en esos procedimientos medidas que vulneren el *status quo* y, en particular, que estén dirigidas a obtener un alteración de la gestión o administración de la concesión, lo cual equivaldría a eludir las medidas cautelares dictadas en este arbitraje.

13. Finalmente, el Tribunal destaca que ha considerado el argumento de la Demandada según el cual no hubo violación de la RP5 porque, tras su expedición, ella no completó el procedimiento de caducidad. Al respecto, el Tribunal constata que, más allá de algunas declaraciones públicas del Alcalde de Lima posteriores a la expedición de la RP5[12], no tiene conocimiento de acciones concretas de la Demandada dirigidas a continuar ese proceso. No obstante, esto no es suficiente para excluir una alteración del *status quo* y una agravación de la disputa, ya que estas pueden verificarse también por medio de otras acciones.

**El Tribunal:**

a) **Declara** que no es posible determinar si hubo violación del deber de confidencialidad previsto en el ¶ 100 de la RP1 y **reitera** la importancia de cumplir con ese deber;

b) **Determina** que hubo violación por parte de la MML de las obligaciones de preservar el *status quo* y de no agravar la disputa dictadas por la RP5, en la medida indicada arriba, y, por consiguiente, **ordena** a la MML cumplir con la RP5;

c) **Reitera** la importancia de preservar el *status quo* y de no agravar la disputa hasta que se dirima la controversia objeto del presente procedimiento; y

d) **Reserva** su decisión sobre las costas relacionadas con la presente etapa del procedimiento para una decisión o laudo posterior.

Lugar del arbitraje: Washington D.C., Estados Unidos de América

Fecha: 23 de mayo de 2024

_____
Profesor Luca G. Radicati di Brozolo
Presidente del Tribunal Arbitral

---

[11] Anexo D-741.

[12] Véase, por ejemplo, el Anexo D-630.