# Exhibit 8

# Unofficial English Translation

El Peruano

Digitally signed by:
EMPRESA PERUANA DE SERVICIOS
EDITORIAS S.A. - EDITORA PERU
DATE: 01/04/2020 04:29:31

**12**    **LEGAL**

## JUSTICE AND HUMAN RIGHTS

Supreme Decree approving the Regulations of Law No. 30137, a law that establishes criteria for prioritization of the payment of judicial judgments

### SUPREME DECREE NO. 003-2020-JUS

THE PRESIDENT OF THE REPUBLIC

CONSIDERING:

Supreme Decree No. 001-2014-JUS approves the Regulations of Act No. 30137, which establishes criteria for prioritizing the payment of court judgments and defines the procedures and methodology to be used to determine the priority of payment of these debts;

That, Act No. 30841 amends paragraph 2.1 of article 2 of Act No. 30137, establishing that priority is given to the payment of judicial judgments as res judicata and in execution; creditors over sixty-five (65) years of age and/or creditors with advanced and/or terminal illness duly diagnosed and accredited by specialists of the Ministry of Health and/or EsSalud, according to the classification of debts in labor group, pension, victims of State defense and victims of human rights violations and other social debts;

That, it is necessary to approve the new Regulation of Law No. 30137 considering the preferential conditions incorporated in that Law, in order to determine the priority of payment of these debts in favor of the aforementioned creditors;

In accordance with article 118, paragraph 8, of the Political Constitution of Peru, and articles 11 and 13 of Act No. 29158, Organic Act on the Executive Power;

DECREES:

### Article 1.- Object

The Regulation of Act No. 30137, which establishes criteria for prioritization of the payment of judicial judgments, consists of six (06) chapters, thirteen (13) articles, six (06) final supplementary provisions, one (01) transitional supplementary provision and one (01) supplementary repeal provision, should be approved. in accordance with the annexed annex that forms an integral part of this Supreme Decree."

### Article 2.- Publication

The Supreme Decree, including its Regulations, is published in the Official Gazette El Peruano, as well as in the Institutional Portal of the Peruvian State (www.peru.gob.pe) and in the institutional portals of the Ministry of Justice and Human Rights (www.gob.pe/minjus) and the Ministry of Economy and Finance (www.gob.pe/mef), on the same date of its publication in the aforementioned official gazette."

### Article 3.-Financing

The implementation of the provisions of this regulation is financed from the institutional budget of the entities involved, without requiring additional resources from the Public Treasury."

### Article 4.- Endorsement

This Supreme Decree is endorsed by the Minister of Justice and Human Rights and the Minister of Economy and Finance."

Given at the Government House, in Lima, at thirty days of the month of March of the year two thousand twenty.

MARTÍN ALBERTO VIZCARRA CORNEJO
President of the Republic

MARIE ANTONIETA ALVA LUPERDI
Minister of Economy and Finance

FERNANDO R. CASTAÑEDA PORTOCARRERO
Minister of Justice and Human Rights

---

**REGULATION OF ACT NO. 30137, WHICH ESTABLISHES CRITERIA FOR PRIORITIZING THE PAYMENT OF COURT JUDGMENTS**

### CHAPTER I

### GENERAL PROVISIONS

#### Article 1. Object

This regulation aims to regulate Law No. 30137, developing the procedures and methodology for the application of the prioritization criteria and the preferential conditions incorporated by Law No. 30841, to provide for payment to creditors of the State who have court judgments as res judicata and in execution, from the institutional budget of the entity where the debit is generated;

#### Article 2 - Definitions

For the purposes of this Regulation, it is understood as:

1. **Labour matters:** Obligations relating to individual or collective rights, arising from the personal provision of services of a labor nature, including those originating in the framework of intermediation, through worker cooperatives.

2. **Pension Matters:** Obligations linked to pension rights that allow access to a pension, the determination of the amount of it or that seek to recover the pension contributions of workers by any of the existing pension systems.

3. **Victims in acts of State defense:** obligations arising in favor of military personnel of the Armed Forces and police of the Peruvian National Police, as a result of the action of weapons, acts of service, consequence of the service or during the same service, in accordance with the relevant regulations.

4. **Victims of human rights violations:** Obligations arising as proceeds of the crimes established in Title XIV-A "Crimes against humanity" of the Criminal Code, as well as those established in judgments of supranational instances where the responsibility of the Peruvian State has been determined.

5. **Other social debts:** Obligations having one or more of the following characteristics:

a. Debts arising from medical malpractice in public hospitals.

b. Debts to beneficiaries arising from the application of article 243 of Legislative Decree No. 398, regulated by Supreme Decree No. 051-88-PCM.

c. Other legal benefits of a social nature, such as subsidies for mourning and burial, allowance for medical rest or pre- and post-natal leave, benefits recognized to people in situations of poverty or extreme poverty according to the socioeconomic classification established in the System of Focusing of Households – SISFOH, among others.

6. **Debts not included in the previous groups:** Obligations that are not included in the previous criteria and that have judicial judgments as res judicata and in execution.

7. **Persons with terminal illness:** Creditors with court judgments as res judicata that prove with a report issued by a medical board of the Ministry of Health, the Social Health Insurance - EsSalud, or the corresponding health areas, depending on the personnel of the Peruvian National Police (PNP) or the Armed Forces (FFAA); who are patients who do not respond to specific treatments established to cure or stabilize the disease, and that their life expectancy probably does not exceed one year after the diagnosis has been made. It is also considered as that advanced, progressive and incurable disease, without apparent and reasonable possibilities of response to specific treatment and where there are numerous problems or symptoms intense, multiple, multifactorial and changing that produces great emotional impact on the patient, family and health team, closely related to the presence, explicit or not, of death and with a prognosis of life less than 6 months.

8. **People with advanced illness:** Those who have received court judgments as a thing

A court that certifies with a report issued by a medical board of the Ministry of Health or the Social Health Insurance - EsSalud, or the corresponding health areas, depending on whether personnel of the Peruvian National Police (PNP) or the Armed Forces (FFAA); that they are patients who have a degenerative disease, without possibility of recovery, requiring palliative therapy to improve their quality of life, is an incurable, advanced and progressive disease, with little possibility of response to specific treatments, nor evolution of an oscillating character and frequent crisis of needs, intense emotional and family impact; with repercussions on the caregiving structure, and high demand and use of resources. For the purposes of this Regulation, persons with severe disabilities, who, due to their physiological and functional condition, are dependent on third parties to carry out the activities of daily living, fall within this classification.

9. **Adults over sixty-five (65) years of age:** Creditors with court rulings as a matter of judgment who are more vulnerable to being affected in their health due to the advanced age of their age, and need more care.

10. **Judicial judgments as res judicata and in execution:** Those judgments that are in execution of a judgment and with a court order for express payment, without being pending to resolve in a court, any remedy, proceeding or other action.

11. **Supranational judgments:** Those judgments issued in supranational instances, whether or not jurisdictional, established under the international treaties signed by Peru.

12. **International Judgments:** Those judgments issued in foreign jurisdictions and that require approval in Peru to be included in the prioritization criteria according to their nature.

### Article 3: Payment of creditors and scope of application

3.1 The payment to creditors of the State who have judicial judgments as res judicata and in execution is made from the institutional budget of the entity where the debit is generated, in accordance with the legal framework that regulates it.

3.2 The scope of this rule is for judgments with the status of res judicata and in execution, which are handed down in judicial proceedings, with the following exceptions:

a. Labour proceedings in which appeal is lodged in accordance with the provisions of article 38 of Law No. 29497, New Labour Procedure Law.

b. Obligations arising from arbitration awards, which are in the process of enforcement before the competent judicial authority.

c. Out-of-court settlement agreements and others of a similar nature;

### CHAPTER II PROCEDURES

### AND METHODOLOGY OF PRIORITIZATION

### Article 4: Prioritization groups

4.1 In accordance with the provisions of the numeral 2.1 of article 2 of Law No. 30137, the obligations SE they organize into five (5) prioritization groups:

1. Group 1: Creditors in labor matters.
2. Group 2: Creditors in pension matters.
3. Group 3: Creditors victims in acts of State defense and victims of human rights violations.
4. Group 4: Creditors of other social debts.
5. Group 5: Creditors of debts not included in the previous groups.

