IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA


METROPOLITAN MUNICIPALITY OF LIMA, ) CIVIL NO.:
                                    ) 20-2155-ACR
          Petitioner,               )
     vs.                            )
                                    )
RUTAS DE LIMA S.A.C.,               )
                                    ) October 16, 2025
          Respondent.               ) Washington, D.C.
_____) 10:00 a.m.


Transcript of Status Conferece
Before the Honorable Ana C. Reyes
United States District Judge


APPEARANCES:

For the Plaintiff:   Ryan B. Witte, Esquire
                     Rossana Baeza, Esquire
                     Boies Schiller Flexner
                     100 S.E. 2nd Street
                     Suite 2800
                     Miami, FL 33131

For the Defendant:   David G. Hille, Esquire
                     White & Case LLP
                     1221 Avenue of the Americas
                     New York, NY 10020

                     Blair E. Trahan, Esquire
                     Nicolle E. Kownacki, Esquire
                     White & Case
                     701 13th Street N.W.
                     Washington, DC 20005

Reported by:    Christine T. Asif, RPR, FCRR
                Federal Official Court Reporter
                333 Constitution Avenue, NW
                Washington, D.C. 20001
                (202) 354-3247


Proceedings recorded by machine shorthand; transcript produced
by computer-aided transcription


Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

P R O C E E D I N G S

THE CLERK:  Your Honor, we're now on the record for civil action 20-2155, Metropolitan Municipality of Lima versus Rutas de Lima SAC.

Counsel, beginning with the plaintiff, please state your appearances for the record.

MR. WITTE:  Good morning, Your Honor.  This is Ryan Witte for Boies Schiller and Flexner on behalf of the City of Lima.

THE COURT:  Good morning, Mr. Witte.

MR. WITTE:  Good morning, Your Honor.

MS. BAEZA:  Good morning.  Rossana Baeza on behalf of the Metropolitan Municipality of Lima from Boies Schiller Flexner.

THE COURT:  From what firm?

MS. BAEZA:  Boies Schiller Flexner.

THE COURT:  Okay.  All right.  Thought we had a new firm on the scene.

MR. HILLE:  Good morning, Your Honor.  David Hille from White and Case on behalf of Rutas de Lima.  I'm joined by my colleagues Nicolle Kownacki and Blair Trahan.

THE COURT:  Good morning, everyone.

So I called you all in because after I got your status report I had a lot of thoughts and we were going to write a long minute order.  And then I decided it would just

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

be easier if I called everyone in.

So the first thing I want to talk about is this issue of the sort of stipulation with respect to what has happened here.

Now Mr. Hille, much as I might like to, I cannot tell the Peruvian courts what to do. I can however, tell Boies Schiller what to do.

So first of all, I don't think the stipulation should concern what the impact of the res judicata or whatever is with respect to Lima proceedings, but I think the right way to phrase it is to say that as I understand it this was an arbitration award that was in force under the New York Convention And Peru is a signatory to the New York Convention. And the New York Convention has provisions regarding the enforcement of arbitration awards that have been recognized at the seat, which this one has been.

And my understanding is that the Peruvian arbitration law adopts that -- that criteria. And I think that there are only exceptions, for example, if the Court didn't have subject matter jurisdiction or something or other along those lines.

So, Mr. Hille, what I want you to do is prepare a stipulation that sort of looks -- this is where I decided that you guys could do it, because as opposed to my clerk doing it on my time or your associates doing it on your time, I'm

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

having your associates do it on your time.  I want someone to research exactly what the language is with respect to what a country is obligated to do once there has been a recognized award.  And to the extent you can, and I'm sure you have some counsel who can do it, the Peruvian arbitration statute and what it requires.

And then I want a joint stipulation, obviously you'll have to pass this through Boies Schiller, which basically says, here's what the New York Convention says.  Peru is a signatory to the New York Convention.  Here's what Peruvian law is.  And this award -- which I believe it does, but someone tell me if it doesn't -- meets every single requirement of both the New York Convention and the Peruvian arbitration law.  So that's No. 1.

No. 2, once -- if -- I mean, I assume at some point -- I'm not sure why this hasn't happened yet, but I assume at some point your client is going to move to enforce the award in Peru.

MR. HILLE:  Your Honor, we do have an update on that.  This is David Hille.  So those proceedings have just started.

THE COURT:  Okay.

MR. HILLE:  In Peru and the efforts -- service efforts are underway as we speak, but they have been commenced.

THE COURT:  Okay.  Good.  Perfect.  The second part of this draft order you're going to send for my execution is as follows:  Before Lima files anything in the Peruvian courts with respect to this award, they are ordered to have Boies Schiller look at it first.  Obviously, Boies Schiller isn't going to be doing the drafting, they are not Peruvian lawyers. They are going to review it to ensure that the filing comports with the stipulation.

If I later make a determination that the filing does not comport with the stipulation because Rutas will bring it to my attention, I will enter a show cause order of sanctions as against Boies Schiller the law firm, personally, and as to Lima.

Mr. Witte, if at some point Lima insists over your suggestion of moving forward you have two choices; you can allow them to do so in violation of a district court order and face sanctions or you can withdraw from the representation.

MR. WITTE:  So if I understand Your Honor correctly, you are forcing the parties, two American lawyers --

(Cross-talk.)

THE COURT:  No, hold on, Mr. Witte.  Mr. Witte, stop talking when I'm talking.

MR. WITTE:  Okay.

THE COURT:  I'm not forcing anyone to do anything, I'm ordering you to abide by your role as an officer of the

Court to ensure that your client, who is still before this court, does not violate my order. And my order is focused solely on American law and the effect of an American order.

And you don't need to remind me that you're American lawyers, I know you're American lawyers, so don't play those games with me. The only person who's a lawyer of more than one country is me, because I'm a lawyer in both the U.S. and in England. So the only one who has to clarify what kind of lawyer they are is me, unless you guys have some bars somewhere else that I'm unaware of.

I am done with your client playing games with this court. I am done with it. I am giving you a stipulation that is on all fours with American law and with your client's obligations under the New York Convention.

So the next words out of your mouth you better consider very carefully, because my patience is more than shot. So go forward, what would you -- and finally, the next time I start talking and you're talking, you stop. The next time you keep talking trying to talk over me, I will immediately, immediately sanction you. And that sanction is going to be $1,000 and it's going to come out of your personal pocket. What would you like to say?

MR. WITTE: First of all, Your Honor, my apologies. With Zoom it's hard to know if I'm talking over you. I heard you say "Mr. Witte," I thought you were addressing me. So I

apologize --

THE COURT: Stop being sarcastic. Stop being sarcastic. I did say Mr. Witte and then you started talking and then you said are you telling me that you're forcing the parties, you're telling two American lawyers, and at that point, after you had begun talking, not after I said Mr. Witte, did I start talking again.

So proceed and think carefully about what kind of tone and what kind of next snide remark you want to make. I suggest you quelch the desire.

MR. WITTE: Okay. Your Honor, to be clear, I have no -- no desire to upset the Court and I am not being sarcastic. I assure you that is not my intention. And if that's how it came across, then you have my sincere apology.

THE COURT: Mr. Hille, how did it come across to you?

MR. HILLE: I'm sorry, Your Honor, you're asking me?

THE COURT: Yeah. Actually, I'm not going to ask you. I'm going to take you off the spot.

Go ahead, Mr. Witte.

MR. HILLE: Thank you.