4.2 In the case of two or more prioritization groups in a single lawsuit, the one that favors the creditor of the court judgment prevails;

### Article 5: Prioritization criteria

5.1 The preferential conditions for paying creditors of court judgments as res judicata and who are in execution of judgments, incorporated in Act No. 30841, apply to Groups 1, 2, 3 and 4 mentioned in paragraph 1 4.1 of Article 4 of these Regulations, with priority given to older creditors.

5.2 Taking into account the provisions of article 4 and paragraph 5.1, the following order of priority is established:

a. In the first place, payment is paid to creditors who prove terminal illness in groups 1, 2, 3 and 4, in that order.

b. Secondly, payment is paid to creditors who prove advanced stage disease in groups 1, 2, 3 and 4, in that order.

c. Third, payment is paid to creditors over sixty -five (65) years of age who do not have terminal or advanced disease in groups 1, 2, 3 and 4, in that order.

d. Fourthly , payment to creditors not covered by subparagraph 3 of this subparagraph of groups 1, 2, 3 and 4, in that order, is paid.

e. Fifth, it is paid to the creditors of the Panel 5.

5.3 In each section, in accordance with article 2, paragraph 2.2, of Act No. 30137, priority is established exclusively, as follows:

a. First, the date of notification of the court order for payment is taken into account, from the oldest to the nearest.

b. Then, the age of creditors is taken into account, from elders to minors within the established range for each section.

c. Subsequently, the amount of the total obligation, from the lowest to the highest, is taken into account.

d. Lastly, the balance of the fund is taken into account credit, from the lowest to the highest;

### CHAPTER III

### ACCREDITATION OF DISEASE IN PHASE ADVANCED, TERMINAL PHASE OR SEVERE DISABILITY

### Article 6: Report issued by the medical board

6.1 For the accreditation of illness in the terminal or in the advanced phase, a report issued by a medical board is required, and it is presented by creditors who have court judgments as res judicata and in execution.

6.2 The report issued by a medical board complies with the following formalities:

a. It is issued by a collegiate composed of at least three (03) health specialists from the Ministry of Health or EsSalud.

b. It records the data of the qualified doctors who subscribe the report, indicating their specialties and numbers of tuition awarded by the Medical College of Peru.

c. It diagnoses the terminal or advanced stage of the patient's disease, taking into account the definitions set out in paragraphs 7 and 8 of Article 2 of these Regulations.

d. It lists the date, place, report number, full name and number of the patient's national identity document, the reason for issuing the report, which is to require the payment of court judgment as a matter of judgment and execution.

6.3 The status of a person with severe disability is accredited in accordance with the standard established by the Ministry of Health through the disability certificate in accordance with article 76 of Act No. 29973, General Persons with Disabilities Act. and it is awarded in the Institutions Providing Health Services - IPRESS

disability certifiers, public, private or mixed at the national level;

## CHAPTER IV

### COMPLIANCE WITH JUDGMENTS HANDED DOWN IN SUPRANATIONAL AND INTERNATIONAL INSTANCES

**Article 7: Aspects applicable to supranational judgments**

7.1 In order to make it possible to comply with the judgments issued in supranational instances, where the Peruvian State is responsible, it is necessary, in advance, to determine the entities obliged to pay.

7.2 Compliance with the obligations is carried out jointly and in equal parts by these entities; for this purpose, the following procedure is carried out:

a. After notification of the supranational judgment to the Peruvian State, it is brought to the attention of the Board of Directors of the Attorney General's Office, which, by binding resolution , is responsible for identifying the entities obliged to comply with it. The instrument that contains the individualization of the entities obliged to pay, is registered by the specialized Public Prosecutor's Office supranational in the computer application "Judicial and Arbitral Claims against the State" of the Ministry of Economy and Finance, and it is notified to the holders of each entity for their payment attention, following the prioritization methodology.

b. For the registration and prioritization of economic reparations contained in supranational judgments, it is not necessary to have an internal judicial order, being sufficient the instrument of individualization issued by the Attorney General's Office. In case the entities involved comply with the mandate of the supranational court, the determination of responsibilities established by the Directing Council of the Attorney General's Office only refers to the balance.

c. In the case of supranational judgments whose enforcement is penalized at the internal level, the registration and payment of their outstanding debts must be followed and adapted to the procedure established in these regulations, as well as to the provisions of Article 61 of Supreme Decree No. 018-2019-JUS, approving the Regulations of Legislative Decree No. 1326, a rule that restructures the Administrative System of Legal Defense of the State and creates the Office of the Attorney General.

d. Once the judgment has been notified to the Peruvian State, any of the entities involved in the proceedings before the supranational Court may expressly request the Board of Directors of the Attorney General's Office to take charge of all or greater part of the debt allocated; for this purpose, the provisions of these regulations are taken into account.

e. For the cases regulated by this chapter, the Attorneys' Offices submit files containing the execution of a supranational judgment, in accordance with the ruling of the Directing Council of the Attorney General's Office , which is also empowered to order the appropriate administrative actions, for the proper compliance and implementation of the provisions contained in this chapter.

**Article 8: Aspects applicable to international judgments**

8.1 The interested party requires the approval of the judicial decision and the declaration of enforceability, in accordance with the provisions of the Civil Code and the Code of Civil Procedure.

8.2 Once the procedure has been completed, the foreign judgment has the same enforceable force as the national judgments have, from the date of notification, being registered in the computer application "Judicial and Arbitration Claims Against the State" of the Ministry of Economy and Finance, according to the prioritization groups, referred to in Article 4 of these Regulations;

## CHAPTER V

### THE STANDING COMMITTEE

**Article 9: Standing Committee for the preparation and approval of the Prioritized List of Obligations arising from Judgments as res judicata**

9.1 Each Pliego has a permanent committee for the preparation and approval of the Prioritized List of Obligations arising from Judgments with the status of res judicata and in execution.

9.2 This list must be drawn up using the prioritization criteria established in Law No. 30137 and the methodology detailed in these Regulations.

9.3 Public Companies and other entities that do not constitute budget specifications must form the aforementioned Committee, in a similar way, according to its organizational structure.

9.4 In entities that do not have a Public Prosecutor, the head of legal advice or any person acting in his or her capacity, takes the actions established in these Regulations;

**Article 10: Formation of the Committee**

10.1 The Committee is composed of:

a. The head of the General Administration Office or whoever serves as the chair of the Committee.

b. The Holder of the General Secretariat or the one who does his or her duties.

c. The owner of the Public Prosecutor's Office of the entity.

d. The or the owner of the Planning and Budget Office or whoever acts.

e. A representative appointed by the Holder of the Pliego.

10.2 In case of absence of the members of the committee, they are replaced by the alternate members who belong to the same administrative bodies, and may be the sub-directors, sub-managers, deputies, or those who act as their own, or other public servants proposed by their holders. With respect to the alternate member of literal e. will be designated at discretion by the Holder of the Specification.