MR. WITTE: So, Your Honor, just I understand Your Honor's order, but I need to make the record for my client. Okay. Sitting here today, without having law specific to Your Honor's order in front of me, what I would suggest for the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

record is that, yes, Peru is a signatory of the New York Convention they have their own jurisprudence about how they apply the New York Convention, for myself and Mr. Hille to get together or for him to draft a stipulation or order where you are ordering the parties what they can and can't argue before the Peruvian court, or determining what the Peruvian court would say about certain aspects of enforcement, I believe is not a proper order to compel a party to argue one thing versus another in a foreign jurisdiction, or to speculate as to how the Court of this sovereign nation, with their own jurisprudence, would apply the law with respect to the New York Convention.  They may not be extra- -- I don't know if they have liberal construction of how they take awards.

But all of this, is premature, considering the fact that this is the first I'm learning that the award request has even commenced in Peru.  And so our client has been served, I understand from Mr. Hille that they're in the process of doing that.  But for Your Honor to order lawyers who are not authorized to practice law in Peru, to vet a pleading and apply a foreign jurisdiction's law, and how that foreign jurisdiction applies to its own jurisprudence, and to prevent a foreign jurisdiction -- lawyers in a foreign jurisdiction to make arguments in front of that sovereign court, I think would be improper.  And certainly to sanction an American law firm, or threaten sanctions against an American law firm if we don't

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

sign off on such a procedure, I also think would be improper.

Now, what I would say, what's written here, and I understand that it's also -- you know, we're lawyers we see what's written on the page and we view it from the light of what is the worst possible outcome of what was proposed by Mr. Hille, and he looks at it what's the worst outcome proposed by me. All we're suggesting is Rutas needs to follow the law in Peru. They have to bring their proceeding and the lawyers will make their arguments.

We are not going -- not we, Boies Schiller is not there, but Lima is not going to argue that the proceeding before your court is not final for the purpose of enforcement in the United States or that it's still pending in the United States, so therefore under American law it is not permitted to enforce, that it would be premature to enforce the award in Peru. All we're saying is they have to follow the laws of that nation and bring the arguments that they're going to bring in their motion.

And the lawyers who are in Peru, who are actually authorized to practice that law, will make a determination with the client that certain arguments should be made or shouldn't be made. What they're not going to argue is Your Honor's proceeding is somehow open so that other U.S. law -- they can't bring this action yet in Peru, that it's premature or anything like that.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

So that's what's being said or what the intention is in the report, what we're trying to convey.

THE COURT:  All right.  I'm done.  I'm done.  I got you.  Because I think you misinterpreted what my order was going to be.  I'm not ordering your client to make or not make arguments in Peru.  Your client can make whatever argument under Peruvian law that you -- that it wants, so long as it doesn't misstate what has happened here.  I am not ordering your firm to vet the Peruvian law pleadings.

The order is as follows:  Lima cannot lie, Peru cannot lie to the Peruvian courts about the status of this arb- -- of this process, which includes not only that it's a final enforceable order under district law, under U.S. law, but that it abides in all respects with the New York Convention, which is what the appellate court has held.  None of that, none of that requires Boies Schiller to opine on any law in Peru at all.  Your only job is to make sure that Peru and Lima does not lie about this order to the Peruvian courts at the detriment of Rutas.

MR. WITTE:  May I ask one qualifying question, Your Honor?

THE COURT:  Yes.

MR. WITTE:  For verification.  If the pleading from Peru -- and we aren't even hired to do anything with the Peruvian proceeding, but putting that aside -- if a Peruvian

pleading argues that under Peruvian jurisprudence the Court should not confirm the award of the New York Convention that Peru is a signatory of for X, Y, Z reason, not because of anything happening in the United States, not because of the status of the hearing in the United States, if they argue that on Peruvian jurisprudence it would be improper to confirm the award for X, Y, and Z reason, would that be in Your Honor's view lying to the Court in Peru?

THE COURT:  No, of course not.  Mr. Witte, no of course -- Mr. Witte, no, of course not.  So long as the Y, X, and Z doesn't misrepresent what happened here.

MR. WITTE:  Understood, Your Honor.

THE COURT:  If Lima says to Peru you cannot enforce this award because we did not get a fair proceeding in the U.S., that would be a lie.  If the Peruvian -- Lima says to the Peruvian court, you should not enforce this award because of the Peruvian arbitration law says very clearly that an award has to be written at midnight, or signed by the judge at midnight, and the judge signed it at 8:00 a.m. and not midnight, and that is Peruvian law, so therefore it doesn't meet Peruvian law under the New York Convention, that would not be a violation of this order, because it wouldn't be violating anything -- it wouldn't be lying about anything that I did or that this court did.  Does that distinction make sense?

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

MR. WITTE:  Yes, I believe it does, Your Honor.  I appreciate the clarification.

THE COURT:  All right.  I am going to ask that Boies Schiller review the pleading, only with respect to how it categorizes these proceedings.  If there is an issue with that, you and I will have an ex parte conversation, and Mr. Hille's going to agree to that, so that I can give you my views as to whether this crosses the line or not.  Does that sound like a better approach to you?

MR. WITTE:  I believe it does, Your Honor.

THE COURT:  All right.  Mr. Hille.

MR. WITTE:  -- insight from you, that would be very nice and Your Honor to the extent that does occur, which hopefully we don't need to do that, how would we contact Your Honor for such a motion, just file a motion for an ex parte discussion?

THE COURT:  No, just send an email, copy Mr. Hille, just say we're asking for an ex parte.  I will get on the phone with you, Mr. Hille will know it's happened but won't know anything else.

MR. WITTE:  Understood, Your Honor.

THE COURT:  Mr. Hille.

MR. HILLE:  Your Honor, I don't love the ex parte part for reasons I'm sure the Court can understand.  I don't see any reason why we couldn't be present during such a call.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

But obviously, if it's something the Court feels strongly about, we're in the court's hands.

THE COURT:  Well, if I'm going to make Boies Schiller sign off on something, Mr. Witte does have a point, he should have some opportunity to not be sort of in the dark on this, you know, what might be close calls without getting my input.  And I don't know how he can get my input with you in the room.  I mean, that's just what it is.  I mean, the other thing we can do is just, I won't have this provision.  I assume that your client would trust me enough right now to prefer that Mr. Witte review the pleading, that it not be a lie about what happened here.  But if your client prefers, I'm not -- it's not going to hurt my feelings if your client prefers that I not put in that provision, that's totally fine with me.

MR. HILLE:  No, no, Your Honor, we appreciate the provision.  And if the Court's view of the best way to administer it is through an mechanism of an ex parte conversation, of course, I think the Court can understand counsel is always a little bit nervous about an ex parte conversation, but we understand the circumstances here and that's acceptable.

THE COURT:  All right.

MR. WITTE:  And Your Honor -- I'm sorry, I didn't mean to cut you off.

THE COURT:  No, go ahead.

MR. WITTE:  I was going to say to give to Your Honor comfort and just with respect to Mr. Hille's position, and Your Honor doesn't need this from me, obviously, but these would be prefiled pleadings, so they would still be essentially work product and so it --

THE COURT:  Yeah, they would be work product and they wouldn't be a waiver.  And I can be on the phone with you very quickly Mr. Witte.  This is not going to be a thing where you have to talk to me, you know, eight days before the filing is due.  I can be on -- I'm sure you would want some chance.  All I want to make sure is, is that nothing that happens here gets misrepresented to the Peruvian court.  That's all I care about.

Lima can argue whatever it wants.  I don't care what it argues with respect to Peruvian law.  I don't care what it argues with respect to the New York Convention.  All I care about is that Mr. Hille's client is not having a he-said, she-said in Peru about what the impact of this order is under U.S. law and with respect to its conformance with the New York Convention.