10.3 This provision also covers public companies and other entities that do not constitute budget documents;

**Article 11: Functions of the Standing Committee**

11.1 The functions of the Standing Committee are:

a. To meet at the end of the first quarter of the year to prepare and approve through minutes, the prioritized list of obligations derived from judgments with the quality of res judicata duly ordered, according to the criteria of prioritization and methodology established in Law No. 30137 and these Regulations, according to the information recorded in the computer application of the Ministry of Economy and Finance.

b. Comprehensively analyze the inclusion of obligations arising from judicial judgments as res judicata and in execution, generated in the entity itself to meet the payment from its institutional budget, considering the prioritization criteria established in this Regulation.

c. Verify that the amount owed corresponds to the right recognized in the judgment as res judicata and that notified in the court order for payment.

d. Precautionary that the registration and permanent updating of judicial processes and the payment of debts arising from judicial judgments is carried out as res judicata and in execution, in the computer application of the Ministry of Economy and Finance.

e. Supervise that the data of creditors of judicial judgments and judicial requests for payment correspond to the identification of the same as recorded in the National Registry of Identification and Civil Status (RENIEC), likewise, they register in the computer application of the Ministry of Economy and Finance the identity documents canceled by death.

f. Acquitting consultations on the prioritization process and the payment of debts arising from court judgments that are in the capacity of res judicata and in execution, which is carried out from the institutional budget of the debtor entity.

g. Inform the accounting office about the judicial processes, payments of debts, as well as any other variation that affects the accounting record.

h. Submit to the public prosecutor or whoever serves, the medical report proving the illness in terminal or advanced phase, for registration in the respective computer application.

i. Validate by means of an act, compliance with the formalities of the medical reports established in paragraph 6.2 of Article 6 of this Regulation, which accredit and diagnose a disease in terminal or advanced phase, for prioritization and preferential care. The validation certificate is issued from the computer application of the Ministry of Economy and Finance.

j. Approve the minutes and the prioritized list for the payment of debts arising from judicial judgments as res judicata and in execution, so that the entity, according to its budgetary availability and programming, can amortize or cancel debts from the institutional budget. It is presumed that the content of the list is truthful and conforms to the legality.

11.2 In order to fulfill the functions referred to in paragraph 11.1 of this article, the Chairman of the Standing Committee convenes special sessions as he considers necessary during the year, at least five (05) working days in advance;

### CHAPTER VI APPROVAL

### OF THE PRIORITIZED LIST

**Article 12: Procedure for the approval of the Prioritized List of Obligations arising from Judgments with the status of res judicata**

12.1. The Chairman convenes meetings of the Standing Committee at least one (01) working day in advance.

12.2. Prior to the session, the Public Prosecutor sends to the members of the Standing Committee the list of judicial proceedings in execution of judgments with the status of res judicata, registered in the computer application of the Ministry of Economy and Finance, with the following information:

a. Name of creditor or beneficiary.

b. Number of the creditor's or beneficiary's ID, which must not have been canceled due to death.

c. Date and number of the notification of the court order for payment.

d. Designation of the enforcement court in national, supranational or foreign jurisdiction.

e. Number of file and date of entry of the application which, in case of supranational or international judgments, is the date on which the application was notified to the Peruvian State.

f. Amount established in the execution of the judgment.

g. The judicial judgment as res judicata and the judicial order for payment, are visualized from the computer application mentioned.

h. Medical report that accredits and diagnoses a disease in terminal or advanced phase, with its respective certificate of validation, are displayed from the computer application mentioned.

12.3. The Standing Committee approves the list prioritized according to the provisions of the numerals rule 5, 5.2 and 5.3 of these rules. If necessary, it requests from any public entity the additional information it requires for the fulfillment of its functions.

12.4. The Chairman of the Committee sends the approved prioritized list to the General Office of Administration, so that it can arrange the corresponding payment, either by amortizing or cancelling the debt, according to the programming or availability of the institutional budget;

### Article 13: Obligations of public prosecutors

13.1 With regard to debts arising from court judgments, public prosecutors have the following obligations:

a. Register and update in a comprehensive and mandatory way the information on the lawsuits or judicial processes, since they are notified, as well as record the payment of these debts in the computer application of the Ministry of Economy and Finance, for such actions, these bodies coordinate with the General Offices of Administration or those that act in the entity.

b. Report from the computer application of the Ministry of Economy and Finance the debts originated by judicial judgments as a matter judged to the General Office of Administration of your entity or to which it does its part, within five (5) working days after its notification.

c. To monitor the payments of judicial judgments made by the entity, which must be periodically informed to the judicial body in charge of the proceedings, in accordance with the provisions of article 3 of Law No. 30137, including copies of the records in their respective file.

d. Request the corresponding judge, once the obligation has been paid in full, to declare the debt canceled and proceed to file the process, registering this condition in the corresponding computer application.

e. Report to the General Office of Administration of your entity or the one you do your times within both (2) business days after the judicial notice stating that the debt has been canceled, in order to avoid overpayments.

f. Register in the computer application of the Ministry of Economy and Finance the documents indicated in paragraph i of paragraph 11.1 of article 11, which prove a disease in terminal or advanced phase, including severe disability. All documents submitted by the Committee are filed in the relevant file.

13.2 In the case of entities that do not have a Public Prosecutor, the head of legal advice or any person acting in his or her capacity, the same obligations as referred to in paragraph 13.1 of Article 13 of these Regulations are the same;

### FINAL SUPPLEMENTARY PROVISIONS

**First. Financing for the payment of obligations arising from judicial judgments with the quality of res judicata**

The financing of monetary debts derived from judicial judgments as res judicata and in execution is handled by the public sector entity where the debt is generated from its institutional budget, in accordance with article 46 of the Single Ordinated Text of Act No. 27584, which regulates the Administrative Dispute Procedure, approved by Supreme Decree No. 011-2019-JUS, which entails the following order:

1. The financing is made from the institutional budget of the entity, approved for the corresponding fiscal year.

2. If the action in the preceding paragraph is not sufficient, the financing is made from the resources resulting from the budgetary modifications in the functional programmatic level that the entity finds necessary to carry out, up to five per cent (5 per cent) of the amounts approved in the Institutional Budget for Opening (PIA), with the exceptions indicated in article 73 of Legislative Decree No. 1440, Legislative Decree of the National System of Public Budget;

**Second.** The Ministry of Health, the Ministry of Labour and Employment Promotion, and the health units of the Ministry of the Interior and the Ministry of Defence, as appropriate, take the necessary measures to comply with the provisions established in the Act Article 6 of this Regulation;

**Third. Report of the medical board for the case of members of the Peruvian National Police and Armed Forces**

The report of the medical board referred to in Article 6 of these Regulations, for creditors belonging to the Peruvian National Police and Armed Forces, is issued by a collegiate composed of at least three (03) health specialists from the corresponding health facilities.

**Fourth. Registration in the computer application**

The registration and updating of claims, judicial proceedings and the payment of debts generated by judicial judgments as res judicata and in execution, is carried out permanently in the computer application "Judicial and Arbitration Claims Against the State", the use of which was made official by the only final supplementary provision of Supreme Decree No. 114-2016-EF.

**Fifth. Verification of records entered in the computer application**

The Standing Committees of each Claim, within a maximum period of sixty (60) calendar days after the publication of these Regulations, verify in the computer application "Judicial and Arbitration Claims against the State" of the Ministry of Economy and Finance, that the approved prioritized lists contain only and exclusively judicial judgments as res judicata and in execution, and must record the date of notification of the judicial order for payment. This provision also covers public companies and other entities that do not constitute budget documents.

**Sixth.- Designation of the members** of the **Committee** The members of the Standing Committee, members and alternates, as established in paragraph 10.1 of Article 10 of the Regulations, are appointed by resolution of the Holder of the Specification within a maximum period of thirty (30) calendar days Subsequent to the publication of this Regulation.

This provision also covers public companies and other entities that do not constitute budget documents.

## TRANSITIONAL SUPPLEMENTARY PROVISION

**Unique. Progressivity**

The implementation of paragraph f, paragraph 13.1 of Article 13 of these Regulations, is carried out progressively, considering the preferential conditions for the payment of judgments to creditors as res judicata and in execution. This process is completed within one year of the entry into force of this Regulation;

## SUPPLEMENTARY REPEAL PROVISION

**Unique. Repeal**

Supreme Decree No. 001-2014-JUS, which approves the Regulations of Law No. 30137, which establishes criteria for prioritization of the payment of judicial judgments, is repealed.