And Mr. Witte, I apologize if I came off very hot, which I realize I did.  I have -- you have not been here, and I took out a lot of frustrations on you that probably weren't deserved, but they were deserved for your client and you just

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

had to take a bullet this morning.

MR. WITTE:  Your Honor, that's -- I brought my flak jacket.  I understand.

THE COURT:  All right.  Can you guys get together and work out a stipulation on that?

MR. WITTE:  Yes.

MR. HILLE:  Yes.

THE COURT:  And Mr.  -- it does not have to include sanctions, I mean, Mr. Witte, I'm sure that you and I can work through whatever needs to be worked through.

MR. WITTE:  I would appreciate that, otherwise, it's going up to my GC.  And, you know, to the extent we can avoid premature sanctions threats that would be wonderful.

THE COURT:  No, I understand.  I hadn't thought through a different better way to do it, I was just -- you're the only one in front of me that I can do anything to, except, you know, sanction your client and they're not going to pay anyway.  So not as much I can do about that.

And by the way, just so your client's aware -- well, I guess no, I mean -- I mean, the reason I still have jurisdiction with respect to this particular award, as opposed to whatever comes with respect to a third award is because you all are keeping it open.  So, I mean, if you all, which I assume you're not going to do, decided we are done, we're just ending all of this with respect to this award, we're

withdrawing our motion, then of course I no longer have jurisdiction and I don't have jurisdiction to do anything.

MR. WITTE:  Understood, Your Honor.

THE COURT:  All right.  So the second thing I don't really understand, Mr. Hille, this is for you.  I didn't quite understand how you wanted to proceed with respect to the Lima's motion.

MR. HILLE:  Sure, Your Honor.

THE COURT:  So, so far as I understood what you said, you want to brief all of it, but you only want me to decide part of it on the timing, I just wasn't sure exactly what you wanted.

MR. HILLE:  Sure, Your Honor, I apologize if the --

THE COURT:  No, no, no, it's not -- there's nothing to apologize for, I just didn't understand.

MR. HILLE:  Sure.  Here is the way we would envision this working.  That Lima would make its 60(b) motion in full. And so that the Court and we and everybody have the record of what they were -- what they are seeking relief from the judgment, what it's based on.  And that we would then have as a preliminary stage, a motion as on issues of timeliness, as to whether the motion's timeliness.  We would not get into whether a conflict exists and other issues that are more complicated.  So that in the hope, from my client's perspective, and the hope that this can be addressed

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

efficiently, sort of in the nature of a motion to dismiss on timeliness grounds, Your Honor.

THE COURT:  Well --

MR. HILLE:  -- schedule for that.

THE COURT:  Well, Mr. Hille, I mean, that's -- that's totally unfair to Lima.  I mean, you're basically making them brief the entire case, but asking me only to decide one part of it.  Like, you can't have your cake and eat it too.  Like either we're going to brief and decide the whole thing or we're just going to brief and decide the timeliness issue.  I'm not going to have them brief their entire motion, but then only take up the timeliness issue.

MR. HILLE:  Well, Your Honor, I guess it's -- they've already written the motion once.  They filed a complete motion with the Court back a number of months ago.

THE COURT:  Well, I'm sure that Mr. Witte, given my guidance from our last hearing, has some thoughts about how he might want to amend or change that, and not the least of which is with respect to the fact that we don't have this letter.  And with respect to my advice to him last time we were all talking about whether or not there was actually an arguable conflict.  Because I think I made very clear to Mr. Witte that if there's not an actual conflict, this motion is going nowhere.  I mean, an actual conflict like arguable under the law.  Obviously, you guys are going to dispute whether there's

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

a conflict, but I wasn't sure that Mr. Witte could even say last time we were here that there was a conflict under the law.

MR. WITTE:  Your Honor, I think certainly on the spot, you know, we believe that there is a conflict.  I think it just depends how we characterize it in the motion.  So we also took Your Honor's advice and we are consulting with experts on the issue.  And so we expect that to be incorporated into the motion as well.

THE COURT:  Yeah, so that's what I meant.  I don't think that he -- I imagine that Mr. Witte isn't going to file the same motion that he filed -- I mean, I think he's going to have to do a lot more work to refile the motion.  And I just -- I mean, I'm not going to do that.  I'm not going to make him file the whole thing and then tell him I'm only going to look at part of it, because that's totally unfair to him.

MR. HILLE:  Your Honor, I guess, I think the converse is a little unfair to Rutas.  And I think that if we are going to address with the Court whether or not this application is timely, we need to know what this application is.  And I appreciate that what we're trying to do is come up with something that's efficient and deal with sort of a threshold issue, again, kind of like a motion to dismiss.  But when you have a motion to dismiss you need to have a complaint to know what it is you're up against.

I think if the parties are just talking about timeliness issues in a vacuum, we're not going to have the record -- I don't know what they're going to say the conflict is based on.  I don't know what they're going to say about when they learned about it.  I need to know all that in order to address whether or not this application is timely.

THE COURT:  Well, that's fine, Mr. Hille.  I don't care about that.  But then you're opposing the whole motion.  What I'm not going to do is have them file an entire motion -- it would be like saying, you file your entire summary judgment motion with all your declarations and all your reports and all the everything, and then Mr. Hille, you don't have to respond to the motion in full, you just have to respond to whether or not it was timely brought.  I mean, that's just -- and then if we get past that, then I'll make you file the opposition to the rest of the motion. I mean, no, I'm either going to have the whole thing in front of me or I'm going to have part of it in front of me and it's going to be equal to both sides.

So I don't know if you have a preference on that. Mr. Witte, it's your motion, I'm not going to stop you from filing what you want.  Just know that based on what I think right now, Mr. Hille has a strong argument that it's delayed.

So do you want everyone to brief the entire thing and we have an argument on the entire thing, or do you want to just brief the timeliness issue?

MR. WITTE:  Your Honor, I think --

THE COURT:  And if you want to get back -- you don't have to tell me right now on the spot.  I mean, presumably if you wanted to file the timeliness issue it would have to be more -- you would have to put some things about the dates and what not.

MR. WITTE:  Understood.  And I do take Mr. Hille's point.  We actually had a conversation before we filed the joint stipulation about this very issue and discussed our positions on the same.  What I'd like to do is since it's somewhat inconsistent with what my client approved just to talk to my client about it --

THE COURT:  Well, did you and Mr. Hille -- I thought that you guys disagreed as to how to proceed, had you guys come to a --

MR. WITTE:  No, no, we had a cordial conversation in which we disagreed, we had a conversation where we talked about it.

THE COURT:  Okay.

MR. WITTE:  So let me -- I do see his point.  My thought was, you know, with the issue of timeliness you can sort of assume facts, like a motion for summary judgment, assume that there's a conflict, would it be timely.  But let me, if it's okay with Your Honor, to speak with my client.  If they want to go forward with the entire motion, then we'll

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

come back to Your Honor and let you know that.  Alternatively, we'll make sure that -- obviously, we want to win a threshold issue, so we'll put sufficient facts in order to do that and satisfy Your Honor as you go forward.  But if that's okay with Your Honor, if I could is have maybe a day or so?

THE COURT:  You can have as many days as you want, I don't care.

But Mr. Hille, would you be amenable to that, where you guys basically stipulate to facts just for purposes of the timeliness decision and then you go from there, because if you guys can work that out that's fine.  I'd rather not have to deal with the whole thing.  So whatever -- if you guys can work something like that -- I just don't think it's fair to make Mr. Witte brief everything, the expense that that would take, experts, declarations, all the things.  And then say to him, but I'm only going to take the timeliness issue up.  And if we pass that, then I'll get to the rest of the motion.  I just don't think that's fair from -- I don't think that's fair to Lima in terms of litigation cost.