**1865283-1**

## HEALTH

# Supreme Decree that establishes measures to ensure the continuity of actions for prevention, control, diagnosis and treatment of coronarivus – COVID-19

### SUPREME DECREE NO. 013-2020-SA

THE PRESIDENT OF THE REPUBLIC

CONSIDERING:

That, paragraphs I and II of the Preliminary Title of Act No. 26842, General Health Act, provide that the Act Health is an essential condition for human development and a fundamental means for achieving individual and collective well-being, and health protection is in the public interest; therefore, it is the responsibility of the State to regulate, monitor and promote health;

That, with 11 March 2020 date, the World Health Organization has described the COVID-19 outbreak as a pandemic, having spread in more than 100 countries simultaneously;

That, by means of Emergency Decree No. 025-2020, urgent and exceptional measures are issued to strengthen the System of Surveillance and Health Response against COVID-19 in the national territory, in order to establish immediate mechanisms for the protection of the health of the population and to minimize the health impact of situations affecting the population;

That, Supreme Decree No. 008-2020-SA declares a health emergency at national level for a period of ninety (90) calendar days, dictating measures for prevention and control of COVID-19;

That, through Emergency Decree No. 026-2020, various exceptional and temporary measures are established to prevent the spread of the Coronavirus (COVID-19) in the national territory;

That, through Emergency Decree No. 029-2020, supplementary measures are issued for the financing of micro and small enterprises, and other measures to reduce the impact of COVID-19 on the Peruvian economy;

Article 79 of Law No. 26842, General Health Law, provides that the Health Authority is empowered to issue prevention and control measures to prevent the emergence and spread of communicable diseases. All natural or legal persons within the territory are bound to comply with these measures, subject to sanction;

That, Article 2 of Emergency Decree No. 025-2020, establishes that the Ministry of Health, in fulfillment of its guiding function, is responsible for planning, dictating, directing, coordinating, supervising and evaluating all actions aimed at the prevention, protection and control of the disease caused by COVID-19, with all public and private institutions, legal persons and natural persons present in the national territory, in accordance with the provisions of the National Health Authority;

That, Supreme Decree No. 044-2020-PCM, declared the State of National Emergency for a period of fifteen (15) calendar days, and ordered mandatory social isolation (quarantine), due to the serious circumstances affecting the life of the Nation as a result of the outbreak of COVID-19;

That, number 5.1. Article 5 of the above-mentioned Supreme Decree establishes that all public, private and mixed health entities in the national territory, as well as officials and workers in the service of them, are under the direction of the Ministry of Health for the protection of persons, property and places. may be imposed on them extraordinary services by their duration or by their nature;

That article 5, paragraph 5.3, of the Supreme Decree in reference specifies that the Ministry of Health may establish measures that include the possibility of determining the best distribution in the territory of all technical and personal means, in accordance with the needs that are evident in the management of this health emergency;

In accordance with article 118, paragraph 8, of the Constitution ; Act No. 29158, Organic Act on the Executive Power; Act No. 26842, General Health Act; and Legislative Decree No. 1161, the Organization and Functions Act of the Ministry of Health, as amended by Act No. 30895, which strengthens the governing function of the Ministry of Health;

DECREES:

**Article 1.- Object**

This Supreme Decree establishes regulatory norms to ensure the continuity of actions in the prevention, control, diagnosis and treatment of coronavirus - COVID19 in the field of the Health Sector. When a provision expressly

# Spanish Original

**12**                    **NORMAS LEGALES**                    Miércoles 1 de abril de 2020 / El Peruano

## JUSTICIA Y DERECHOS HUMANOS

### Decreto Supremo que aprueba el Reglamento de la Ley N° 30137, Ley que establece criterios de priorización para la atención del pago de sentencias judiciales

**DECRETO SUPREMO**
**Nº 003-2020-JUS**

EL PRESIDENTE DE LA REPÚBLICA

CONSIDERANDO:

Que, mediante Decreto Supremo N° 001-2014-JUS se aprueba el Reglamento de la Ley N° 30137, Ley que establece criterios de priorización para la atención del pago de sentencias judiciales, y define los procedimientos y la metodología a emplearse para la determinación del orden de prelación de pago de estos adeudos;

Que, la Ley N° 30841 modifica el numeral 2.1 del artículo 2 de la Ley N° 30137, estableciendo que se prioriza preferentemente el pago de sentencias judiciales en calidad de cosa juzgada y en ejecución, a los acreedores mayores de sesenta y cinco (65) años de edad y/o a los acreedores con enfermedad en fase avanzada y/o terminal debidamente diagnosticada y acreditada por especialistas del Ministerio de Salud y/o EsSALUD, según la clasificación de las deudas en grupo laborales, previsionales, víctimas en actos de defensa del Estado y victimas por violación de derechos humanos, y otras deudas de carácter social;

Que, es necesario aprobar el nuevo Reglamento de la Ley N° 30137 considerando las condiciones preferentes incorporadas a dicha Ley, para que se determine el orden de prelación de pago de estos adeudos a favor de los citados acreedores;

De conformidad con lo dispuesto en el inciso 8 del artículo 118 de la Constitución Política del Perú, y en los artículos 11 y 13 de la Ley Nº 29158, Ley Orgánica del Poder Ejecutivo;

DECRETA:

**Artículo 1.- Objeto**
Apruébese el Reglamento de la Ley N° 30137, Ley que establece criterios de priorización para la atención del pago de sentencias judiciales, que consta de seis (06) capítulos, trece (13) artículos, seis (06) Disposiciones Complementarias Finales, una (01) Disposición Complementaria Transitoria y una (01) Disposición Complementaria Derogatoria, conforme al Anexo adjunto que forma parte integrante de este Decreto Supremo".

**Artículo 2.- Publicación**
El Decreto Supremo, incluyendo su Reglamento, se publica en el Diario Oficial El Peruano, así como en el Portal Institucional del Estado Peruano (www.peru.gob.pe) y en los portales institucionales del Ministerio de Justicia y Derechos Humanos (www.gob.pe/minjus) y del Ministerio de Economía y Finanzas (www.gob.pe/mef), en la misma fecha de su publicación en el referido diario oficial".

**Artículo 3.-Financiamiento**
La implementación de lo establecido en la presente norma se financia con cargo al presupuesto institucional de las entidades involucradas, sin demandar recursos adicionales al Tesoro Público."

**Artículo 4.- Refrendo**
El presente Decreto Supremo es refrendado por el Ministro de Justicia y Derechos Humanos y la Ministra de Economía y Finanzas".

Dado en la Casa de Gobierno, en Lima, a los treinta días del mes de marzo del año dos mil veinte.

MARTÍN ALBERTO VIZCARRA CORNEJO
Presidente de la República

MARÍA ANTONIETA ALVA LUPERDI
Ministra de Economía y Finanzas

FERNANDO R. CASTAÑEDA PORTOCARRERO
Ministro de Justicia y Derechos Humanos

**REGLAMENTO DE LA LEY Nº 30137, LEY QUE ESTABLECE CRITERIOS DE PRIORIZACIÓN PARA LA ATENCIÓN DEL PAGO DE SENTENCIAS JUDICIALES**

**CAPÍTULO I**

**DISPOSICIONES GENERALES**

**Artículo 1. Objeto**
Esta norma tiene por objeto reglamentar la Ley N° 30137, desarrollando los procedimientos y la metodología para la aplicación de los criterios de priorización y las condiciones preferentes incorporadas por la Ley N° 30841, para la atención del pago, a los acreedores del Estado que cuenten con sentencias judiciales en calidad de cosa juzgada y en ejecución, con cargo al presupuesto institucional de la Entidad donde se genera el adeudo;

**Artículo 2. Definiciones**
Para efectos de este Reglamento se entiende como:

1. **Materia Laboral:** Obligaciones relativas a derechos individuales o colectivos, originadas con ocasión de la prestación personal de servicios de naturaleza laboral, incluyendo aquellas que se originen en el marco de la intermediación, a través de cooperativas de trabajadores.