MR. HILLE:  No, and we hear the Court on that loud and clear.  So understood, Your Honor.

I think -- look, I'd like to think about it as well and discuss with my client.  I think our preference would be to try to make it work on the timeliness issue.  Because I really think that is in the best interest of efficiencies for

the parties and for the Court.  It might, you know, take a little bit of coordination between us and counsel for Lima in terms of, you know, what that would look like.

But I think our preference would be to try to accomplish that, rather than deal with the whole motion, which I think is going to create a lot of expense and time for everybody, including the court, when I think there's a strong threshold issue to address here.

THE COURT:  No, I mean, I agree.  If I was you guys I would come up with, you know, what you said, a complaint that we accept as true for purposes -- I mean, maybe you guys come up with a motion, you know, quote, unquote complaint for current purposes it's -- it's assumed to be true just for current purposes, you don't even have to stipulate.  We treat it literally as a complaint on a motion.  And then you don't have to have all the experts.  You don't have to have all the declarations.  You don't have to have all the things.  And you can limit it to what you need to sort of prove from your perspective for timeliness issues and then we just move on that issue.

Because I -- and again, Mr. Witte, I don't think -- you know, I haven't looked at it, so I don't know what the answer is, but my gut says that this seems late.  That's just, you know, gut.  Just, you know, based on everything I've seen.  But, so I don't know that your client wants to go through the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

expense.  I mean, you guys are very good so you're not cheap, I take it.  You guys figure it out.  Let me know.  I mean, I'm going to be gone for the next two and a half weeks any way, so why don't you guys just let me know by November 5th.

MR. WITTE:  Okay.

MR. HILLE:  Your Honor, just if I may, a comment on the notion that this would be like a complaint.  I do resist the idea that anything that would be submitted by the municipality would be given the deference of parties assuming that it is true, I think we can limit the facts --

THE COURT:  Right.  You guys just work -- I'm just trying to give a concept.  I'm not -- obviously, I know that the last thing you want to go back to your client and say -- if you go back to your client and say the judge let Lima file a complaint they would lose their minds.  So I get it.  I was just trying to do the concept that you talked about in terms of like stip- -- maybe the better way to put it is, you know, stipulated undisputed facts just for purposes of the motion and you guys can work that all out.

If that's the way you guys want to go, but you need more time to get that together, that's totally fine with me, I mean I'm not going anywhere.

MR. HILLE:  Understood, Your Honor.

MR. WITTE:  Understood, Your Honor.

THE COURT:  All right.  And then the final thing is

you guys can't find -- I mean, I'm sorry the Lima can't find the initial document?

MR. WITTE:  So if you're referring to the document or what would be a document sent to Foley, is that what you're referring to?

THE COURT:  Right, that was the request, like, look at this.

MR. WITTE:  Right.  So actually after the last hearing I was almost positive I said to Your Honor to the extent a writing exists we would get it to you.  And then I was sweating bullets until I received the transcript to make sure I didn't say there is a document with any definity (sic) because I didn't know that to be fact one way or the other.

I can tell you at this moment we have not located any such document.  We are still continuing to look.  I also don't know whether the document -- there is such a document, whether this is a verbal conversation.  We're attempting to speak with a woman named Mariella who is in Lima with the office at the time this was happening, to gather some information from key witness --

THE COURT:  So do you know who actually -- do you know who would have had the conversation?

MR. WITTE:  I don't know for certain, but I believe that this particular individual, Ms. Baeza would know her last name, it's escaping me now.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

THE COURT:  It's fine.

MR. WITTE:  But she would either know or be in a position to tell us who would know.  She was at a level in the city of Lima that she should have been involved in these discussions.  So she no longer works for the city, so trying to pin her down and have some time to speak with her has been challenging.

THE COURT:  Understand.  All right.  Okay.  Well, you guys just give me a status update where you are on November 5th.  If you figure out a way to proceed, add a proposed briefing schedule.  And if you need my input, I'm basically -- you know, well, if for any reason, Mr. Witte, I assume that you don't have to respond to the Peruvian action before November 5th, but if for any reason you do and you need my attention, my clerk will make sure to get it.  I'm going to be 14 hours ahead, so it might just be a bit, but we'll certainly get back to you.

MR. WITTE:  I hope you will be enjoying yourself 14 hours ahead.

THE COURT:  Yeah, going to Japan.  Too bad I didn't get you sanctioned, because I'd have an extra $1,000 to spend.

MR. WITTE:  Your Honor, I offer it, but we don't make as much as you think.

THE COURT:  Mr. Hille, Mr. Witte, anything else?

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

MR. WITTE:  No, Your Honor, we appreciate it.

MR. HILLE:  No, Your Honor.  So November 5th, is that the date that you would like to see the stipulation that we talked about --

THE COURT:  No, no, no, just -- just by then I just want to know how you guys want to proceed.  And then you work out a schedule as to how to move this thing forward.  And if you guys can't agree -- oh, if you guys can't agree, if Mr. Witte's client wants to do the whole thing, I'm not going to stop them.  So if Mr. Witte wants to do the whole thing and the expense that takes, then Mr. Hille, sorry, you're on board.

MR. HILLE:  Okay, Your Honor.  And the stipulation that we were talking about in the early part of the conference, Your Honor, when would you like to see that from the parties.

THE COURT:  I mean, November 5th is fine too, unless something needs to happen sooner because of events in Peru.

All right.  And Mr. Witte, I do -- I am sorry, I jumped all over you because I'm just incredibly frustrated with this case.  But that's no reason to jump all over you.  So I apologize.  All right.

MR. WITTE:  Your Honor, it's -- it's totally okay.  I've learned that people -- you never know what's going on with someone else and I try not to take it personally.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

THE COURT:  Yeah, no obviously, I think that your law firm is an excellent law firm.  And based on what I've seen so far, you are a welcome change.  Anything else?

MR. WITTE:  Nothing from plaintiff, Your Honor.

MR. HILLE:  Same, Your Honor.  Thank you.

THE COURT:  All right.  Thanks, everyone.

MR. WITTE:  Thank you.

MR. HILLE:  Thank you, Judge.

(The proceedings were concluded at 10:34 a.m.)

I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_____/s/_____
Christine T. Asif
Official Court Reporter

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

< Dates >.
May  10:20.
November
   25:10.
November 5th
   23:4,
   26:17.
November 5th,
   25:14,
   26:2.
October 16,
   1:11.
$1 6:21,
   25:21.
.
.
< 0 >.
00 1:13,
   11:19.
000 6:21,
   25:21.
.
.
< 1 >.
1 4:14.
10 1:13,
   27:9.
100 1:26.
10020 1:33.
1221 1:32.
13th 1:38.
14 25:16,
   25:18.
.
.
< 2 >.
2 4:15.
20-2155 2:3.
20-2155-ACR
   1:6.
20001 1:44.
20005 1:39.
202 1:45.
2025 1:11.
2800 1:27.
2nd 1:26.
.
.
< 3 >.
33131 1:28.

333 1:43.
34 27:9.
354-3247
   1:45.
.
.
< 5 >.
5th 25:10.
.
.
< 6 >.
60(b 16:17.
.
.
< 7 >.
701 1:38.
.
.
< 8 >.
8 11:19.