2. **Materia Previsional:** Obligaciones vinculadas a derechos pensionarios que permitan el acceso a una pensión, la determinación del monto de la misma o que busquen recuperar los aportes pensionarios de los trabajadores por cualquiera de los sistemas previsionales existentes.

3. **Víctimas en actos de defensa del Estado:** Obligaciones originadas a favor de personal militar de las Fuerzas Armadas y policial de la Policía Nacional del Perú, como producto de acción de armas, actos de servicio, consecuencia del servicio o con ocasión del mismo servicio, de acuerdo con las normas de la materia.

4. **Víctimas de violaciones de derechos humanos:** Obligaciones originadas como producto de los delitos establecidos en el Título XIV-A "Delitos contra la humanidad" del Código Penal, así como las establecidas en sentencias de instancias supranacionales donde se haya determinado la responsabilidad del Estado peruano.

5. **Otras deudas de carácter social:** Obligaciones que tengan una o más de las siguientes características:

a. Deudas que sean derivadas de negligencias médicas en centros hospitalarios públicos.

b. Deudas a favor de beneficiarios provenientes de la aplicación del artículo 243 del Decreto Legislativo N° 398, reglamentado por el Decreto Supremo Nº 051-88-PCM.

c. Otros beneficios judicializados de carácter social, tales como subsidios por luto y sepelio, subsidio por descanso médico o licencia pre y post natal, beneficios reconocidos a personas en situación de pobreza o extrema pobreza según la clasificación socioeconómica establecida en el Sistema de Focalización de Hogares – SISFOH, entre otros.

6. **Deudas no comprendidas en los grupos previos:** Obligaciones que no se encuentran incluidas en los criterios previos y que cuentan con sentencias judiciales en calidad de cosa juzgada y en ejecución.

7. **Personas con enfermedad terminal:** Acreedores con sentencias judiciales en calidad de cosa juzgada que acreditan con un informe emitido por una junta médica del Ministerio de Salud, del Seguro Social de Salud - EsSalud, o de las áreas de salud correspondientes, según sea personal de la Policía Nacional del Perú (PNP) o de las Fuerzas Armadas (FFAA); que son pacientes que no responden a tratamientos específicos instaurados para curar o estabilizar la enfermedad, y que probablemente su expectativa de vida no supere el año luego de haberse realizado el diagnóstico. También es considerada como aquella enfermedad avanzada, progresiva e incurable, sin aparentes y razonables posibilidades de respuesta al tratamiento específico y donde concurren numerosos problemas o síntomas intensos, múltiples, multifactoriales y cambiantes que produce gran impacto emocional en el enfermo, familia y equipo sanitario, muy relacionados con la presencia, explícita o no, de muerte y con un pronóstico de vida inferior a 6 meses.

8. **Personas con enfermedad avanzada:** Aquellos acreedores de sentencias judiciales en calidad de cosa

El Peruano / Miércoles 1 de abril de 2020    **NORMAS LEGALES**    **13**

juzgada que acreditan con un informe emitido por una junta médica del Ministerio de Salud o del Seguro Social de Salud - EsSalud, o de las áreas de salud correspondientes, según sea personal de la Policía Nacional del Perú (PNP) o de las Fuerzas Armadas (FFAA); que son pacientes que tienen una enfermedad degenerativa, sin posibilidad de recuperación, requiriendo terapia paliativa para mejorar su calidad de vida, es una enfermedad incurable, avanzada y progresiva, con escasa posibilidad de respuesta a tratamientos específicos, ni evolución de carácter oscilante y frecuentes crisis de necesidades, intenso impacto emocional y familiar; con repercusiones sobre la estructura cuidadora, y alta demanda y uso de recursos. Para efectos del presente Reglamento, se encuentran dentro de esta clasificación, las personas con discapacidad severa, que por su condición fisiológica y funcional tienen dependencia de terceros para realizar las actividades de la vida diaria.

9. **Adultos mayores de sesenta y cinco (65) años de edad:** Acreedores con sentencias judiciales en calidad de cosa juzgada que por lo avanzado de su edad son más vulnerables a ser afectados en su salud, y necesitan de mayor cuidado.

10. **Sentencias judiciales en calidad de cosa juzgada y en ejecución:** Aquellas sentencias que se encuentren en ejecución de sentencia y con requerimiento judicial de pago expreso, sin que se encuentre pendiente de resolver en un órgano jurisdiccional, algún recurso, proceso u otra acción.

11. **Sentencias supranacionales:** Aquellas sentencias expedidas en instancias supranacionales, sean o no jurisdiccionales, establecidas al amparo de los Tratados Internacionales suscritos por el Perú.

12. **Sentencias internacionales:** Aquellas sentencias expedidas en sedes jurisdiccionales extranjeras y que requieren ser homologadas en el Perú para ser comprendidas en los criterios de priorización según su naturaleza.

### Artículo 3. Pago de acreedores y ámbito de aplicación

3.1 El pago a los acreedores del Estado que cuenten con sentencias judiciales en calidad de cosa juzgada y en ejecución, se efectúa con cargo al presupuesto institucional de la Entidad donde se genera el adeudo, conforme al marco legal que lo regula.

3.2 Se encuentran en el ámbito de aplicación de esta norma las sentencias con calidad de cosa juzgada y en ejecución recaídas en procesos judiciales, con las siguientes excepciones:

a. Los procesos laborales en los que se interpone recurso de casación conforme a lo establecido en el artículo 38 de la Ley N° 29497, Nueva Ley Procesal del Trabajo.

b. Las obligaciones generadas por laudos arbitrales, que se encuentren en proceso de ejecución ante la autoridad judicial competente.

c. Los acuerdos conciliatorios extrajudiciales y otros de similar naturaleza;

### CAPÍTULO II

### PROCEDIMIENTOS Y METODOLOGÍA DE PRIORIZACIÓN

### Artículo 4. Grupos de priorización

4.1 De conformidad con lo establecido en el numeral 2.1 del artículo 2 de la Ley N° 30137, las obligaciones se organizan en cinco (5) grupos de priorización:

1. Grupo 1: Acreedores en materia laboral.
2. Grupo 2: Acreedores en materia previsional.
3. Grupo 3: Acreedores víctimas en actos de defensa del Estado y víctimas por violaciones de derechos humanos.
4. Grupo 4: Acreedores de otras deudas de carácter social.
5. Grupo 5: Acreedores de deudas no comprendidas en los grupos previos.

4.2 En el caso de concurrencia de dos o más grupos de priorización en una sola demanda, prevalece el que más favorezca al acreedor de la sentencia judicial;

### Artículo 5. Criterios de priorización

5.1 Las condiciones preferentes para la atención del pago a los acreedores de sentencias judiciales en calidad de cosa juzgada y que se encuentren en ejecución de sentencia, incorporadas por la Ley N° 30841, se aplican a los grupos 1, 2, 3 y 4 señalados en el numeral 4.1 del artículo 4 de este Reglamento, considerando prioritariamente a los acreedores de mayor edad.

5.2 Tomando en consideración lo establecido en el artículo 4 y lo señalado en el numeral 5.1, se establece el siguiente orden de prelación:

a. En primer lugar se atiende el pago a los acreedores que acrediten enfermedad en fase terminal de los Grupos 1, 2, 3 y 4, en ese orden.

b. En segundo lugar se atiende el pago a los acreedores que acrediten enfermedad en fase avanzada de los Grupos 1, 2, 3 y 4, en ese orden.

c. En tercer lugar se atiende el pago a los acreedores mayores a sesenta y cinco (65) años de edad que no tengan enfermedad en fase terminal o avanzada de los Grupos 1, 2, 3 y 4, en ese orden.

d. En cuarto lugar se atiende el pago a los acreedores no comprendidos en el inciso 3 del presente numeral de los Grupos 1, 2, 3 y 4, en ese orden.

e. En quinto lugar, se paga a los acreedores del Grupo 5.