_____/s/__
_____
   27:15.
.
.
< A >.
a.m. 1:13,
   11:19,
   27:9.
abide 5:25.
abides
   10:14.
above-entitled
   27:13.
accept
   22:11.
acceptable
   13:22.
accomplish
   22:5.
across 7:14,
   7:15.
action 2:3,
   9:24,
   25:13.
actual 17:23,
   17:24.
Actually 7:18,
   9:19, 17:21,
   20:8, 24:8,

24:21.
add 25:10.
address 18:19,
   19:6,
   22:8.
addressed
   16:25.
addressing
   6:25.
administer
   13:18.
adopts 3:18.
advice 17:20,
   18:7.
ago 17:15.
agree 12:7,
   22:9,
   26:8.
ahead 7:20,
   14:1, 25:16,
   25:19.
allow 5:16.
almost 24:9.
already
   17:14.
Alternatively
   21:1.
amenable
   21:8.
amend 17:18.
American 5:19,
   6:3, 6:4,
   6:5, 6:13,
   7:5, 8:24,
   8:25,
   9:14.
Americas
   1:32.
Ana C. Reyes
   1:17.
answer
   22:23.
anyway
   15:18.
apologies
   6:23.
apologize 7:1,
   14:22,
   16:13,
   16:15,

26:22.
apology
   7:14.
APPEARANCES
   1:21, 2:6.
appellate
   10:15.
application
   18:20,
   19:6.
applies
   8:21.
apply 8:3,
   8:11,
   8:20.
appreciate
   12:2, 13:16,
   15:11,
   18:21,
   26:1.
approach
   12:9.
approved
   20:11.
arb- 10:12.
arbitration
   3:12, 3:15,
   3:18, 4:5,
   4:14,
   11:17.
arguable
   17:21,
   17:24.
argue 8:5,
   8:8, 9:11,
   9:22, 11:5,
   14:15.
argues 11:1,
   14:16,
   14:17.
argument 10:6,
   19:22,
   19:24.
arguments
   8:23, 9:9,
   9:17, 9:21,
   10:6.
aside 10:25.
Asif 1:41,
   27:11,

27:16.
aspects 8:7.
associates 3:25, 4:1.
assume 4:15, 4:17, 13:10, 15:24, 20:22, 20:23, 25:13.
assumed 22:13.
assuming 23:9.
assure 7:13.
attempting 24:17.
attention 5:11, 25:15.
authorized 8:19, 9:20.
Avenue 1:32, 1:43.
avoid 15:12.
award 3:12, 4:4, 4:11, 4:18, 5:4, 8:15, 9:15, 11:2, 11:7, 11:14, 11:16, 11:18, 15:21, 15:22, 15:25.
awards 3:15, 8:13.
aware 15:19.
.
.
< B >.
B. 1:23.
back 17:15, 20:2, 21:1, 23:13, 23:14, 25:17.
bad 25:20.

Baeza 1:24, 2:12, 2:16, 24:24.
bars 6:9.
based 16:20, 19:4, 19:21, 22:24, 27:2.
basically 4:9, 17:6, 21:9, 25:12.
beginning 2:5.
begun 7:6.
behalf 2:8, 2:12, 2:20.
believe 4:11, 8:7, 12:1, 12:10, 18:5, 24:23.
best 13:17, 21:25.
better 6:15, 12:9, 15:15, 23:17.
bit 13:20, 22:2, 25:16.
Blair 1:35, 2:21.
board 26:12.
Boies 1:25, 2:8, 2:13, 2:16, 3:7, 4:8, 5:4, 5:5, 5:12, 9:10, 10:16, 12:3, 13:3.
brief 16:10, 17:7, 17:9, 17:10, 17:11, 19:23, 19:25, 21:14.
briefing 25:11.
bring 5:10,

9:8, 9:17, 9:18, 9:24.
brought 15:2, 19:14.
bullet 15:1.
bullets 24:11.
.
.
< C >.
C. 1:12, 1:44.
cake 17:8.
call 12:25.
called 2:23, 3:1.
calls 13:6.
care 14:13, 14:15, 14:16, 14:17, 19:8, 21:7.
carefully 6:16, 7:8.
Case 1:31, 1:37, 2:20, 17:7, 26:21.
categorizes 12:5.
cause 5:11.
certain 8:7, 9:21, 24:23.
certainly 8:24, 18:4, 25:17.
certify 27:11.
challenging 25:7.
chance 14:11.
change 17:18, 27:3.
characterize 18:6.
cheap 23:1.
choices

5:15.
Christine 1:41, 27:11, 27:16.
circumstances 13:21.
City 2:8, 25:4, 25:5.
CIVIL 1:5, 2:3.
clarification 12:2.
clarify 6:8.
clear 7:11, 17:22, 21:21.
clearly 11:17.
clerk 3:24, 25:15.
client 4:17, 6:1, 6:11, 6:13, 7:23, 8:16, 9:21, 10:5, 10:6, 13:10, 13:12, 13:13, 14:18, 14:25, 15:17, 15:19, 16:24, 20:11, 20:12, 20:24, 21:23, 22:25, 23:13, 23:14, 26:9.
close 13:6.
colleagues 2:21.
COLUMBIA 1:2.
comes 15:22.
comfort 14:3.

commenced 4:25, 8:16.
comment 23:6.
compel 8:8.
complaint 18:24, 22:10, 22:12, 22:15, 23:7, 23:15.
complete 17:15.
complicated 16:24.
comport 5:10.
comports 5:7.
computer-aided 1:49.
concept 23:12, 23:16.
concern 3:9.
concluded 27:9.
Conferece 1:16.
conference 26:15.
confirm 11:2, 11:6.
conflict 16:23, 17:22, 17:23, 17:24, 18:1, 18:2, 18:5, 19:3, 20:23.
conformance 14:20.
consider 6:16.
considering 8:14.
Constitution 1:43.
construction

8:13.
consulting 18:7.
contact 12:14.
continuing 24:15.
Convention 3:13, 3:14, 4:9, 4:10, 4:13, 6:14, 8:2, 8:3, 8:12, 10:15, 11:2, 11:21, 14:17, 14:21.
conversation 12:6, 13:19, 13:21, 20:8, 20:16, 20:17, 24:17, 24:22.
converse 18:18.
convey 10:2.
coordination 22:2.
copy 12:17.
cordial 20:16.
correct 27:12.
correctly 5:18.
cost 21:19.
Counsel 2:5, 4:5, 13:20, 22:2.
country 4:3, 6:7.
course 11:9, 11:10, 13:19, 16:1.
courts 3:6, 5:3, 10:11, 10:18.
create 22:6.
criteria

3:18.
Cross-talk. 5:20.
crosses 12:8.
current 22:13, 22:14.
cut 13:25.
.
.
< D >.
dark 13:5.
date 26:3.
dates 20:5.
David 1:30, 2:19, 4:20.
day 21:5.
days 14:10, 21:6.
DC 1:39.
de 2:4, 2:20.
deal 18:22, 21:12, 22:5.
decide 16:11, 17:8, 17:9, 17:10.
decided 2:25, 3:23, 15:24.
decision 21:10.
declarations 19:11, 21:15, 22:17.
Defendant 1:30.
deference 23:9.
definity 24:12.
delayed 19:22.
depends 18:6.
deserved 14:25.

desire 7:10, 7:12.
determination 5:9, 9:20.
determining 8:6.
detriment 10:19.
different 15:15.
disagreed 20:14, 20:17.
discuss 21:23.
discussed 20:9.
discussion 12:16.
discussions 25:5.
dismiss 17:1, 18:23, 18:24.
dispute 17:25.
distinction 11:24.
District 1:1, 1:2, 1:18, 5:16, 10:13.
document 24:2, 24:3, 24:4, 24:12, 24:15, 24:16.
doing 3:24, 3:25, 5:6, 8:17.
done 6:11, 6:12, 10:3, 15:24.
down 25:6.
draft 5:2, 8:4.
drafting 5:6.
due 14:11.
during