5.3 En cada sección, de conformidad a lo establecido en el numeral 2.2 del artículo 2 de la Ley N° 30137, el orden de prelación se fija de forma excluyente, de la siguiente manera:

a. En primer término, se toma en cuenta la fecha de notificación del requerimiento judicial de pago, de la más antigua a la más cercana.

b. Luego, se toma en cuenta la edad de los acreedores, de los mayores a los menores dentro del rango establecido para cada sección.

c. Posteriormente, se toma en cuenta el monto de la obligación total, de las más bajas a las más altas.

d. Por último, se toma en cuenta el saldo de la acreencia, de las más bajas a las más altas;

### CAPÍTULO III

### ACREDITACIÓN DE ENFERMEDAD EN FASE AVANZADA, EN FASE TERMINAL O DISCAPACIDAD SEVERA

### Artículo 6. Informe emitido por la junta médica

6.1 Para la acreditación de enfermedad en fase terminal o en fase avanzada se requiere un informe emitido por una junta médica, y es presentado por los acreedores que cuentan con sentencias judiciales en calidad de cosa juzgada y en ejecución.

6.2 El informe emitido por una junta médica cumple con las siguientes formalidades:

a. Es emitido por un colegiado integrado como mínimo por tres (03) especialistas de la salud del Ministerio de Salud o de EsSalud.

b. Consigna los datos de los médicos habilitados que suscriben el Informe, indicando sus especialidades y números de colegiaturas otorgados por el Colegio Médico del Perú.

c. Diagnostica el estadio terminal o avanzado de la enfermedad del paciente, teniendo en cuenta las definiciones señaladas en los incisos 7 y 8 del artículo 2 de este Reglamento.

d. Consigna la fecha, lugar, número de informe, nombre completo y número de documento nacional de identidad del paciente, el motivo de la expedición del informe que es requerir la atención de pago de sentencia judicial en calidad de cosa juzgada y en ejecución.

6.3 La acreditación de la condición de persona con discapacidad severa se realiza de acuerdo a la norma establecida por el Ministerio de Salud a través del certificado de discapacidad conforme a lo dispuesto por el artículo 76 de la Ley N° 29973, Ley General de la Persona con Discapacidad, y es otorgado en las Instituciones Prestadoras de Servicios de Salud - IPRESS

certificadoras de la discapacidad, públicas, privadas o mixtas a nivel nacional;

## CAPÍTULO IV

### CUMPLIMIENTO DE LAS SENTENCIAS EMITIDAS EN INSTANCIAS SUPRANACIONALES E INTERNACIONALES

**Artículo 7. Aspectos aplicables a las sentencias supranacionales**

7.1 Para viabilizar el cumplimiento de las sentencias emitidas en instancias supranacionales, donde sea responsable el Estado peruano, es preciso, previamente, determinar las entidades obligadas al pago.

7.2 El cumplimiento de las obligaciones, se efectúa de manera mancomunada y en partes iguales por dichas entidades; para tal efecto, se realiza el siguiente procedimiento:

a. Luego de notificada la sentencia supranacional al Estado peruano, es puesta en conocimiento del Consejo Directivo de la Procuraduría General del Estado, el cual, mediante acuerdo resolutivo vinculante se encarga de individualizar a las entidades obligadas a su cumplimiento. El instrumento que contiene la individualización de las entidades obligadas al pago, es registrado por la Procuraduría Pública Especializada Supranacional en el Aplicativo Informático "Demandas Judiciales y Arbitrales en Contra del Estado" del Ministerio de Economía y Finanzas, y es notificado a los titulares de cada entidad para su atención de pago, siguiendo la metodología de priorización.

b. Para el registro y priorización de las reparaciones económicas contenidas en sentencias supranacionales no es necesario contar con requerimiento judicial interno, siendo suficiente el instrumento de individualización emitido por la Procuraduría General del Estado. En caso las entidades involucradas vengan cumpliendo con el mandato de la Corte Supranacional, la determinación de responsabilidades que establezca el Consejo Directivo de la Procuraduría General del Estado, solo se refiere al saldo.

c. En el caso de sentencias supranacionales cuyo cumplimiento se encuentra judicializado a nivel interno, el registro y pago de sus deudas pendientes debe ceñirse y adecuarse al procedimiento establecido en el presente reglamento, así como a lo establecido en el artículo 61 del Decreto Supremo N° 018-2019-JUS, que aprueba el Reglamento del Decreto Legislativo N° 1326, norma que Reestructura el Sistema Administrativo de Defensa Jurídica del Estado y Crea la Procuraduría General del Estado.

d. Luego de notificada la sentencia al Estado peruano, cualquiera de las entidades involucradas en el proceso tramitado ante la Corte Supranacional, puede solicitar expresamente al Consejo Directivo de la Procuraduría General del Estado, hacerse cargo de todo o mayor parte de la deuda asignada; para tal efecto, se tiene en cuenta lo establecido en el presente reglamento.

e. Para los casos regulados por el presente capítulo, las procuradurías públicas remiten los expedientes que contengan la ejecución de alguna sentencia supranacional, conforme al pronunciamiento del Consejo Directivo de la Procuraduría General del Estado, quien además queda facultado a disponer las acciones administrativas pertinentes, para el adecuado cumplimiento e implementación de las disposiciones contenidas en el presente capítulo.

**Artículo 8. Aspectos aplicables a las sentencias internacionales**

8.1 La parte interesada requiere la homologación de la resolución judicial y la declaración de ejecutoria, conforme a lo establecido en el Código Civil y el Código Procesal Civil.

8.2 Cumplido el trámite, la sentencia extranjera tiene la misma fuerza ejecutoria que tienen las sentencias nacionales, desde la fecha de notificación, registrándose en el Aplicativo Informático "Demandas Judiciales y Arbitrales en Contra del Estado" del Ministerio de Economía y Finanzas, de acuerdo a los grupos de priorización, referidos en el artículo 4 de este Reglamento;

## CAPÍTULO V

### EL COMITÉ PERMANENTE

**Artículo 9. Comité permanente para la elaboración y aprobación del Listado priorizado de obligaciones derivadas de sentencias en calidad de cosa juzgada**

9.1 Cada Pliego cuenta con un comité permanente para la elaboración y aprobación del Listado priorizado de obligaciones derivadas de sentencias con calidad de cosa juzgada y en ejecución.

9.2 Dicho Listado debe elaborarse aplicando los criterios de priorización establecidos en la Ley N° 30137 y la metodología detallada en este Reglamento.

9.3 Las Empresas Públicas y demás entidades que no constituyen pliegos presupuestarios, deben conformar el citado Comité, de forma análoga, de acuerdo a su estructura orgánica.

9.4 En las entidades que no cuenten con Procurador Público, el jefe de asesoría jurídica o quien haga sus veces, realiza las acciones establecidas en este Reglamento;

**Artículo 10. Conformación del Comité**

10.1 El Comité está integrado por:

a. El o la titular de la Oficina General de Administración o quien haga sus veces, es quien preside el Comité.

b. El o la Titular de la Secretaría General o la que haga sus veces.

c. El o la titular de la Procuraduría Pública de la entidad.

d. El o la titular de la Oficina de Planeamiento y Presupuesto o quien haga sus veces.

e. Un representante designado por el Titular del Pliego.

10.2 En caso de ausencia de los miembros titulares del Comité los reemplazan los miembros alternos que pertenecen a los mismos órganos administrativos, pudiendo ser los sub directores, sub gerentes, adjuntos, o quienes hagan sus veces, u otros servidores públicos propuestos por sus titulares. Respecto al miembro alterno del literal e. será designado a discrecionalidad por el Titular del Pliego.