12:25.
.
.
< E >.
E. 1:26, 1:35, 1:36.
early 26:14.
easier 3:1.
eat 17:8.
effect 6:3.
efficiencies 21:25.
efficient 18:22.
efficiently 17:1.
efforts 4:23, 4:24.
eight 14:10.
either 17:9, 19:16, 25:2.
email 12:17.
ending 15:25.
enforce 4:17, 9:15, 11:13, 11:16.
enforceable 10:13.
enforcement 3:15, 8:7, 9:12.
England 6:8.
enjoying 25:18.
enough 13:10.
ensure 5:7, 6:1.
enter 5:11.
entire 17:7, 17:11, 19:9, 19:10, 19:23, 19:24, 20:25.
envision 16:16.
equal 19:18.

escaping 24:25.
Esquire 1:23, 1:24, 1:30, 1:35, 1:36.
essentially 14:6.
events 26:18.
everybody 16:18, 22:7.
everyone 2:22, 3:1, 19:23, 27:6.
everything 19:12, 21:14, 22:24.
ex 12:6, 12:15, 12:18, 12:23, 13:18, 13:20.
exactly 4:2, 16:11.
example 3:19.
excellent 27:2.
except 15:16.
exceptions 3:19.
execution 5:2.
exists 16:23, 24:10.
expect 18:8.
expense 21:14, 22:6, 23:1, 26:11.
experts 18:8, 21:15, 22:16.
extent 4:4, 12:13, 15:12,

24:10.
extra 25:21.
extra- 8:12.
.
.
< F >.
face 5:17.
fact 8:14, 17:19, 24:13.
facts 20:22, 21:3, 21:9, 23:10, 23:18.
fair 11:14, 21:13, 21:18.
far 16:9, 27:3.
FCRR 1:41, 27:11.
Federal 1:42.
feelings 13:13.
feels 13:1.
figure 23:2, 25:10.
file 12:15, 18:11, 18:15, 19:9, 19:10, 19:15, 20:4, 23:14.
filed 17:14, 18:12, 20:8.
files 5:3.
filing 5:7, 5:9, 14:10, 19:21.
final 9:12, 10:13, 23:25.
finally 6:17.
find 24:1.
fine 13:14, 19:7, 21:11, 23:21, 25:1,

26:17.
firm 2:15, 2:18, 5:12, 8:24, 8:25, 10:9, 27:2.
First 3:2, 3:8, 5:5, 6:23, 8:15.
FL 1:28.
flak 15:2.
Flexner 1:25, 2:8, 2:14, 2:16.
focused 6:2.
Foley 24:4.
follow 9:7, 9:16.
follows 5:3, 10:10.
force 3:12.
forcing 5:19, 5:24, 7:4.
foregoing 27:12.
foreign 8:9, 8:20, 8:22.
forward 5:15, 6:17, 20:25, 21:4, 26:7.
fours 6:13.
front 7:25, 8:23, 15:16, 19:17, 19:18.
frustrated 26:20.
frustrations 14:24.
full 16:17, 19:13.
.
.
< G >.
G. 1:30.
games 6:6, 6:11.

gather 24:19.
GC 15:12.
gets 14:13.
getting 13:6.
give 12:7, 14:2, 23:12, 25:9.
given 17:16, 23:9.
giving 6:12.
grounds 17:2.
guess 15:20, 17:13, 18:17.
guidance 17:17.
gut 22:23, 22:24.
guys 3:24, 6:9, 15:4, 17:25, 20:14, 21:9, 21:11, 21:12, 22:9, 22:11, 23:1, 23:2, 23:4, 23:11, 23:19, 23:20, 24:1, 25:9, 26:6, 26:8.
.
.
< H >.
half 23:3.
hands 13:2.
happen 26:18.
happened 3:4, 4:16, 10:8, 11:11, 12:19, 13:12.
happening 11:4, 24:19.
happens

14:12.
hard 6:24.
he-said 14:18.
hear 21:20.
heard 6:24.
hearing 11:5, 17:17, 24:9.
held 10:15.
hereby 27:11.
Hille 1:30, 2:19, 3:5, 3:22, 4:20, 7:15, 8:3, 8:17, 9:6, 12:7, 12:11, 12:17, 12:19, 12:22, 14:3, 14:18, 16:5, 16:13, 17:5, 19:7, 19:12, 19:22, 20:7, 20:13, 21:8, 25:25, 26:11.
hired 10:24.
hold 5:21.
Honorable 1:17.
hope 16:24, 16:25, 25:18.
hopefully 12:14.
hot 14:22.
hours 25:16, 25:19.
hurt 13:13.
.
.
< I >.
idea 23:8.
imagine 18:11.
immediately 6:20.
impact 3:9,

14:19.
improper 8:24, 9:1, 11:6.
in. 3:1.
include 15:8.
includes 10:12.
including 22:7.
inconsistent 20:11.
incorporated 18:9.
incredibly 26:20.
individual 24:24.
information 24:20.
initial 24:2.
input 13:7, 25:11.
insight 12:12.
insists 5:14.
intention 7:13, 10:1.
interest 21:25.
involved 25:4.
issue 3:3, 12:5, 17:11, 17:12, 18:8, 18:23, 19:25, 20:4, 20:9, 20:21, 21:3, 21:16, 21:24, 22:8, 22:20.
issues 16:21, 16:23, 19:2, 22:19.
.
.
< J >.

jacket 15:3.
Japan 25:20.
job 10:17.
joined 2:20.
joint 4:7, 20:9.
Judge 1:18, 11:18, 11:19, 23:14, 27:8.
judgment 16:20, 19:10, 20:22.
judicata 3:9.
jump 26:21.
jumped 26:20.
jurisdiction 3:20, 8:9, 8:20, 8:21, 8:22, 15:21, 16:2.
jurisprudence 8:2, 8:11, 8:21, 11:1, 11:6.
.
.
< K >.
keep 6:19.
keeping 15:23.
key 24:20.
kind 6:8, 7:8, 7:9, 18:23.
Kownacki 1:36, 2:21.
.
.
< L >.
language 4:2.
last 17:17, 17:20, 18:2, 23:13, 24:8, 24:24.

late 22:23.
later 5:9.
law 3:18, 4:11, 4:14, 5:12, 6:3, 6:13, 7:24, 8:11, 8:19, 8:20, 8:24, 8:25, 9:7, 9:14, 9:20, 9:23, 10:7, 10:9, 10:13, 10:17, 11:17, 11:20, 11:21, 14:16, 14:20, 17:25, 18:3, 27:2.
laws 9:16.
lawyer 6:6, 6:7, 6:9.
lawyers 5:6, 5:19, 6:5, 7:5, 8:18, 8:22, 9:3, 9:8, 9:19.
learned 19:5, 26:24.
learning 8:15.
least 17:18.
letter 17:19.
level 25:3.
liberal 8:13.
lie 10:10, 10:11, 10:18, 11:15, 13:12.
light 9:4.
Lima 2:3, 2:4, 2:9, 2:13, 2:20, 3:10, 5:3, 5:13, 5:14, 9:11, 10:10,