10.3 Esta disposición también comprende a las Empresas Públicas y demás entidades que no constituyen pliegos presupuestarios;

**Artículo 11. Funciones del Comité permanente**

11.1 Son funciones del Comité permanente:

a. Sesionar al finalizar el primer trimestre del año para elaborar y aprobar mediante acta, el listado priorizado de obligaciones derivadas de sentencias con calidad de cosa juzgada debidamente ordenado, de acuerdo a los criterios de priorización y metodología establecidos en la Ley N° 30137 y en este Reglamento, conforme a la información registrada en el Aplicativo Informático del Ministerio de Economía y Finanzas.

b. Analizar de manera integral la inclusión de obligaciones derivadas de sentencias judiciales en calidad de cosa juzgada y en ejecución, generadas en la propia entidad para atenderse el pago con cargo a su presupuesto institucional, considerando los criterios de priorización establecidos en este Reglamento.

c. Verificar que el monto adeudado corresponda al derecho reconocido en la sentencia en calidad de cosa juzgada y el notificado en el requerimiento judicial de pago.

d. Cautelar que se realice el registro y la actualización permanente de los procesos judiciales y el pago de las deudas derivadas de sentencias judiciales en calidad de cosa juzgada y en ejecución, en el aplicativo informático del Ministerio de Economía y Finanzas.

e. Supervisar que los datos de los acreedores de sentencias judiciales y los requerimientos judiciales de pago, correspondan a la identificación de los mismos conforme consta en el Registro Nacional de Identificación y Estado Civil (RENIEC), asimismo, registran en el aplicativo informático del Ministerio de Economía y Finanzas los documentos de identidad cancelados por fallecimiento.

El Peruano / Miércoles 1 de abril de 2020    NORMAS LEGALES    15

f. Absolver consultas sobre el proceso de priorización y la atención de pago de los adeudos derivados de sentencias judiciales que se encuentran en calidad de cosa juzgada y en ejecución, que se realiza con cargo al presupuesto institucional de la entidad deudora.

g. Informar a la oficina de contabilidad sobre los procesos judiciales, pagos de las deudas, así como cualquier otra variación que incida en el registro contable.

h. Remitir al procurador público o quien haga sus veces, el informe médico que acredita la enfermedad en fase terminal o avanzada, para el registro en el Aplicativo Informático respectivo.

i. Validar mediante acta, el cumplimiento de las formalidades de los informes médicos establecidos en el numeral 6.2 del artículo 6 de este Reglamento, que acreditan y diagnostican una enfermedad en fase terminal o avanzada, para su priorización y atención preferente. El acta de validación se emite del Aplicativo Informático del Ministerio de Economía y Finanzas.

j. Aprobar el acta y el listado priorizado para el pago de las deudas derivadas de sentencias judiciales en calidad de cosa juzgada y en ejecución, a fin que la entidad, de acuerdo a su disponibilidad presupuestal y programación pueda amortizar o cancelar los adeudos con cargo al presupuesto institucional. Se presume que el contenido del listado es veraz y se ajusta a la legalidad.

11.2 Para cumplir las funciones referidas en el numeral 11.1 de este artículo, el Presidente del Comité permanente convoca a sesiones extraordinarias las veces que considere necesarias durante el año, cuando menos con cinco (05) días hábiles de anticipación;

### CAPÍTULO VI

### APROBACIÓN DEL LISTADO PRIORIZADO

**Artículo 12. Procedimiento para la aprobación del Listado priorizado de obligaciones derivadas de sentencias con calidad de cosa juzgada**

12.1. El Presidente convoca a las sesiones del Comité permanente, cuando menos con un (01) día hábil de anticipación.

12.2. Previa a la sesión el Procurador Público remite a los miembros del Comité permanente el listado de los procesos judiciales en ejecución de sentencia con calidad de cosa juzgada, registrados en el Aplicativo Informático del Ministerio de Economía y Finanzas, con la siguiente información:

a. Nombre del acreedor o beneficiario.

b. Número del DNI del acreedor o beneficiario, el cual no debe haber sido cancelado por fallecimiento.

c. Fecha y número de la notificación del requerimiento judicial de pago.

d. Denominación del Juzgado de ejecución en sede nacional, de la instancia supranacional o de la sede jurisdiccional extranjera.

e. Número de Expediente y fecha de ingreso de la demanda que, en caso de las sentencias supranacionales o internacionales, es la fecha en que la demanda fue notificada al Estado peruano.

f. Monto establecido en la ejecución de la sentencia.

g. La sentencia judicial en calidad de cosa juzgada y del requerimiento judicial de pago, se visualizan desde el Aplicativo Informático en mención.

h. Informe médico que acredita y diagnostica una enfermedad en fase terminal o avanzada, con su respectiva acta de validación, se visualizan desde el Aplicativo Informático en mención.

12.3. El Comité permanente aprueba el listado priorizado de acuerdo a lo establecido en los numerales 5.2 y 5.3 del artículo 5 del presente reglamento. En caso sea necesario solicita a cualquier entidad pública la información complementaria que requiera para el cumplimiento de sus funciones.

12.4. El Presidente del Comité remite a la Oficina General de Administración el listado priorizado aprobado, para que disponga el pago correspondiente, ya sea amortizando o cancelando la deuda, según la programación o disponibilidad del presupuesto institucional;

**Artículo 13. Obligaciones de los procuradores públicos**

13.1 Con relación a las deudas derivadas de sentencias judiciales, los procuradores públicos tienen las siguientes obligaciones:

a. Registrar y actualizar de manera integral y obligatoria la información sobre las demandas o procesos judiciales, desde que le son notificadas, así como consignar el pago de estos adeudos en el Aplicativo Informático del Ministerio de Economía y Finanzas, para tales acciones, dichos órganos coordinan con las Oficinas Generales de Administración o las que hagan sus veces en la entidad.

b. Reportar del Aplicativo Informático del Ministerio de Economía y Finanzas las deudas originadas por sentencias judiciales con calidad de cosa juzgada a la Oficina General de Administración de su entidad o a la que haga sus veces, dentro de los cinco (5) días hábiles posteriores a su notificación.

c. Llevar un control sobre los pagos de sentencias judiciales que realiza la entidad, los cuales deben ser informados periódicamente a la instancia judicial a cargo del proceso, de acuerdo a lo establecido en el artículo 3 de la Ley Nº 30137, incorporando copia de las constancias a su respectivo legajo.

d. Solicitar al juez correspondiente, una vez pagada la obligación en su totalidad, que declare cancelada la deuda y proceda al archivo del proceso, registrando dicha condición en el aplicativo informático correspondiente.

e. Informar a la Oficina General de Administración de su entidad o a la que haga sus veces dentro de los dos (2) días hábiles posteriores a la notificación judicial que declara que la deuda ha sido cancelada, a fin de evitar pagos en exceso.

f. Registrar en el Aplicativo Informático del Ministerio de Economía y Finanzas los documentos señalados en el literal i del numeral 11.1 del artículo 11, que acreditan una enfermedad en fase terminal o avanzada, incluyendo discapacidad severa. Toda documentación remitida por el Comité, se archiva en el legajo correspondiente.

13.2 En el caso de las entidades que no cuenten con Procurador Público, el jefe de asesoría jurídica o quien haga sus veces, le corresponde las mismas obligaciones referidas en el numeral 13.1 del artículo 13 de este Reglamento;

### DISPOSICIONES COMPLEMENTARIAS FINALES

**Primera. Financiamiento para el pago de obligaciones derivadas de sentencias judiciales con calidad de cosa juzgada**

El financiamiento de adeudos dinerarios derivados de sentencias judiciales en calidad de cosa juzgada y en ejecución, es atendido por la entidad del Sector Público donde se genera la deuda con cargo a su presupuesto institucional, concordante a lo dispuesto en el artículo 46 del Texto Único Ordenado de la Ley Nº 27584, Ley que Regula el Proceso Contencioso Administrativo, aprobado mediante el Decreto Supremo Nº 011-2019-JUS, que implica el siguiente orden:

1. El financiamiento se efectúa con cargo al presupuesto institucional de la entidad, aprobado para el año fiscal correspondiente.