10:18, 11:13, 11:15, 14:15, 16:7, 16:17, 17:6, 21:19, 22:2, 23:14, 24:1, 24:18, 25:4.
limit 22:18, 23:10.
line 12:8.
lines 3:21.
literally 22:15.
litigation 21:19.
little 13:20, 18:18, 22:2.
LLP 1:31.
located 24:14.
long 2:25, 10:7, 11:10.
longer 16:1, 25:5.
look 5:5, 18:16, 21:22, 22:3, 24:6, 24:15.
looked 22:22.
looks 3:23, 9:6.
lose 23:15.
lot 2:24, 14:24, 18:13, 22:6.
loud 21:20.
love 12:23.
lying 11:8, 11:23.
.
.
< M >.
machine

1:48.
Mariella 24:18.
matter 3:20, 27:13.
mean 4:15, 13:8, 13:25, 15:9, 15:20, 15:23, 17:5, 17:6, 17:24, 18:12, 18:14, 19:14, 19:16, 20:3, 22:9, 22:11, 23:1, 23:2, 23:22, 24:1, 26:17.
meant 18:10.
mechanism 13:18.
meet 11:21.
meets 4:12.
Metropolitan 2:3, 2:13.
METROPOLITAN MUNICIPALITY OF LIMA 1:5.
Miami 1:28.
midnight 11:18, 11:19, 11:20.
minds 23:15.
minute 2:25.
misinterpreted 10:4.
misrepresent 11:11.
misrepresented 14:13.
misstate 10:8.
moment 24:14.
months 17:15.
morning 2:7, 2:10, 2:11,

2:12, 2:19, 2:22, 15:1.
mouth 6:15.
move 4:17, 22:19, 26:7.
moving 5:15.
MR. HILLE 2:19, 4:19, 4:23, 7:17, 7:21, 12:23, 13:16, 15:7, 16:8, 16:16, 17:4, 17:13, 18:17, 21:20, 23:6, 23:23, 26:2, 26:13, 27:5, 27:8.
Ms 2:12, 2:16, 24:24.
Municipality 2:3, 2:13, 23:9.
myself 8:3.
.
.
< N >.
name 24:25.
named 24:18.
nation 8:10, 9:17.
nature 17:1.
need 6:4, 7:23, 12:14, 14:4, 18:20, 18:24, 19:5, 22:18, 23:20, 25:11, 25:14.
needs 9:7, 15:10, 26:18.
nervous 13:20.
New 1:33, 2:17, 3:12, 3:13, 3:14,

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

4:9, 4:10, 4:13, 6:14, 8:1, 8:3, 8:11, 10:14, 11:2, 11:21, 14:17, 14:20.

next 6:15, 6:17, 6:18, 7:9, 23:3.

nice 12:13.

Nicolle 1:36, 2:21.

No. 1:5, 4:14, 4:15.

None 10:15, 10:16.

Nothing 14:12, 16:14, 27:4.

notion 23:7.

nowhere 17:24.

number 17:15.

NW 1:43.

NY 1:33.

< O >.

obligated 4:3.

obligations 6:14.

Obviously 4:7, 5:5, 13:1, 14:4, 17:25, 21:2, 23:12, 27:1.

occur 12:13.

offer 25:23.

office 24:19.

officer 5:25.

Official 1:42, 27:17.

Okay 2:17, 4:22, 5:1, 5:23, 7:11,

7:24, 20:19, 20:24, 21:4, 23:5, 25:8, 26:13, 26:23.

once 4:3, 4:15, 17:14.

one 3:16, 6:7, 6:8, 8:8, 10:20, 15:16, 17:8, 24:13.

open 9:23, 15:23.

opine 10:16.

opportunity 13:5.

opposed 3:24, 15:21.

opposing 19:8.

opposition 19:15.

order 2:25, 5:2, 5:11, 5:16, 6:2, 6:3, 7:23, 7:25, 8:4, 8:8, 8:18, 10:4, 10:10, 10:13, 10:18, 11:22, 14:19, 19:5, 21:3.

ordered 5:4.

ordering 5:25, 8:5, 10:5, 10:8.

otherwise 15:11.

outcome 9:5, 9:6.

own 8:2, 8:10, 8:21.

< P >.

page 9:4.

part 5:1, 12:24, 16:11, 17:8, 18:16, 19:17, 26:14.

parte 12:6, 12:15, 12:18, 12:23, 13:18, 13:20.

particular 15:21, 24:24.

parties 5:19, 7:5, 8:5, 19:1, 22:1, 23:9, 26:16.

party 8:8.

pass 4:8, 21:17.

past 19:15.

patience 6:16.

pay 15:17.

pending 9:13.

people 26:24.

Perfect 5:1.

permitted 9:14.

person 6:6.

personal 6:21.

personally 5:12, 26:25.

perspective 16:25, 22:19.

Peru 3:13, 4:10, 4:18, 4:23, 8:1, 8:16, 8:19, 9:8, 9:16, 9:19, 9:24, 10:6, 10:10,

10:17, 10:24, 11:3, 11:8, 11:13, 14:19, 26:18.

Peruvian 3:6, 3:17, 4:5, 4:11, 4:13, 5:3, 5:6, 8:6, 10:7, 10:9, 10:11, 10:18, 10:25, 11:1, 11:6, 11:15, 11:16, 11:17, 11:20, 11:21, 14:13, 14:16, 25:13.

Petitioner 1:7.

phone 12:19, 14:8.

phrase 3:11.

pin 25:6.

Plaintiff 1:23, 2:5, 27:4.

play 6:5.

playing 6:11.

pleading 8:19, 10:23, 11:1, 12:4, 13:11.

pleadings 10:9, 14:5.

please 2:5.

pocket 6:22.

point 4:16, 4:17, 5:14, 7:6, 13:4, 20:8, 20:20.

position 14:3, 25:3.

positions

20:10.
positive
24:9.
possible
9:5.
practice 8:19,
9:20.
prefer
13:11.
preference
19:19,
21:23,
22:4.
prefers 13:12,
13:14.
prefiled
14:5.
preliminary
16:21.
premature
8:14, 9:15,
9:24,
15:13.
prepare
3:22.
present
12:25.
presumably
20:3.
prevent
8:21.
probably
14:24.
procedure
9:1.
proceed 7:8,
16:6, 20:14,
25:10,
26:6.
proceeding
9:8, 9:11,
9:23, 10:25,
11:14.
Proceedings
1:48, 3:10,
4:20, 12:5,
27:9,
27:13.
process 8:17,
10:12.

produced
1:48.
product 14:6,
14:7.
proper 8:8.
proposed 9:5,
9:6,
25:11.
prove 22:18.
provision
13:9, 13:14,
13:17.
provisions
3:14.
purpose
9:12.
purposes 21:9,
22:11,
22:13,
22:14,
23:18.
put 13:14,
20:5, 21:3,
23:17.
putting
10:25.

.

< Q >.
qualifying
10:20.
quelch 7:10.
question
10:20.
quickly
14:9.
quite 16:5.
quote 22:12.

.