2. En caso de no ser suficiente la acción del numeral anterior, el financiamiento se efectúa con cargo a los recursos que resulten de las modificaciones presupuestarias en el nivel funcional programático que la entidad encuentre necesario realizar, hasta el cinco por ciento (5%) de los montos aprobados en el Presupuesto Institucional de Apertura (PIA), con las excepciones señaladas en el artículo 73 del Decreto Legislativo Nº 1440, Decreto Legislativo del Sistema Nacional de Presupuesto Público;

**Segunda. Obligación de las entidades involucradas**

El Ministerio de Salud, el Ministerio de Trabajo y Promoción del Empleo y las dependencias de salud del Ministerio del Interior y del Ministerio de Defensa, en lo que corresponda implementan las acciones necesarias para dar cumplimiento a las disposiciones establecidas en el artículo 6 del presente Reglamento;

**Tercera. Informe de junta médica para el caso de miembros de la Policía Nacional del Perú y Fuerzas Armadas**

El informe de junta médica a que se refiere el artículo 6 del presente Reglamento, para el caso de acreedores pertenecientes a la Policía Nacional del Perú y Fuerzas Armadas, es emitido por un colegiado integrado como mínimo por tres (03) especialistas de salud de los establecimientos de salud correspondientes.

**Cuarta. Registro en el Aplicativo Informático**

El registro y actualización de las demandas, procesos judiciales y el pago de las deudas generadas por sentencias judiciales en calidad de cosa juzgada y en ejecución, se realiza de manera permanente en el Aplicativo Informático "Demandas Judiciales y Arbitrales en Contra del Estado", cuyo uso fue oficializado mediante la Única Disposición Complementaria Final del Decreto Supremo N° 114-2016-EF.

**Quinta. Verificación de registros ingresados en el Aplicativo Informático**

Los Comités permanentes de cada Pliego, en un plazo máximo de sesenta (60) días calendario posteriores a la publicación de este Reglamento, verifican en el Aplicativo Informático "Demandas Judiciales y Arbitrales en Contra del Estado" del Ministerio de Economía y Finanzas, que los listados priorizados aprobados contengan única y exclusivamente sentencias judiciales en calidad de cosa juzgada y en ejecución, debiendo registrar la fecha de notificación del requerimiento judicial de pago. Esta disposición también comprende a las Empresas Públicas y demás entidades que no constituyen pliego presupuestal.

**Sexta.- Designación de los integrantes del Comité**

Los integrantes del Comité permanente, titulares y alternos, conforme se establece en el numeral 10.1 del artículo 10 del reglamento, son designados con resolución del Titular del Pliego en un plazo máximo de treinta (30) días calendario posteriores a la publicación del presente Reglamento.

Esta disposición también comprende a las Empresas Públicas y demás entidades que no constituyen pliegos presupuestarios.

**DISPOSICIÓN
COMPLEMENTARIA TRANSITORIA**

**Única. Progresividad**

La implementación del literal f, del numeral 13.1 del artículo 13 de este Reglamento, se realiza progresivamente, considerando las condiciones preferentes para la atención del pago a los acreedores de sentencias judiciales en calidad de cosa juzgada y en ejecución. Este proceso concluye en el plazo de un año contado a partir de la entrada en vigencia del presente Reglamento;

**DISPOSICIÓN COMPLEMENTARIA DEROGATORIA**

**Única. Derogación**

Derógase el Decreto Supremo N° 001-2014-JUS, que aprueba el Reglamento de la Ley N° 30137, Ley que establece criterios de priorización para la atención del pago de sentencias judiciales.

**1865283-1**

---

## SALUD

**Decreto Supremo que establece medidas para asegurar la continuidad de las acciones de prevención, control, diagnóstico y tratamiento del coronarivus – COVID-19**

**DECRETO SUPREMO
Nº 013-2020-SA**

EL PRESIDENTE DE LA REPÚBLICA

CONSIDERANDO:

Que, los numerales I y II del Título Preliminar de la Ley Nº 26842, Ley General de Salud, disponen que la salud es condición indispensable del desarrollo humano y medio fundamental para alcanzar el bienestar individual y colectivo, y que la protección de la salud es de interés público; por lo tanto, es responsabilidad del Estado regularla, vigilarla y promoverla;

Que, la Organización Mundial de la Salud ha calificado, con fecha 11 de marzo de 2020, el brote del COVID-19 como una pandemia al haberse extendido en más de cien países de manera simultánea;

Que, mediante Decreto de Urgencia Nº 025-2020, se dictan medidas urgentes y excepcionales destinadas a reforzar el Sistema de Vigilancia y Respuesta Sanitaria frente al COVID-19 en el territorio nacional, a efectos de establecer mecanismos inmediatos para la protección de la salud de la población y minimizar el impacto sanitario de situaciones de afectación a ésta;

Que, el Decreto Supremo N° 008-2020-SA declara en Emergencia Sanitaria a nivel nacional por el plazo de noventa (90) días calendario, dictando medidas de prevención y control del COVID-19;

Que, mediante Decreto de Urgencia N° 026-2020, se establecen diversas medidas excepcionales y temporales para prevenir la propagación del Coronavirus (COVID-19) en el territorio nacional;

Que, mediante Decreto de Urgencia N° 029-2020, se dictan medidas complementarias destinadas al financiamiento de la micro y pequeña empresa, y otras medidas para la reducción del impacto del COVID-19 en la economía peruana;

Que, el artículo 79 de la Ley N° 26842, Ley General de Salud, contempla que la Autoridad de Salud queda facultada a dictar las medidas de prevención y control para evitar la aparición y propagación de enfermedades transmisibles. Todas las personas naturales o jurídicas, dentro del territorio, quedan obligadas al cumplimiento de dichas medidas, bajo sanción;

Que, el artículo 2 del Decreto de Urgencia N° 025-2020, establece que el Ministerio de Salud, en cumplimiento de su función rectora, es el encargado de planificar, dictar, dirigir, coordinar, supervisar y evaluar todas las acciones orientadas a la prevención, protección y control de la enfermedad producida por el COVID-19, con todas las instituciones públicas y privadas, personas jurídicas y naturales que se encuentren en el territorio nacional, conforme a las disposiciones de la Autoridad Sanitaria Nacional;

Que, el Decreto Supremo N° 044-2020-PCM, declaró el Estado de Emergencia Nacional por el plazo de quince (15) días calendario, y dispuso el aislamiento social obligatorio (cuarentena), por las graves circunstancias que afectan la vida de la Nación a consecuencia del brote del COVID-19;

Que, el numeral 5.1. del artículo 5 del citado Decreto Supremo establece que todas las entidades públicas, privadas y mixtas sanitarias del territorio nacional, así como los funcionarios y trabajadores al servicio de éstas, quedan bajo la dirección del Ministerio de Salud para la protección de personas, bienes y lugares, pudiendo imponérseles servicios extraordinarios por su duración o por su naturaleza;

Que, el numeral 5.3 del artículo 5 del Decreto Supremo en mención precisa que el Ministerio de Salud puede establecer medidas que incluyen la posibilidad de determinar la mejor distribución en el territorio de todos los medios técnicos y personales, de acuerdo con las necesidades que se pongan de manifiesto en la gestión de esta emergencia sanitaria;

De conformidad con lo establecido en el numeral 8 del artículo 118 de la Constitución Política del Estado; la Ley Nº 29158, Ley Orgánica del Poder Ejecutivo; la Ley N° 26842, Ley General de Salud; y el Decreto Legislativo N° 1161, Ley de Organización y Funciones del Ministerio de Salud, modificado por la Ley N° 30895, Ley que fortalece la función rectora del Ministerio de Salud;

DECRETA:

**Artículo 1.- Objeto**

El presente Decreto Supremo establece normas reglamentarias para asegurar la continuidad de las acciones en la prevención, control, diagnóstico y tratamiento del coronavirus – COVID19 en el ámbito del Sector Salud. Cuando una disposición expresamente