< R >.
rather 21:11,
22:5.
realize
14:23.
really 16:5,
21:25.
reason 11:3,
11:7, 12:25,
15:20,

25:12,
25:14,
26:21.
reasons
12:24.
received
24:11.
recognized
3:15, 4:3.
record 2:2,
2:6, 7:23,
8:1, 16:18,
19:3,
27:13.
recorded
1:48.
referring
24:3,
24:5.
refile
18:13.
regarding
3:14.
relief
16:19.
remark 7:9.
remind 6:4.
report 2:24,
10:2.
Reported
1:41.
Reporter 1:42,
27:17.
reports
19:11.
representation
5:17.
request 8:15,
24:6.
requirement
4:13.
requires 4:6,
10:16.
res 3:9.
research
4:2.
resist 23:7.
respect 3:3,
3:10, 4:2,
5:4, 8:11,

12:4, 14:3,
14:16,
14:17,
14:20,
15:21,
15:22,
15:25, 16:6,
17:19,
17:20.
respects
10:14.
respond 19:12,
19:13,
25:13.
Respondent
1:12.
rest 19:16,
21:17.
review 5:7,
12:4,
13:11.
role 5:25.
room 13:8.
Rossana 1:24,
2:12.
RPR 1:41,
27:11.
Rutas 2:4,
2:20, 5:10,
9:7, 10:19,
18:18.
RUTAS DE LIMA
S.A.C.
1:10.
Ryan 1:23,
2:7.

.

< S >.
S. 6:7, 9:23,
10:13,
11:15,
14:20.
SAC 2:4.
sanction 6:20,
8:24,
15:17.
sanctioned
25:21.
sanctions

5:11, 5:17, 8:25, 15:9, 15:13.
sarcastic 7:2, 7:3, 7:13.
satisfy 21:4.
saying 9:16, 19:10.
says 4:9, 11:13, 11:15, 11:17, 22:23.
scene 2:18.
schedule 17:4, 25:11, 26:7.
Schiller 1:25, 2:8, 2:13, 2:16, 3:7, 4:8, 5:5, 5:12, 9:10, 10:16, 12:4, 13:4.
seat 3:16.
second 5:1, 16:4.
seeking 16:19.
seems 22:23.
seen 22:24, 27:3.
send 5:2, 12:17.
sense 11:25.
sent 24:4.
served 8:16.
service 4:23.
she-said 14:19.
shorthand 1:48.
shot 6:17.
shouldn't 9:22.
show 5:11.
sic 24:12.
sides 19:18.

sign 9:1, 13:4.
signatory 3:13, 4:10, 8:1, 11:3.
signed 11:18, 11:19.
sincere 7:14.
single 4:12.
Sitting 7:24.
snide 7:9.
solely 6:3.
somehow 9:23.
someone 4:1, 4:12, 26:25.
somewhat 20:11.
somewhere 6:10.
sooner 26:18.
sorry 7:17, 13:24, 24:1, 26:11, 26:19.
sort 3:3, 3:23, 13:5, 17:1, 18:22, 20:22, 22:18.
sound 12:9.
sovereign 8:10, 8:23.
specific 7:24.
speculate 8:9.
spend 25:22.
spot 7:19, 18:5, 20:3.
stage 16:21.
start 6:18, 7:7.
started 4:21,

7:3.
state 2:5.
States 1:1, 1:18, 9:13, 9:14, 11:4, 11:5.
Status 1:16, 2:24, 10:11, 11:5, 25:9.
statute 4:5.
stenographic 27:12.
stip- 23:17.
stipulate 21:9, 22:14.
stipulated 23:18.
stipulation 3:3, 3:8, 3:23, 4:7, 5:8, 5:10, 6:12, 8:4, 15:5, 20:9, 26:3, 26:13.
Stop 5:21, 6:18, 7:2, 19:20, 26:10.
Street 1:26, 1:38.
strong 19:22, 22:7.
strongly 13:1.
subject 3:20.
submitted 23:8.
sufficient 21:3.
suggest 7:10, 7:25.
suggesting 9:7.
suggestion 5:15.
Suite 1:27.

summary 19:10, 20:22.
sweating 24:11.
.
.
< T >.
T. 1:41, 27:16.
talked 20:17, 23:16, 26:4.
terms 21:19, 22:3, 23:16.
Thanks 27:6.
THE CLERK 2:2.
they've 17:14.
third 15:22.
thoughts 2:24, 17:17.
threaten 8:25.
threats 15:13.
threshold 18:23, 21:2, 22:8.
timeliness 16:21, 16:22, 17:2, 17:10, 17:12, 19:2, 19:25, 20:4, 20:21, 21:10, 21:16, 21:24, 22:19.
timely 18:20, 19:6, 19:14, 20:23.
timing 16:11.
today 7:24.
together 8:4, 15:4, 23:21.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

tone 7:9.
took 14:24, 18:7.
totally 13:14, 17:6, 18:16, 23:21, 26:23.
Trahan 1:35, 2:21.
Transcript 1:16, 1:48, 24:11, 27:12.
transcription 1:49.
treat 22:14.
true 22:11, 22:13, 23:10.
trust 13:10.
try 21:24, 22:4, 26:25.
trying 6:19, 10:2, 18:21, 23:12, 23:16, 25:5.
two 5:15, 5:19, 7:5, 23:3.
.
.
< U >.
unaware 6:10.
Understand 3:11, 5:18, 7:22, 8:17, 9:3, 12:24, 13:19, 13:21, 15:3, 15:14, 16:5, 16:6, 16:15, 25:8.
understanding 3:17.
Understood 11:12, 12:21, 16:3,

16:9, 20:7, 21:21, 23:23, 23:24.
underway 4:24.
undisputed 23:18.
unfair 17:6, 18:16, 18:18.
United 1:1, 1:18, 9:13, 11:4, 11:5.
unless 6:9, 26:17.
unquote 22:12.
until 24:11.
update 4:19, 25:9.
upset 7:12.
.
.
< V >.
vacuum 19:2.
verbal 24:17.
verification 10:23.
versus 2:3, 8:8.
vet 8:19, 10:9.
view 9:4, 11:8, 13:17.
views 12:8.
violate 6:2.
violating 11:23.
violation 5:16, 11:22.
vs 1:8.
.
.
< W >.
W. 1:38.

waiver 14:8.
wanted 16:6, 16:12, 20:4.
wants 10:7, 14:15, 22:25, 26:9, 26:10.
Washington 1:12, 1:39, 1:44.
weeks 23:3.
welcome 27:3.
whatever 3:9, 10:6, 14:15, 15:10, 15:22, 21:12.
whether 12:8, 16:22, 16:23, 17:21, 17:25, 18:19, 19:6, 19:13, 24:16, 24:17.
White 1:31, 1:37, 2:20.
whole 17:9, 18:15, 19:8, 19:17, 21:12, 22:5, 26:9, 26:10.
will 5:10, 5:11, 6:19, 9:9, 9:20, 12:6, 12:18, 12:19, 25:15, 25:18.
win 21:2.
withdraw 5:17.
withdrawing 16:1.
without 7:24,

13:6.
witness 24:20.
WITTE 1:23, 2:8, 2:10, 5:14, 5:21, 6:25, 7:3, 7:7, 7:20, 11:9, 11:10, 13:4, 13:11, 14:9, 14:22, 15:9, 15:11, 17:16, 17:22, 18:1, 18:11, 19:20, 21:14, 22:21, 25:12, 25:25, 26:9, 26:10, 26:19, 27:7.
woman 24:18.
wonderful 15:13.
words 6:15.
work 14:6, 14:7, 15:5, 15:9, 18:13, 21:11, 21:13, 21:24, 23:11, 23:19, 26:6.
worked 15:10.
working 16:17.
works 25:5.
worst 9:5, 9:6.
write 2:25.
writing 24:10.
written 9:2, 9:4, 11:18, 17:14.
.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

38

```
.
< Y >.
York 1:33,
    3:12, 3:13,
    3:14, 4:9,
    4:10, 4:13,
    6:14, 8:1,
    8:3, 8:12,
    10:14, 11:2,
    11:21,
    14:17,
    14:20.
yourself
    25:18.
.
.
< Z >.
Zoom 6:24.
```

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter